**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**            x

CRYSAL CROSLEY, individually and as Parent and
Natural Guardian of Z.C., a student with a disability

                                        Plaintiff,

-against-                                              No. 1:26-cv-3901

KAMAR H. SAMUELS, in his official capacity as
Chancellor of the New York City Department of
Education; NEW YORK CITY DEPARTMENT OF
EDUCATION; OFFICE OF ADMINISTRATIVE
TRIALS AND HEARINGS; VILDA VERA MAYUGA
in her official capacity as Commissioner and Chief
Administrative Law Judge of the Office of             COMPLAINT
Administrative Trials and Hearings; NOEL R. GARCIA
 in his official capacity as Deputy Commissioner of
OATH's Special Education Hearings Division; WILLIAM
STEWART, in his official capacity as Assistant
Commissioner of OATH's Special Education Hearings
Division; NEW YORK STATE EDUCATION
DEPARTMENT; OFFICE OF STATE REVIEW, as part
of the New York State Education Department; and
BETTY A. ROSA, in her official capacity as
Commissioner of Education of the State of New York,

                                        Defendants.

_____x


Plaintiff Crysal Crosley, individually and as Parent and Natural Guardian of Z.C., a student with

a disability, by and through undersigned counsel, alleges as follows:


## I. PRELIMINARY STATEMENT

1. This is a single-student enforcement, review, declaratory, procedural-denial-of-FAPE, and

   civil-rights action under the Individuals with Disabilities Education Act ("IDEA"), 20

   U.S.C. § 1400 et seq.; 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. §§

   2201–2202; and related federal and state law.

2. Plaintiff brings this action to enforce Z.C.'s automatic stay-put rights, obtain judicial review and enforcement of State Review Officer ("SRO") Decision No. 25-499, secure declaratory relief, remedy procedural denials of a free appropriate public education ("FAPE"), and obtain relief for Defendants' two-school-year failure to maintain Z.C.'s established pendency placement.

3. This is not a preliminary-injunction case. Plaintiff is not asking this Court to create a new pendency placement, to accelerate a newly asserted monetary claim, or to issue interim relief on a blank slate. Plaintiff seeks enforcement of the automatic statutory injunction created by 20 U.S.C. § 1415(j), which attached by operation of law when Parent filed Z.C.'s due process complaints for the 2024–2025 and 2025–2026 extended school years.

4. Section 1415(j) provides that, during the pendency of IDEA proceedings, unless the parent and public agency agree otherwise, "the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The Second Circuit has long recognized that this provision functions as an automatic injunction preserving the child's educational status quo. See *Zvi D. ex rel. Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir. 2004); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

5. Once Z.C.'s due process complaints were filed, § 1415(j) required the New York City Department of Education ("DOE") to maintain Z.C.'s then-current educational placement at public expense. That obligation did not depend on a new Impartial Hearing Officer ("IHO") order, a new SRO order, a federal court order, DOE's agreement, DOE's preferred "pendency form," or DOE's preferred form of administrative clarification.

6. Z.C.'s pendency placement was already established before the 2024–2025 school year began. On January 24, 2024, an IHO issued a corrected Findings of Fact and Decision in IHO Case No. 250764, finding that DOE denied Z.C. a FAPE for the 2023–2024 school year, finding that iBRAIN was an appropriate unilateral placement for Z.C., and ordering DOE to reimburse or directly fund Z.C.'s tuition, related services, and special transportation pursuant to Parent's enrollment agreement and transportation agreement. A true and correct copy of the January 24, 2024 corrected FOFD is attached as Exhibit A.

7. DOE did not appeal the January 24, 2024 FOFD. The decision therefore became final and binding and it established Z.C.'s last agreed-upon educational placement for pendency purposes, including iBRAIN tuition, related services, and special transportation.

8. On July 2, 2024, Parent filed a due process complaint for the 2024–2025 school year, invoking Z.C.'s pendency rights and seeking maintenance of Z.C.'s iBRAIN placement and related services, including special transportation. A true and correct copy of Z.C.'s 2024–2025 due process complaint, with exhibits including the iBRAIN enrollment contract and Sisters transportation agreement, is attached as Exhibit B.

9. Upon filing of the July 2, 2024 due process complaint, Z.C.'s federal stay-put rights attached automatically. DOE nevertheless failed to maintain Z.C.'s placement. Instead, DOE treated Z.C.'s pendency as disputed, refused to fund tuition or transportation and acted as though no practical funding obligation existed unless and until a new administrative order issued.

10. OATH's hearing administration compounded the deprivation. Although pendency was raised early in the 2024–2025 proceeding, OATH did not ensure timely issuance of a standalone pendency order. Instead, Z.C.'s pendency determination was delayed until the

June 27, 2025 FOFD, after the school year was effectively over.  A true and correct copy of the June 27, 2025 FOFD in IHO Case No. 277285 is attached as Exhibit C.

11. The June 27, 2025 FOFD confirmed that Parent had been correct all along: the January 24, 2024 unappealed FOFD was the basis for Z.C.'s pendency, and DOE was required to fund Z.C.'s iBRAIN tuition, related services, and special transportation through Parent's chosen transportation provider.  But by the time that ruling issued, DOE had already deprived Z.C. and Parent of timely pendency maintenance for nearly the entire 2024–2025 school year.

12. Parent appealed adverse portions of the June 27, 2025 FOFD. DOE cross-appealed, including as to pendency.  On April 28, 2026, SRO Decision No. 25-499 sustained Parent's appeal in part and dismissed DOE's cross-appeal.  A true and correct copy of SRO Decision No. 25-499 is attached as Exhibit D.

13. SRO Decision No. 25-499 confirmed that Z.C.'s pendency was based on the unappealed January 24, 2024 FOFD and found no basis to disturb the determination that DOE was obligated to fund Z.C.'s iBRAIN tuition, related services, and transportation by Parent's chosen provider.  The SRO also ordered DOE to fund an independent neuropsychological evaluation.

14. The SRO's decision further held that review of certain equitable and transportation issues had become moot because pendency supplied the relief sought for the 2024–2025 school year. That holding reinforces, rather than diminishes, Plaintiff's claims here: if pendency supplied all relief for 2024–2025, then the full contract-based pendency relief sought and maintained includes the contractual financial consequences of DOE's nonpayment, including late fees.

15. DOE cannot use the SRO's mootness determination as both a sword and a shield. DOE cannot argue that pendency made review of the merits relief unnecessary while simultaneously denying the full contract-based pendency consequences that made the merits issues moot.

16. In July 2025, Parent filed a new due process complaint for the 2025–2026 school year, again invoking pendency and seeking continued maintenance of Z.C.'s established iBRAIN placement and related services, including special transportation.  A true and correct copy of Z.C.'s 2025–2026 due process complaint, with exhibits including the iBRAIN enrollment contract and Sisters transportation agreement, is attached as Exhibit E.

17. The 2025–2026 school year repeated the same unlawful pattern.  DOE acknowledged that Z.C.'s pendency arose from the January 24, 2024 FOFD but nevertheless disputed implementation based on alleged cost increases, transportation-provider objections, and its asserted authority to substitute DOE-arranged transportation. OATH again failed to promptly enforce pendency as an automatic right, and DOE again withheld funding.

18. DOE has not paid Z.C.'s 2024–2025 pendency tuition, related-services, transportation, or contract-based late-fee obligations.  DOE also has not paid Z.C.'s 2025–2026 pendency tuition, related-services, transportation, or contract-based late-fee obligations.

19. DOE's position was not an isolated misunderstanding in Z.C.'s matter.  DOE has taken the broader position in related iBRAIN pendency litigation that when pendency is disputed, it "requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program," and that "in every iBrain case" DOE contests Sisters transportation.  Those statements evidence a policy, custom, or practice of converting automatic pendency into delayed, order-dependent implementation.

20. That policy of DOE is unlawful.  Section 1415(j) does not allow DOE to self-stay pendency because DOE disputes cost, transportation, appeal posture, administrative wording, or the provider through which the already-established placement is maintained.  It does not permit DOE to withhold all funding until a new IHO order issues.  It does not permit DOE to treat administrative review as a de facto stay.  And it does not allow DOE to convert a self-executing federal injunction into a discretionary payment process controlled by DOE's litigation position.

21. DOE's theory has already been rejected by courts in this District.  In *Crespo v. Aviles-Ramos*, the court rejected DOE's argument that it had no obligation to implement pendency unless and until it agreed with the placement or an IHO issued a new order, describing DOE's position as "baseless" and "unsupported by the statute, case law, and the governing regulations." *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38, at 11–14 (S.D.N.Y.).  Yet DOE continued to apply the same theory to Z.C.

22. This case also implicates the distinction between payment timing and payment avoidance.  Plaintiff does not contend that § 1415(j) eliminates all ordinary ministerial processing.  Plaintiff contends that DOE may not postpone the beginning of implementation, refuse to authorize funding, or withhold all payment for months or years by labeling pendency "disputed," demanding a new order, invoking appeal posture, or substituting its own preferred services for the maintained placement.

23. Nor can DOE invoke *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), to justify its conduct.  *Mendez* did not create a self-stay doctrine, did not require parents to obtain a new IHO order before pendency attaches, did not allow DOE to withhold all funding for an established placement, and did not authorize DOE to transform automatic pendency into

post-school-year reimbursement.  Quite to the contrary, *Mendez* recognizes that pendency concerns the maintenance of a student's educational placement at public expense.

24. Defendants OATH, Commissioner Mayuga, Deputy Commissioner Garcia, and Assistant Commissioner Stewart are named because OATH's Special Education Hearings Division administers the hearing system that delayed pendency adjudication, failed to ensure timely resolution of Z.C.'s stay-put rights, permitted or ratified extension practices that impaired timely adjudication, and contributed to the procedural denial of FAPE as applied to Z.C.

25. Defendants NYSED, OSR, and Commissioner Rosa are named because OSR, as part of NYSED, administers state-level review, controls the timing and extension practice of SRO appeals, and allowed DOE's appeal posture to operate as a practical stay of pendency implementation.  OSR's delayed review and extension practices directly contributed to the denial of timely IDEA procedures, increased Parent's contract-based exposure, and enabled DOE to continue withholding payments while invoking administrative uncertainty.

26. This case is therefore not merely about payment.  It is about whether DOE may nullify a self-executing federal stay-put injunction by refusing to fund a placement until DOE receives a later administrative order that it deems sufficient; whether OATH may administer pendency disputes in a way that delays the right until the school year is effectively over; whether OSR may allow appeal timing and extension practice to become a de facto stay; and whether the resulting contract-based late fees, attorneys' fees, and procedural injuries remain enforceable.

27. Plaintiff seeks enforcement of Z.C.'s 2024–2025 pendency from the July 2, 2024 DPC filing date.

28. Plaintiff seeks enforcement of Z.C.'s 2025–2026 continuing pendency from the July 2025 DPC filing date.

29. Plaintiff seeks enforcement of SRO Decision No. 25-499, including enforcement of DOE's obligation to fund Z.C.'s iBRAIN tuition, related services, special transportation, and independent neuropsychological evaluation.

30. Plaintiff seeks judicial review, reversal, modification, or clarification of adverse portions of SRO Decision No. 25-499 to the extent DOE contends that the SRO's mootness analysis eliminates full contract-based relief, including late fees, or otherwise precludes review of DOE's nonimplementation and the consequences of Defendants' delay.

31. Plaintiff seeks declaratory relief that DOE may not self-stay pendency obligations based on cost objections, transportation objections, appeal posture, administrative wording, or the absence of a new IHO order.

32. Plaintiff seeks prospective and accrued pendency funding necessary to maintain Z.C.'s placement.

33. Plaintiff seeks contract-based late fees caused by DOE's nonpayment and by OATH and OSR delay.

34. Plaintiff seeks procedural-denial-of-FAPE relief for both the 2024–2025 and 2025–2026 school years.

35. Plaintiff seeks relief under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against DOE for policies, customs, practices, ratification, deliberate indifference, and failure to train or supervise that caused the deprivation of Z.C.'s federal rights.

36. Plaintiff seeks declaratory and prospective relief against OATH and NYSED/OSR to remedy and prevent continued hearing-system and review-system practices that deny timely IDEA protections in pendency matters.

37. Plaintiff seeks attorneys' fees and costs for the 2024–2025 administrative proceeding, the 2024–2025 SRO appeal, the 2025–2026 administrative proceeding, the 2025–2026 SRO appeal, and this federal action.

38. Plaintiff further seeks such other legal and equitable relief as this Court deems just and proper.

## II. NATURE OF THE ACTION

39. This action has six related but distinct components: (1) enforcement of Z.C.'s automatic pendency rights for the 2024–2025 school year; (2) enforcement of Z.C.'s continuing pendency rights for the 2025–2026 school year; (3) enforcement of SRO Decision No. 25-499; (4) judicial review, modification, or clarification of adverse portions of SRO Decision No. 25-499; (5) independent procedural-denial-of-FAPE claims against DOE, OATH, and NYSED/OSR; and (6) claims under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against DOE.

40. This action is not redundant of Z.C.'s prior or related federal proceedings.  The 2024–2025 federal pendency action addressed multi-student claims arising at the outset of the 2024–2025 school year.  The 2025–2026 federal pendency action likewise addressed multi-student claims at the outset of the following school year.  This action is different.  It is a single-student action brought after the issuance of SRO Decision No. 25-499, after two school years of nonpayment, and after administrative delay, appellate delay, and DOE's self-stay theory produced concrete contract-based consequences for Z.C. and Parent.

41. This action also includes defendants and claims not fully resolved by the earlier multi-student proceedings. Plaintiff now seeks Z.C.-specific enforcement, Z.C.-specific administrative review, Z.C.-specific declaratory relief, Z.C.-specific procedural-denial-of-FAPE relief, and Z.C.-specific remedies for the contract-based consequences of DOE's nonimplementation and the administrative delay that prolonged it.

42. Nor is this action premature. Plaintiff does not ask this Court to short-circuit an unresolved administrative process or to declare a pendency placement in the first instance. Plaintiff seeks enforcement of an automatic statutory injunction that attached when the 2024–2025 and 2025–2026 DPCs were filed, enforcement of a final administrative decision, review or clarification of adverse portions of that final decision, and remedies for procedural violations and civil-rights injuries that have already occurred.

43. Nor is this action merely monetary. The unpaid tuition, related-services, transportation, and late-fee amounts are the financial consequences of Defendants' failure to maintain Z.C.'s educational placement. This action seeks enforcement, declaratory relief, review of administrative action, prospective relief, procedural-denial-of-FAPE relief, and civil-rights relief. The funding requested is not detached money damages; it is the cost of maintaining the placement that federal law required DOE to maintain at public expense.

44. DOE's contrary characterization of pendency enforcement as a mere money dispute obscures the nature of the right. A placement cannot be "maintained" at public expense if DOE withholds the public funding necessary to maintain it. For a student like Z.C., whose placement includes an intensive private-school program, related services, and specialized transportation, the funding obligation is not collateral to pendency; it is the mechanism by which pendency is maintained.

**A. Enforcement of Automatic Pendency for the 2024–2025 School Year**

45. On July 2, 2024, Parent filed Z.C.'s DPC for the 2024–2025 school year.  The DPC invoked Z.C.'s pendency rights and sought public funding for Z.C.'s continued placement at iBRAIN, including tuition, related services, and special transportation.  A true and correct copy of the 2024–2025 DPC, with exhibits including the iBRAIN enrollment contract and Sisters transportation agreement, is attached as Exhibit B.

46. Upon filing of the July 2, 2024 DPC, § 1415(j) automatically required DOE to maintain Z.C.'s then-current educational placement at public expense.  That right arose by operation of federal law.  It did not arise only later, when the IHO issued the June 27, 2025 FOFD, and it did not arise only after the SRO issued Decision No. 25-499.

47. Z.C.'s then-current educational placement was established by the January 24, 2024 corrected FOFD in IHO Case No. 250764.  That FOFD found that DOE denied Z.C. a FAPE for the 2023–2024 school year, found that iBRAIN was an appropriate unilateral placement, and ordered DOE to reimburse or directly fund Z.C.'s tuition, related services, and special transportation pursuant to Parent's enrollment agreement and transportation agreement. Exhibit A.

48. DOE did not appeal the January 24, 2024 FOFD.  Accordingly, that decision became final and binding and supplied the operative pendency basis for the 2024–2025 school year.

49. Plaintiff's 2024–2025 pendency claim is therefore not that DOE's obligation began on June 27, 2025, when the IHO finally embedded pendency in the FOFD, or on April 28, 2026, when the SRO issued Decision No. 25-499.  Plaintiff's claim is that DOE was required to maintain Z.C.'s placement beginning July 2, 2024, when Parent filed the 2024–2025 DPC.

50. DOE did not do so.  DOE treated Z.C.'s pendency as disputed, refused to fund Z.C.'s tuition and transportation, and acted as though the automatic injunction created by § 1415(j) imposed no practical funding obligation unless and until a new administrative order issued.

51. DOE's refusal was not a harmless timing issue.  It converted a statutory maintenance obligation into a delayed reimbursement regime; shifted the financial burden and risk to Parent and providers; increased contract-based exposure; and forced Parent to litigate the same pendency right that DOE was already required to honor automatically.

52. This refusal caused two categories of financial consequences for the 2024–2025 school year.

53. First, late fees accrued because DOE failed to pay pendency amounts when DOE should have paid them under § 1415(j), FOFD 250764, and the enrollment and transportation agreements incorporated through the 2024–2025 DPC and final administrative order.

54. FOFD 250764 did not order a generic or abstract placement.  It ordered funding pursuant to the terms of Parent's enrollment agreement for tuition and related services and the transportation agreement for transportation. Exhibit A.  The 2024–2025 DPC then invoked pendency and attached the operative 2024–2025 iBRAIN enrollment contract and Sisters transportation agreement. Exhibit B.

55. DOE's obligation to maintain Z.C.'s pendency placement therefore included the financial obligations necessary to maintain that placement pursuant to the applicable agreements. When DOE unlawfully failed to fund the placement when payment was due, the amounts owed increased according to the contracts.  Those contract-based late fees are not contempt sanctions. They are part of the maintained contractual obligation that DOE was required to fund as part of pendency.

56. Second, late fees also accrued or increased because OATH and OSR failed to issue timely pendency, merits, and review determinations under federal and state timelines.  Had OATH and OSR acted within required timelines, DOE would have had less opportunity to invoke alleged uncertainty, administrative posture, or appeal posture as a justification for nonpayment, and Parent's contract-based late-fee exposure would have been avoided or materially reduced.

57. Federal and state law require prompt resolution of IDEA due process proceedings.  An IHO must render a final written decision not later than 45 days after expiration of the resolution period or adjusted resolution period, subject only to specific extensions granted in accordance with governing regulations. 34 C.F.R. § 300.515(a), (c); 8 N.Y.C.R.R. § 200.5(j)(5).

58. State-level review is likewise time-limited.  An SRO must ensure that a final decision is reached and mailed to the parties not later than 30 days after receipt of a request for review, subject only to specific extensions granted in accordance with governing regulations. 34 C.F.R. § 300.515(b), (c); 8 N.Y.C.R.R. § 200.5(k)(2).

59. Here, pendency was raised in the 2024–2025 proceeding, but OATH did not ensure timely pendency enforcement.  The IHO did not issue a standalone pendency order during the school year. Instead, the IHO waited until the June 27, 2025 FOFD—nearly the end of the 12-month school year—to confirm that Z.C.'s pendency was based on FOFD 250764 and required DOE funding of iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit C.

60. A stay-put ruling delivered at the end of the school year does not provide the protection Congress created in § 1415(j).  It confirms, after the fact, what DOE should have

maintained all along.  By delaying pendency until the FOFD, OATH allowed the automatic statutory protection to be functionally denied during the period when it mattered most.

61. DOE then continued the delay through its SRO posture.  Parent objected to DOE's August 2025 extension request and to DOE's late answer/cross-appeal posture, explaining that delay in a pendency matter prejudiced Parent and prolonged DOE's nonimplementation. True and correct copies of Parent's August 8, 2025 objection and August 28, 2025 objection are attached as Exhibit F and Exhibit G.

62. Plaintiff seeks enforcement of 2024–2025 pendency from July 2, 2024, including tuition, related services, special transportation, and contract-based late fees caused by DOE's nonpayment and by OATH/OSR delay.

63. Plaintiff also seeks attorneys' fees and costs incurred in the 2024–2025 administrative proceeding, the 2024–2025 SRO appeal, and this federal enforcement and review action.

**B. Enforcement of Continuing Pendency for the 2025–2026 School Year**

64. In July 2025, Parent filed Z.C.'s DPC for the 2025–2026 school year.  That DPC again invoked Z.C.'s pendency rights and sought continued public funding for Z.C.'s placement at iBRAIN, including tuition, related services, and special transportation.  A true and correct copy of the 2025–2026 DPC, with exhibits including the iBRAIN enrollment contract and Sisters transportation agreement, is attached as Exhibit E.

65. Upon filing of the 2025–2026 DPC, § 1415(j) again automatically required DOE to continue maintaining Z.C.'s then-current educational placement at public expense unless and until a lawful change in placement occurred.

66. Plaintiff's 2025–2026 pendency claim is not an invitation for this Court to declare pendency from scratch. It is a continuation claim.

67. FOFD 250764 established Z.C.'s pendency placement. Exhibit A. SRO Decision No. 25-499 confirmed that there was no basis to disturb the conclusion that Z.C.'s pendency included iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

68. Once Parent filed the 2025–2026 DPC, DOE was required to continue maintaining that placement unless and until a lawful change occurred. No lawful change occurred.

69. During the 2025–2026 administrative proceeding, DOE acknowledged that Z.C.'s pendency arose from FOFD 250764, but nevertheless disputed implementation based on alleged cost increases, transportation-provider substitution, and appeal posture.

70. DOE's position was that Z.C.'s pendency could be acknowledged in principle while implementation was withheld in practice. That distinction is unlawful. A pendency right without funding is not maintenance of the placement. And a district cannot comply with § 1415(j) by acknowledging an anchor while withholding the funds necessary to maintain the anchored placement.

71. DOE's asserted cost objections did not authorize a unilateral stay. Nor did DOE's asserted preference to provide transportation through its own Office of Pupil Transportation authorize DOE to withhold the contract-based transportation funding necessary to maintain the placement established by FOFD 250764 and confirmed by SRO Decision No. 25-499.

72. The 2025–2026 proceeding repeated the same defects that infected the 2024–2025 proceeding. DOE treated automatic pendency as disputed and contingent. OATH failed to ensure prompt enforcement of the stay-put right. DOE used OATH and OSR posture as a practical reason not to pay. Parent was forced to litigate a right that attached automatically by statute.

73. Plaintiff seeks enforcement of continuing pendency for the 2025–2026 school year, including full contract-based tuition, related-services, and transportation funding, contract-based late fees that accrued because DOE withheld implementation, and attorneys' fees incurred in the 2025–2026 administrative proceeding, the 2025–2026 OSR appeal, and this federal action.

**C. Enforcement of SRO Decision No. 25-499**

74. SRO Decision No. 25-499 is a final administrative determination subject to enforcement in this Court. Exhibit D.

75. In SRO Decision No. 25-499, the SRO confirmed that Z.C.'s pendency was based on the unappealed January 24, 2024 FOFD in IHO Case No. 250764. Exhibit D.

76. The SRO dismissed DOE's cross-appeal and found no basis to disturb the IHO's determination that DOE was obligated to fund Z.C.'s iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

77. The SRO also ordered DOE to fund an independent neuropsychological evaluation of Z.C., subject to district criteria. Exhibit D.

78. Plaintiff seeks enforcement of SRO Decision No. 25-499, including the confirmed pendency obligations and the order requiring DOE to fund an independent neuropsychological evaluation.

79. To the extent DOE contends that SRO Decision No. 25-499 does not require implementation, does not require full transportation funding, does not preserve contract-based late fees, or does not resolve DOE's obligation to maintain Z.C.'s pendency placement, Plaintiff seeks judicial review, modification, or clarification under 20 U.S.C. § 1415(i)(2).

**D. Review or Clarification of Adverse Portions of SRO Decision No. 25-499**

80. Plaintiff seeks judicial review, reversal, modification, or clarification of adverse portions of SRO Decision No. 25-499 to the extent DOE contends that the decision's mootness analysis extinguishes or limits Plaintiff's remaining live claims.

81. The SRO held that review of certain equitable and transportation issues had become moot because pendency supplied the relief sought for the 2024–2025 school year. Exhibit D.

82. Plaintiff does not challenge the portion of the SRO's decision confirming the pendency basis and dismissing DOE's cross-appeal.  Plaintiff challenges, or seeks clarification of, any adverse construction of the SRO's mootness ruling that DOE may attempt to use to avoid full implementation.

83. Specifically, Plaintiff seeks review or clarification to the extent DOE contends that the mootness ruling extinguishes or limits: (a) contract-based late fees; (b) full transportation funding consequences; (c) full pendency implementation; (d) review of actual nonimplementation; (e) recurring 2025–2026 issues; (f) declaratory relief; (g) § 1983 and Monell claims; or (h) procedural-denial-of-FAPE claims caused by delay.

84. The SRO's mootness reasoning cannot be used to defeat Plaintiff's contract-based late-fee claim.  If pendency supplied all relief for 2024–2025, then pendency necessarily supplied the full contract-based relief sought and maintained for that school year, including the contractual consequences of DOE's failure to pay on time.

85. DOE cannot use the SRO's mootness ruling as both a sword and a shield.  DOE cannot argue that pendency made the merits appeal moot while simultaneously denying the full contract-based pendency consequences that made the appeal moot.

86. Nor does the SRO's mootness ruling eliminate Plaintiff's claims arising from actual nonimplementation. A finding that pendency should supply relief does not erase the separate injury caused by DOE's refusal to provide that relief when it was due.

87. Nor does the SRO's mootness ruling eliminate live controversy regarding 2025–2026. The 2025–2026 DPC triggered a new period of automatic maintenance of the already-established placement. DOE's continued nonpayment and renewed objections to implementation create live claims independent of the 2024–2025 merits review.

88. Nor does the SRO's mootness ruling eliminate Plaintiff's declaratory, procedural-denial-of-FAPE, or § 1983 claims. Those claims arise from Defendants' conduct, delay, policies, practices, and procedural failures—not merely from the substantive *Burlington/Carter* merits issues that the SRO deemed unnecessary to reach.

89. Nor does the SRO's mootness ruling eliminate Plaintiff's claim for attorneys' fees and costs. The administrative and federal proceedings altered the legal relationship between the parties and were necessary to enforce and preserve Z.C.'s IDEA rights after DOE failed to maintain pendency automatically.

**E. Procedural-Denial-of-FAPE Claims**

90. Plaintiff also brings independent procedural-denial-of-FAPE claims against DOE, OATH, and NYSED/OSR for both the 2024–2025 and 2025–2026 school years.

91. The IDEA's procedural safeguards are not technical formalities. They are Congress's mechanism for ensuring that parents can participate meaningfully in educational decision-making, that disputes are resolved promptly, and that students receive the protections guaranteed by federal law.

92. Procedural violations deny FAPE where they impede the child's right to a FAPE, significantly impede the parent's opportunity to participate in the decision-making process, or cause a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2); 8 N.Y.C.R.R. § 200.5(j)(4)(ii).

93. DOE, OATH, and NYSED/OSR caused independent procedural denials of FAPE by failing to implement automatic pendency, failing to timely resolve pendency, failing to conduct or recognize the consequences of resolution-process obligations, granting or exploiting extensions, delaying IHO and SRO adjudication, and forcing Parent to litigate rights that should have been self-executing.

94. DOE's failure to implement automatic pendency deprived Z.C. and Parent of the central protection § 1415(j) provides: stability during the dispute-resolution process.

95. OATH's failure to ensure timely pendency determination and hearing administration transformed stay-put from an immediate statutory protection into an after-the-fact ruling. For the 2024–2025 school year, OATH's process did not produce a pendency determination until the June 27, 2025 FOFD, after the school year was effectively over. Exhibit C.

96. OSR's extension and review practices further prolonged the deprivation. Parent objected to DOE's extension request and late answer/cross-appeal posture in the 2024–2025 OSR appeal because delay in a pendency matter directly prejudiced Z.C. and Parent. Exhibits F–G.

97. Defendants' procedural failures increased Parent's contract exposure, late fees, and attorneys' fees. Those consequences were not incidental. They were the predictable and foreseeable result of a system that treated automatic pendency as disputed, delayed, and appeal-dependent.

98. Defendants' procedural failures also significantly impeded Parent's opportunity to participate in the IDEA process.  Parent could not meaningfully participate in a process where DOE withheld implementation, OATH delayed pendency adjudication, and OSR permitted appeal posture and extension practice to prolong uncertainty.

99. The procedural injury is independent of the ultimate merits outcome.  Even where an administrative officer later confirms pendency or grants relief, the year-long deprivation of timely process, the forced litigation of self-executing rights, and the contract-based consequences of delay remain live injuries.

100. Defendants' conduct denied Z.C. and Parent the timely process Congress required and independently denied FAPE for both the 2024–2025 and 2025–2026 school years.

## F. *Monell* and Section 1983

101. DOE's conduct was not isolated.  Instead, it reflects an institutional policy, custom, or practice of refusing to fund iBRAIN pendency absent a new IHO order, administrative clarification, or a DOE-approved pendency form, especially where Sisters transportation is involved.

102. DOE has stated in related federal litigation that when pendency is disputed, it "requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

103. DOE has further stated that "in every iBrain case," it contests Sisters transportation and offers transportation through the Office of Pupil Transportation instead. *Id.*

104. DOE's Davis position confirms that DOE-created "disputes" operate as a deliberate trigger for delayed funding.  By contesting Sisters transportation "in every iBrain case," and by

treating disputed pendency as requiring a new IHO order before funding begins, DOE creates the very uncertainty it then invokes as a reason not to pay.

105. This policy or custom caused the deprivation of Z.C.'s rights.  In both 2024–2025 and 2025–2026, DOE relied on alleged disputes over cost, transportation, and administrative posture to withhold implementation of Z.C.'s pendency placement, even though Z.C.'s pendency was anchored in a final, unappealed administrative decision.

106. DOE's policy or custom is inconsistent with § 1415(j), which imposes an automatic maintenance obligation during the pendency of IDEA proceedings. DOE may litigate disputes through the administrative process, but it may not use those disputes to suspend the stay-put obligation.

107. DOE acted with deliberate indifference to the known and obvious consequences of its policy.  DOE knew that refusing to fund pendency would expose Parent to contract obligations, late fees, and repeated litigation costs.  DOE also knew that iBRAIN students with intensive disabilities depend on continuity of school, related services, transportation, and, where applicable, nursing or other supports.

108. DOE also knew that the effect of its policy would be to shift the burden of maintaining a federally protected placement away from the public agency and onto parents, schools, and service providers, thereby undermining the precise stability that § 1415(j) was enacted to protect.

109. DOE's policy, custom, practice, ratification, deliberate indifference, and failure to train or supervise caused the deprivation of Z.C.'s rights under the IDEA and the Fourteenth Amendment, actionable under 42 U.S.C. § 1983 and *Monell*.

## III. RELATED FEDERAL ACTIONS INVOLVING Z.C. AND WHY THIS ACTION IS DISTINCT

110. Plaintiff discloses that Z.C. has been included in related federal actions involving pendency and IDEA implementation issues for the 2024–2025 and 2025–2026 school years. This disclosure is made to clarify the procedural posture, to identify related proceedings involving the same student, and to avoid any misunderstanding that this action is duplicative.

111. This action is not an attempt to relitigate identical claims already resolved elsewhere. It is a Z.C.-specific enforcement, review, declaratory, procedural-denial-of-FAPE, and civil-rights action arising from the developed administrative record, SRO Decision No. 25-499, DOE's continuing nonimplementation, and the contract-based consequences of two school years of delay.

112. This action is also materially different in timing and posture. The earlier multi-student cases were filed before the completion of Z.C.'s 2024–2025 administrative appeal, before SRO Decision No. 25-499, and before DOE's 2025–2026 appeal-based self-stay position had fully crystallized in the administrative and federal records. This case is brought after those Z.C.-specific developments and seeks Z.C.-specific relief based on them.

### A. Z.C. in the 2024–2025 Bruckauf Action

113. Z.C. was one of multiple student-plaintiffs in *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), a federal action in this District involving pendency-related claims for the 2024–2025 school year.

114. The 2024–2025 Bruckauf action included allegations that Z.C.'s pendency was anchored in the January 24, 2024 unappealed FOFD in IHO Case No. 250764. It also included Z.C.'s

2024–2025 DPC materials. Z.C.'s 2024–2025 DPC, with exhibits including the iBRAIN enrollment contract and Sisters transportation agreement, is attached in this action as Exhibit B.

115. In a June 9, 2025 status letter filed in *Bruckauf,* Plaintiffs explained that, in Z.C.'s 2024–2025 administrative matter, the IHO had stated during the September 5, 2024 prehearing conference that pendency would not be decided until the FOFD issued; that the last hearing date had occurred on April 10, 2025; that no pendency order or FOFD had yet issued; and that DOE had not paid "a penny" toward *Z.C.'s tuition or special transportation for the 2024–2025 school year. Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 7 (S.D.N.Y. June 9, 2025).

116. That same June 9, 2025 status letter reported that DOE's position was that "pendency is disputed in this case and no determination with respect to Z.C.'s pendency placement has been made." *Id.* at 9.

117. Those facts are relevant here because they show DOE's practical treatment of Z.C.'s automatic pendency rights during the 2024–2025 school year.  They also show that DOE's refusal to implement pendency was not based on lack of notice.  DOE knew Parent claimed pendency under FOFD 250764, yet DOE continued to act as though no funding obligation existed unless and until a new administrative order issued.

118. This action is distinct from the 2024–2025 *Bruckauf* action for several reasons.

119. First, this action is a single-student case focused solely on Z.C. and Parent.

120. Second, this action seeks enforcement of SRO Decision No. 25-499, which had not issued when the earlier multi-student 2024–2025 action was filed. SRO Decision No. 25-499 is attached as Exhibit D.

121. Third, this action seeks judicial review, modification, or clarification of adverse portions of SRO Decision No. 25-499, including any adverse construction of the SRO's mootness analysis that DOE may attempt to use to avoid full contract-based pendency relief.

122. Fourth, this action seeks full contract-based pendency relief for Z.C., including tuition, related services, special transportation, and late fees that accrued because DOE failed to pay when payment was due and because administrative delay prolonged DOE's asserted basis for nonimplementation.

123. Fifth, this action spans both the 2024–2025 and 2025–2026 school years and addresses the continuity of Z.C.'s pendency placement across both years.

124. Sixth, this action asserts OATH- and OSR-specific delay claims as applied to Z.C., including the failure to ensure timely pendency adjudication during the 2024–2025 administrative proceeding and the extension and appellate-delay issues that followed. Parent's August 8, 2025 and August 28, 2025 OSR objections are attached as Exhibit F and Exhibit G.

125. Seventh, this action asserts *Monell* and § 1983 claims based on DOE's policy, custom, or practice of converting automatic pendency into delayed, disputed, order-dependent funding, including in iBRAIN matters involving Sisters transportation.

126. Finally, this action seeks discovery and declaratory relief that are not limited to the multi-student posture of the 2024–2025 Bruckauf action and that are necessary to address the specific manner in which DOE, OATH, and NYSED/OSR produced and prolonged the deprivation of Z.C.'s rights.

**B. Z.C. in the 2025–2026 *Bruckauf* Action**

127. Z.C. is also one of the student-plaintiffs in *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), a federal action in this District involving pendency-related claims for multiple students for the 2025–2026 school year.

128. The 2025–2026 *Bruckauf* action included Z.C.'s 2025–2026 DPC materials and raised issues concerning DOE's implementation of pendency for students attending iBRAIN. Z.C.'s 2025–2026 DPC, with exhibits including the iBRAIN enrollment contract and Sisters transportation agreement, is attached in this action as Exhibit E.

129. In that action, DOE submitted the Declaration of Sapna Kapoor, Esq., Senior Policy Advisor for the Impartial Hearing Order Implementation Unit, which included a Z.C.-specific statement.  DOE represented that Z.C.'s DPC was designated Case No. 297177; that the IHO issued an FOFD dated October 20, 2025 denying, in relevant part, Parent's request for tuition and special transportation funding; that the FOFD also included a finding on pendency; that Parent appealed the FOFD and pendency on October 27, 2025; and that "[o]nce the extent of the pendency issues on appeal are known, DOE will implement the portions of pendency that are not under appeal, if any." *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

130. DOE's statement is significant because it reflects an appeal-based self-stay position.  Rather than maintaining Z.C.'s pendency placement upon the filing of the 2025–2026 DPC, DOE represented that it would wait until the scope of the pendency issues on appeal was known and would then implement only whatever portions DOE deemed not under appeal, if any.

131. In a December 24, 2025 status letter filed in the 2025–2026 *Bruckauf* action, Plaintiffs documented that DOE still had not implemented any aspect of pendency or issued any

pendency payments for *Z.C. Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

132. The December 24, 2025 status letter further reported that, as of that date, DOE was delinquent in funding Z.C.'s pendency tuition by $167,847.72 and transportation by $78,771.00; that in early January 2026, when third installment payments became due, those amounts would increase to $343,647.40 and $157,542.00, respectively; and that those amounts were exclusive of applicable late fees that continued to accrue. *Id.*

133. This action is distinct from the 2025–2026 *Bruckauf* action because it is not merely a multi-student request for preliminary or interim pendency relief.  It seeks individualized enforcement, administrative review, declaratory relief, contract-based late-fee relief, procedural-denial-of-FAPE relief, and *Monell* relief based on Z.C.'s developed administrative record, including FOFD 250764, the 2024–2025 FOFD, the 2025–2026 administrative posture, DOE's appeal-based nonimplementation position, and SRO Decision No. 25-499.

134. This action also addresses the link between DOE's 2024–2025 non-implementation and its 2025–2026 continuation of the same self-stay practice.  By the time DOE withheld pendency funding during the 2025–2026 school year, DOE had already been placed on notice that Z.C.'s pendency was anchored in FOFD 250764 and that the failure to implement pendency was producing concrete financial and procedural harm.

### C. No Improper Duplication

135. Plaintiff is not attempting to split, multiply, or relitigate identical claims. This action arises from Z.C.-specific developments and seeks Z.C.-specific relief that could not have been fully presented in the same posture when the earlier multi-student actions were filed.

136. The subsequent Z.C.-specific events include, among others: the June 27, 2025 FOFD in IHO Case No. 277285; DOE's 2025–2026 appeal-based self-stay position; the continued nonpayment of pendency for both school years; the August 2025 OSR extension and late-answer/cross-appeal objections; the October 20, 2025 2025–2026 FOFD and appeal posture; and SRO Decision No. 25-499. Exhibits C, D, F, G.

137. These subsequent events create a distinct enforcement and review posture. They also create live claims for declaratory relief, contract-based late fees, attorneys' fees, procedural-denial-of-FAPE relief, and § 1983 / Monell relief.

138. Accordingly, this action is properly brought as a separate, Z.C.-specific case to enforce and review final administrative action, enforce automatic pendency across two school years, remedy the procedural consequences of administrative delay, and address DOE's policy or custom of treating automatic pendency as subject to discretionary, delayed, appeal-dependent implementation.

## IV. JURISDICTION AND VENUE

139. This Court has subject-matter jurisdiction under 20 U.S.C. § 1415(i)(2), because Plaintiff is aggrieved by adverse portions of SRO Decision No. 25-499 and seeks judicial review, modification, clarification, and relief concerning that final administrative determination.

140. This Court has jurisdiction under 20 U.S.C. § 1415(j), because Plaintiff seeks enforcement of Z.C.'s stay-put rights during the pendency of IDEA proceedings. Section 1415(j) creates an automatic statutory injunction that is enforceable in federal court.

141. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the IDEA, 20 U.S.C. § 1400 et seq.; 42 U.S.C. § 1983; the Fourteenth

Amendment to the United States Constitution; and federal regulations implementing the IDEA.

142. This Court has jurisdiction under 28 U.S.C. § 1343 because Plaintiff seeks relief for the deprivation, under color of state law, of rights secured by federal law and the United States Constitution.

143. This Court has jurisdiction under 42 U.S.C. § 1983 because Plaintiff alleges that DOE, acting under color of state law, through policy, custom, practice, ratification, deliberate indifference, and failure to train or supervise, caused the deprivation of Z.C.'s federally protected rights.

144. This Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, because an actual controversy exists concerning Defendants' obligations to maintain Z.C.'s pendency placement, enforce SRO Decision No. 25-499, comply with IDEA timelines, and refrain from policies and practices that convert automatic pendency into delayed and discretionary implementation.

145. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related claims arising under New York Education Law, the Regulations of the New York State Commissioner of Education, and related state-law or regulatory provisions, because those claims form part of the same case or controversy as Plaintiff's federal claims.

146. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Southern District of New York.

147. Venue is proper because DOE and the Chancellor act in New York City; OATH and OATH's Special Education Hearings Division administer impartial hearing proceedings in

New York City; the relevant administrative proceedings involved NYC DOE obligations; and the implementation failures, hearing-administration failures, and review-related consequences alleged herein arose from proceedings and conduct centered in New York City.

148. Venue is further proper because related federal actions involving Z.C. and the same pendency and implementation issues have been pending in this District, including *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), and *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF).

## V. PARTIES

### A. Plaintiff

149. Plaintiff Crysal Crosley is the parent and natural guardian of Z.C., a student with a disability.

150. Z.C. is a student with a disability within the meaning of the IDEA, 20 U.S.C. § 1401(3), and the New York Education Law.

151. Z.C. has significant educational, developmental, communication, physical, and related-service needs. Z.C. has been unilaterally placed at iBRAIN for multiple school years and requires intensive special education programming, related services, assistive supports, and special transportation.

152. Parent brings this action individually and as Parent and Natural Guardian of Z.C. to enforce Z.C.'s IDEA rights, pendency rights, procedural rights, and related federal rights.

### B. DOE Defendants

153. Defendant Kamar H. Samuels is sued in his official capacity as Chancellor of the New York City Department of Education.

154. Defendant New York City Department of Education is the local educational agency responsible for providing Z.C. with a FAPE, convening and participating in the IDEA process, maintaining pendency during IDEA proceedings, funding administrative orders, implementing IHO and SRO decisions, and ensuring that DOE policies and practices comply with federal and state law.

155. DOE and the Chancellor are responsible for maintaining Z.C.'s pendency placement at public expense during the pendency of administrative and judicial proceedings under 20 U.S.C. § 1415(j).

156. DOE and the Chancellor are responsible for implementing final and binding administrative orders, including the January 24, 2024 corrected FOFD in IHO Case No. 250764 and SRO Decision No. 25-499. Exhibits A, D.

157. DOE and the Chancellor are responsible for funding Z.C.'s tuition, related services, special transportation, and other ordered relief when required by pendency, final administrative decisions, or federal law.

158. DOE and the Chancellor are responsible for administering payment practices, authorization processes, implementation procedures, and internal policies governing the funding of pendency placements and administrative orders.

159. DOE and the Chancellor are also responsible for ensuring that DOE does not maintain policies, customs, practices, or procedures that violate § 1415(j), delay implementation of pendency, or condition automatic stay-put rights on DOE's agreement, a new IHO order, a DOE-approved form, or the absence of an administrative appeal.

## C. OATH Defendants

160. Defendant Office of Administrative Trials and Hearings is an agency responsible for administering New York City's special education impartial hearing process through OATH's Special Education Hearings Division.

161. Defendant Vilda Vera Mayuga is sued in her official capacity as Commissioner and Chief Administrative Law Judge of OATH.

162. Defendant Noel R. Garcia is sued in his official capacity as Deputy Commissioner of OATH's Special Education Hearings Division.

163. Defendant William Stewart is sued in his official capacity as Assistant Commissioner of OATH's Special Education Hearings Division.

164. OATH, Commissioner Mayuga, Deputy Commissioner Garcia, and Assistant Commissioner Stewart are directly responsible for policies, practices, supervision, and administration concerning special education hearings, including scheduling, compliance-date management, extension practice, hearing-officer supervision, and hearing administration procedures.

165. OATH Defendants are responsible for ensuring that impartial hearing administration complies with IDEA timelines, state regulatory timelines, due-process requirements, and the requirement that pendency be treated as an immediate statutory protection rather than as an issue deferred until final decision.

166. OATH Defendants' responsibilities include administration of prehearing conferences, hearing scheduling, extension requests, compliance-date tracking, resolution-process consequences, and procedures affecting whether pendency is timely addressed or deferred until after the educational harm and contract-based consequences have already occurred.

167. As applied to Z.C., OATH Defendants administered or supervised a hearing process in which pendency was raised during the 2024–2025 proceeding but was not resolved through a standalone pendency order during the school year. Instead, the pendency determination was embedded in the June 27, 2025 FOFD, nearly at the end of the 12-month school year. Exhibit C.

168. OATH Defendants are named for declaratory and prospective relief, and for such other relief as is available, arising from their role in the hearing-administration practices that delayed Z.C.'s pendency implementation and contributed to the procedural denial of FAPE.

### D. State Defendants

169. Defendant New York State Education Department is the state educational agency responsible for general supervision of the provision of special education and related services under the IDEA and Article 89 of the New York Education Law.

170. Defendant Office of State Review is part of NYSED and is responsible for state-level administrative review of IHO decisions under the IDEA and New York Education Law.

171. Defendant Betty A. Rosa is sued in her official capacity as Commissioner of Education of the State of New York.

172. NYSED, OSR, and Commissioner Rosa are responsible for state-level review, SRO timelines, extension practice, review procedures, and ensuring that state-level administrative review complies with federal and state timelines and due-process protections.

173. State Defendants are responsible for ensuring that OSR review does not permit DOE's appeal posture, extension requests, late-answer posture, or cross-appeal practice to operate as a de facto stay of pendency obligations.

174. As applied to Z.C., Parent objected to DOE's extension request and late answer/cross-appeal posture in the 2024–2025 OSR appeal because delay in a pendency matter prolonged DOE's nonimplementation and increased Parent's contract-based exposure. Exhibits F–G.

175. State Defendants are named for judicial review of adverse portions of SRO Decision No. 25-499 under 20 U.S.C. § 1415(i)(2), and for declaratory and prospective relief concerning OSR extension practice, review delay, and the use of administrative review posture as a practical stay of pendency.

176. Plaintiff does not name individual SROs as defendants.  Plaintiff names OSR as part of NYSED and Commissioner Rosa in her official capacity because the claims concern state-level review structure, timing, extension practice, and declaratory or prospective relief rather than personal liability of any individual SRO.

## VI. Z.C.'S EDUCATIONAL AND DISABILITY PROFILE

177. Z.C. is a student with a disability who requires intensive, individualized special education programming, related services, assistive supports, and specialized transportation to access, attend, participate in, and benefit from education.

178. Z.C. has been classified by DOE as a student with a traumatic brain injury.  Z.C.'s medical and educational profile also includes cerebral palsy and developmental delay, along with significant physical, communication, functional, and developmental needs. Exhibit D.

179. Z.C. uses a wheelchair, which she can operate with supervision.  Z.C. also is able to use a walker with supervision, but requires substantial adult support for mobility, safety, transfers, positioning, navigation, and access throughout the school day. Exhibit D.

180. Z.C. requires assistance for all activities of daily living.  Her educational program must therefore include not only classroom instruction, but also continuous functional support

throughout the day to allow her to access instruction, participate in school activities, receive related services, communicate effectively, and remain safe. Exhibit D.

181. Z.C. is mostly non-verbal and uses a total communication approach.  Her communication includes facial expressions, gestures, one- to two-word verbal approximations, high-tech augmentative and alternative communication ("AAC"), and, on rare occasions, sign language. Exhibit D.

182. Because of these communication needs, Z.C.'s educational placement must include assistive technology, AAC support, and staff familiar with her communication profile.  These supports are not ancillary; they are essential to Z.C.'s ability to participate in instruction, receive related services, express needs, demonstrate progress, and meaningfully access her educational program.

183. Z.C. also requires a 1:1 paraprofessional and individualized adult support throughout the school day.  The 1:1 paraprofessional is necessary to support Z.C.'s mobility, safety, communication, feeding, functional participation, transitions, and access to instruction and related services.

184. At iBRAIN, Z.C.'s program has included an 8:1+1 special class, individualized instruction, a 1:1 paraprofessional, assistive technology, and related services including occupational therapy ("OT"), physical therapy ("PT"), speech-language therapy, music therapy, and other related services necessary to address her unique needs. Exhibit A.

185. The January 24, 2024 FOFD in IHO Case No. 250764 found that iBRAIN addressed Z.C.'s unique educational needs and that Z.C. had shown progress academically, emotionally, and with respect to skills addressed in her related services. Exhibit A.

186. Special transportation is an integral component of Z.C.'s maintained educational placement. Z.C.'s transportation needs include paraprofessional support, air conditioning, lift-bus and wheelchair accessibility, and limited travel time. Exhibit A.

187. The transportation component of Z.C.'s placement is not a collateral convenience, optional add-on, or ordinary logistical service. For Z.C., specialized transportation is necessary to access the school day safely, consistently, and without compromising her health, mobility, communication, or functional needs.

188. Without appropriate special transportation, Z.C. cannot meaningfully access the iBRAIN placement, related services, therapies, supports, and staff continuity that comprise her pendency program.

189. The 2024–2025 DPC invoked Z.C.'s pendency rights and sought continuation of Z.C.'s iBRAIN placement, including tuition, related services, and special transportation under the applicable enrollment and transportation agreements. Exhibit B.

190. The 2025–2026 DPC likewise sought continuation of Z.C.'s established placement and the transportation services necessary for Z.C. to access that placement. Exhibit E.

191. SRO Decision No. 25-499 confirmed that there was no basis to disturb the determination that DOE was obligated to fund Z.C.'s iBRAIN tuition, related services, and transportation through Parent's chosen transportation provider as part of pendency. Exhibit D.

192. DOE's later attempts to separate transportation from Z.C.'s maintained placement, to substitute an unaccepted DOE transportation arrangement, or to treat transportation as a discretionary implementation detail are inconsistent with Z.C.'s disability profile, the January 24, 2024 FOFD, the 2024–2025 DPC, the 2025–2026 DPC, and SRO Decision No. 25-499. Exhibits A, B, D, E.

193. For Z.C., maintenance of pendency means maintenance of the educational program and related supports that permit her to attend, access, participate in, and benefit from her placement.

194. That includes iBRAIN tuition, related services, 1:1 support, assistive technology and AAC supports, and specialized transportation.

## VII. FOFD 250764: THE FINAL UNAPPEALED PENDENCY ANCHOR

195. The January 24, 2024 corrected FOFD in IHO Case No. 250764 is the central administrative order establishing Z.C.'s then-current educational placement for pendency purposes. Exhibit A.

196. The FOFD concerned Z.C.'s 2023–2024 school year.

197. The FOFD adjudicated DOE's failure to provide Z.C. with a FAPE, Parent's unilateral placement of Z.C. at iBRAIN, the appropriateness of that placement, the transportation services necessary for Z.C. to access the placement, equitable considerations, and the form of payment relief required. Exhibit A.

## A. DOE Failed to Offer Z.C. a FAPE for the 2023–2024 School Year

198. The IHO found that DOE failed to meet its burden of proving that it offered Z.C. a FAPE for the 2023–2024 school year. Exhibit A.

199. DOE did not defend its offered program.

200. DOE offered no testimony in support of the program, failed to introduce the IEP into evidence, and offered a placement at the very last moment, with insufficient time for Parent to visit the proposed placement before the beginning of Z.C.'s 12-month school year. Exhibit A.

201. The IHO therefore found that DOE failed to show that it provided Z.C. with an appropriate program for the 2023–2024 school year. Exhibit A.

202. That finding was not appealed by DOE.

203. B. The IHO Found iBRAIN to be appropriate for Z.C.

204. After finding that DOE failed to offer a FAPE, the IHO considered Parent's unilateral placement at iBRAIN. Exhibit A.

205. The IHO found that iBRAIN addressed Z.C.'s unique learning needs through individualized instruction tailored to her skills and abilities. Exhibit A.

206. The IHO recognized that Z.C. is a student with a brain injury and serious disabilities, including cerebral palsy, and that she has serious cognitive, language, academic, behavioral, and physical impairments. Exhibit A.

207. The IHO found that, at iBRAIN, Z.C. attended an 8:1+1 class, received individualized instruction, received related services including OT, PT, speech-language therapy, and music therapy, used assistive technology, and received the services of a 1:1 paraprofessional. Exhibit A.

208. The IHO further found that Z.C. had shown progress academically, emotionally, and with respect to the skills addressed in her related services. Exhibit A.

209. Based on that record, the IHO found that Parent satisfied her burden of showing that iBRAIN addressed Z.C.'s unique educational needs. Exhibit A.

210. That finding was not appealed by DOE.

**C. Special Transportation Was Part of Z.C.'s Program and Placement**

211. The IHO recognized that Z.C. received special transportation services to and from school as part of the unilateral placement for which Parent sought funding. Exhibit A.

212. Those transportation services included paraprofessional support, air conditioning, a lift bus with wheelchair accessibility, and limited travel time of no more than 90 minutes. Exhibit A.

213. For Z.C., these transportation features were neither incidental nor optional.

214. They were necessary components of the educational arrangement that allowed Z.C. to access iBRAIN safely and consistently.

215. The FOFD's inclusion of transportation within the ordered relief is central to this action.

216. DOE cannot treat Z.C.'s transportation as a separate, discretionary implementation matter when the final unappealed administrative order expressly included special transportation as part of the relief required to maintain Z.C.'s placement. Exhibit A.

217. Nor can DOE later recharacterize transportation as merely a replaceable delivery mechanism without addressing the actual transportation program that was ordered, contracted for, and necessary to allow Z.C. to access the pendency placement.

### D. DOE's Cost and Collusion Objections Were Rejected for Lack of Evidence

218. In the 2023–2024 proceeding, DOE objected to the cost of iBRAIN, related services, and transportation, and made other arguments. Exhibit A.

219. The IHO rejected those objections because DOE presented no evidence to substantiate them. Exhibit A.

220. With respect to transportation, the IHO found that DOE produced no evidence of impropriety and no evidence that less expensive and appropriate transportation was available for Z.C. Exhibit A.

221. This finding matters because DOE later recycled cost and transportation objections as reasons to delay or withhold pendency implementation for the 2024–2025 and 2025–2026 school years.

222. DOE cannot use unproven cost and transportation objections to nullify, delay, or condition a pendency placement established by a final unappealed administrative order.

223. DOE also cannot transform objections it failed to prove in the 2023–2024 proceeding into a later basis for refusing to implement the pendency consequences of the final, unappealed FOFD.

**E. The IHO Ordered Reimbursement and Direct Payment**

224. The IHO found that Parent was unable to afford the high cost of the unilateral placement and transportation and that direct payment was therefore appropriate. Exhibit A.

225. The IHO ordered DOE to reimburse Parent for any amounts already paid for Z.C.'s attendance at iBRAIN, related services, and special transportation for the 2023–2024 school year. Exhibit A.

226. The IHO further ordered DOE to pay the remainder of the cost directly for the school, related services, and transportation. Exhibit A.

227. The direct-payment component of the FOFD is important because it confirms that DOE's obligation was not merely retrospective reimbursement after Parent fronted the costs.

228. DOE was ordered to directly fund the placement and transportation obligations that Parent could not afford to carry.

229. That direct-payment structure became part of the operative administrative determination that later supplied Z.C.'s pendency anchor.

**F. The FOFD Ordered Payment Pursuant to the Terms of the Contracts**

230. The FOFD did not order DOE to pay an abstract reasonable amount untethered to the operative agreements. Exhibit A.

231. Instead, the IHO ordered that "[t]he amount of these payments shall be pursuant to the terms of the parent's enrollment agreement for tuition and related services and the transportation agreement for transportation." Exhibit A.

232. That contractual language is critical to Plaintiff's late-fee claim.

233. Because FOFD 250764 established Z.C.'s pendency placement and ordered payment pursuant to the terms of Parent's enrollment agreement and transportation agreement, DOE's pendency obligation for subsequent proceedings required maintenance of that placement in accordance with the operative agreements for the relevant school year.

234. When DOE failed to pay the amounts due when they should have been paid, the amounts owed increased according to the terms of the applicable contracts.

235. Those late fees are part of the contract-based payment consequences of DOE's failure to maintain pendency.

236. They are not punitive contempt sanctions, and they are not a separate attempt to impose damages detached from the placement.

237. DOE cannot accept the benefit of a pendency order defined by the contracts while disclaiming the contract-based consequences of failing to pay under those contracts.

238. Nor can DOE rely on the contracts to identify the services to be maintained, while refusing to honor the contractual payment terms that determine what maintenance of those services requires.

**G. DOE Did Not Appeal FOFD 250764**

239. DOE did not appeal the January 24, 2024 corrected FOFD in IHO Case No. 250764.

240. Because DOE did not appeal, the FOFD became final and binding. Exhibit A.

241. As a final, unappealed administrative decision in Parent's favor, FOFD 250764 established Z.C.'s then-current educational placement for purposes of 20 U.S.C. § 1415(j).

242. That placement included iBRAIN tuition, related services, assistive supports, 1:1 paraprofessional support, and special transportation pursuant to the terms of the relevant agreements. Exhibit A.

243. FOFD 250764 was therefore the operative pendency anchor when Parent filed the July 2, 2024 DPC for the 2024–2025 school year and remained the operative anchor when Parent filed the 2025–2026 DPC absent a lawful change in placement. Exhibits A, B, E.

244. DOE's obligation to maintain Z.C.'s placement attached automatically upon the filing of those DPCs.

245. It was not contingent on DOE's agreement, a new IHO order, a new SRO decision, or a federal court order.

246. DOE's later disagreement with cost, transportation, administrative posture, or appeal timing did not undo the finality of FOFD 250764, did not stay its pendency consequences, and did not authorize DOE to withhold funding for the placement it was required to maintain.

## VIII. LEGAL FOUNDATION: § 1415(j) CREATES AN AUTOMATIC INJUNCTION UPON DPC FILING

247. The IDEA's stay-put provision provides that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).

248. Section 1415(j) creates an automatic statutory injunction that attaches upon the filing of a due process complaint.

249. The stay-put right is automatic.  It does not depend on a parent satisfying the ordinary preliminary-injunction factors.

250. The parent need not separately prove irreparable harm, likelihood of success, or a balance of hardships to obtain the protection of § 1415(j).

251. The Second Circuit has repeatedly recognized that § 1415(j) functions as an automatic injunction preserving the student's educational status quo during administrative and judicial proceedings. See *Zvi D. ex rel. Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir. 2004); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

252. An IHO order is not required to create the stay-put right.

253. A later IHO order, SRO decision, or federal court order may identify, confirm, declare, or enforce the student's pendency placement, but the statutory right itself arises by operation of law.

254. Thus, once Parent filed Z.C.'s DPCs for the 2024–2025 and 2025–2026 school years, DOE was required to maintain Z.C.'s then-current educational placement unless Parent and DOE agreed otherwise or unless a lawful change in placement occurred.

255. Parent did not agree to change Z.C.'s pendency placement.

256. DOE did not obtain a stay of Z.C.'s pendency placement.

257. No lawful pendency-changing event occurred.

258. The pendency placement established by FOFD 250764 therefore remained operative when Parent filed the 2024–2025 DPC and continued to remain operative when Parent filed the 2025–2026 DPC. Exhibits A, B, E.

**A. The Statutory Right Attaches Automatically**

259. Section 1415(j) is self-executing.

260. It commands maintenance of the child's then-current educational placement "during the pendency" of IDEA proceedings.

261. That command is triggered by the filing of a due process complaint and the existence of a then-current educational placement.

262. A parent may also provide advance notice of the student's continued placement and intent to seek funding through a ten-day notice.

263. Here, Parent raised and preserved Z.C.'s continued placement before the DPC through the ten-day notice process, then formally invoked pendency in the DPC itself.

264. DOE therefore had notice of Z.C.'s pendency claim before any prehearing conference occurred.

265. DOE also had an independent statutory opportunity and obligation to address the dispute at the resolution-meeting stage before the matter proceeded to an IHO prehearing conference.

266. The resolution meeting is the first mandatory IDEA forum in which DOE should have addressed Z.C.'s pendency position, implementation, and any claimed dispute concerning scope, cost, transportation, or funding.

267. DOE's failure to hold or meaningfully use the resolution process did not suspend § 1415(j).

268. DOE's failure to resolve pendency during the resolution period did not permit DOE to delay implementation until a prehearing conference, merits hearing, FOFD, SRO decision, or federal order.

269. The statute does not say that DOE may wait for a new administrative order before maintaining placement.

270. The statute does not say that DOE may wait for a new IHO to "clarify" or "reaffirm" pendency before funding the placement.

271. The statute does not say that DOE may withhold implementation whenever DOE asserts cost, transportation, documentation, appeal posture, or scope objections.

272. The statute does not permit DOE to treat pendency as discretionary.

273. The statutory command is mandatory: the child "shall remain" in the then-current educational placement. 20 U.S.C. § 1415(j).

274. For a student whose placement has already been established by a final, unappealed administrative decision, the filing of a new DPC does not create a blank slate.

275. It triggers DOE's obligation to maintain the established placement unless the parties agree otherwise or a lawful pendency-changing event occurs.

276. Here, FOFD 250764 established Z.C.'s then-current educational placement. Exhibit A.

277. DOE did not appeal FOFD 250764.

278. When Parent filed the July 2, 2024 DPC, DOE was required to maintain that placement immediately.

279. DOE was also required to address and implement that automatic obligation during the resolution period, before the case reached any prehearing conference.

280. When Parent filed the 2025–2026 DPC, DOE was again required to continue maintaining that placement immediately.

281. DOE again was required to address and implement pendency through the IDEA's earliest dispute-resolution mechanisms, not to wait until the issue became embedded in merits litigation.

282. DOE had no lawful authority to wait for OATH, OSR, or this Court to recreate the right before DOE began funding the placement.

**B. Pendency Placement and Funding Go Together**

283. Pendency is not merely a theoretical label identifying a school or program.

284. Pendency requires maintenance of the educational program and related services that make up the student's then-current educational placement.

285. The obligation to maintain placement at public expense includes the funding necessary to keep the placement operational and available to the student.

286. For Z.C., pendency includes iBRAIN tuition.

287. For Z.C., pendency includes related services.

288. For Z.C., pendency includes 1:1 paraprofessional support and assistive supports that are part of the educational program.

289. For Z.C., pendency includes specialized transportation necessary to access iBRAIN safely and consistently.

290. For Z.C., pendency includes transportation pursuant to the transportation agreement because FOFD 250764 ordered payment pursuant to the parent's transportation agreement, the 2024–2025 DPC invoked that pendency, and SRO Decision No. 25-499 found no basis to

disturb the determination that DOE must fund transportation through Parent's chosen provider. Exhibits A, B, D.

291. DOE cannot comply with § 1415(j) by acknowledging a pendency "anchor" while refusing to fund the services and transportation that comprise the maintained placement.

292. A stay-put right without funding is not maintenance.

293. A placement that cannot be paid for is not being maintained at public expense.

294. A transportation-dependent student whose transportation is withheld or substituted without lawful agreement is not being maintained in the same educational placement.

295. DOE's obligation was therefore not limited to recognizing iBRAIN as a word on paper.

296. DOE was required to maintain the actual program that FOFD 250764 established and that Parent invoked in the ten-day notice process, the 2024–2025 DPC, and the 2025–2026 DPC.

297. That required funding iBRAIN tuition, related services, 1:1 support, assistive supports, and specialized transportation as part of the pendency placement.

## C. DOE's Contrary Position Is Unlawful

298. DOE's contrary position is that it may withhold funding until a new IHO order fully determines the scope of pendency.

299. That position directly contradicts § 1415(j).

300. It converts an automatic statutory injunction into an administrative benefit that DOE will fund only after DOE receives an order it considers sufficient.

301. DOE's position is particularly unlawful where, as here, pendency was already anchored in a final, unappealed FOFD.

302. In related federal litigation, DOE expressly stated that, when pendency is disputed, DOE "requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

303. DOE also stated that "in every iBrain case," it contests Sisters transportation and offers transportation through the Office of Pupil Transportation instead. *Id.*

304. Those statements confirm a policy or practice under which DOE itself creates or asserts a dispute and then treats the existence of that dispute as a reason not to fund pendency.

305. Under DOE's theory, pendency becomes automatic only when DOE does not contest it.

306. That is not what § 1415(j) provides.

307. The purpose of § 1415(j) is to preserve the student's status quo during disputes, not only after disputes have been resolved.

308. DOE's position turns the statute upside down by allowing DOE to delay maintenance precisely when the dispute-resolution process is pending.

309. DOE may litigate its defenses and administrative positions.

310. But DOE may not use those positions to self-stay the federal statutory injunction.

311. DOE's refusal to fund Z.C.'s pendency unless and until a new administrative order issued therefore violated § 1415(j).

312. DOE's failure to address pendency during the resolution period further underscores the unlawfulness of its position: DOE cannot ignore the earliest mandatory statutory process, refuse implementation, and then rely on the absence of a later IHO order as a justification for continued nonpayment.

### D. *Crespo* Confirms That DOE's Theory Is Baseless

313. DOE's theory has already been rejected in this District.

314. In *Crespo v. Aviles-Ramos*, DOE advanced the theory that it had no obligation to implement pendency unless and until DOE agreed with the placement or an IHO issued a new pendency order.

315. Judge Vargas rejected DOE's position in unequivocal terms.

316. The Court described DOE's arguments as "baseless." *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38, at 11 (S.D.N.Y.).

317. The Court explained that DOE's position was "unsupported by the statute, case law, and the governing regulations." *Id.* at 12.

318. The Court further explained that DOE effectively argued that it could choose to withhold all payments for a student's education while asserting control over how pendency would be provided. *Id.* at 13.

319. The Court also expressed concern that, given how insubstantial many of DOE's arguments were, DOE was not operating in good faith with respect to those students. *Id.* at 14.

320. Crespo confirms that DOE's order-dependent funding theory is wholly incompatible with § 1415(j).

321. Crespo also confirms that DOE may not treat its disagreement with a parent's pendency placement, transportation provider, or funding scope as permission to withhold all payments.

322. DOE applied the same unlawful logic to Z.C.

323. DOE knew that Parent claimed pendency under FOFD 250764.

324. DOE knew that FOFD 250764 was final and unappealed.

325. DOE knew that Parent raised Z.C.'s continued placement before the DPC, invoked pendency in the DPC, and required maintenance of the placement once the DPC was filed.

326. DOE knew that the resolution process was the first required stage at which it should have addressed implementation and any claimed dispute.

327. Yet DOE still withheld pendency funding based on cost objections, transportation objections, administrative posture, and appeal posture.

328. That conduct is the same type of self-stay theory rejected in Crespo.

**Exhaustion Is Not Required For Pendency Enforcement**

329. Parents are not required to exhaust administrative remedies or first obtain a separate administrative pendency order before invoking federal jurisdiction to enforce § 1415(j).

330. Pendency is uniquely time-sensitive.

331. Requiring a parent to wait months for an IHO or SRO to confirm pendency before enforcing the right would defeat the purpose of the stay-put provision.

332. Courts have recognized that exhaustion is not required for enforcement of pendency rights because § 1415(j) is designed to preserve the status quo while administrative and judicial proceedings are pending. See *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199–200 (2d Cir. 2002); *Spilsbury v. District of Columbia*, 307 F. Supp. 2d 22, 26 n.1 (D.D.C. 2004); *C.P. ex rel. Curtis v. Kankakee Sch. Dist. No. 111*, No. 05-2145, 2005 WL 8163374, at *2 (C.D. Ill. Aug. 29, 2005).

333. This principle defeats DOE's expected argument that Parent was required to wait for OATH or OSR before seeking enforcement.

334. Parent was not required to wait for OATH to issue a standalone pendency order.

335. Parent was not required to wait for the IHO to embed pendency in a final FOFD.

336. Parent was not required to wait for OSR to complete review.

**Parent Was Not Required To Wait For DOE To Decide What Portions Of Pendency Were No Longer "Under Appeal."**

337. Parent was not required to wait until DOE chose to treat the resolution period, prehearing conference, merits hearing, or appellate process as complete.

338. The right existed when the DPCs were filed.

339. The federal enforcement claim exists because DOE did not maintain the placement when the right attached.

340. DOE's contrary exhaustion-style position would allow the very delay that § 1415(j) was enacted to prevent.

## IX. THE 2024–2025 DPC TRIGGERED AUTOMATIC PENDENCY

341. Before filing the 2024–2025 DPC, Parent provided notice that Z.C. would continue at iBRAIN and that Parent would seek public funding for Z.C.'s continued placement and services.

342. Parent's ten-day notice placed DOE on notice that Parent intended to maintain Z.C.'s educational program and seek funding for the placement and related services.

343. Parent filed Z.C.'s due process complaint for the 2024–2025 school year on July 2, 2024. Exhibit B.

344. The 2024–2025 DPC was assigned IHO Case No. 277285.

345. The 2024–2025 DPC invoked Z.C.'s pendency rights.

346. The DPC identified Z.C.'s established placement and sought continued public funding for Z.C.'s attendance at iBRAIN.

347. The DPC sought funding for iBRAIN tuition.

348. The DPC sought funding for related services.

349. The DPC sought continuation of the supports required for Z.C. to access and benefit from the iBRAIN program, including 1:1 support and assistive supports.

350. The DPC sought funding for special transportation through Sisters transportation.

351. The DPC attached or incorporated the relevant 2024–2025 agreements, including the iBRAIN enrollment contract and Sisters transportation agreement. Exhibit B.

352. The DPC also triggered DOE's obligation to convene and participate in the resolution process.

353. The resolution meeting was the first mandatory statutory opportunity for DOE to address Parent's claims, including pendency, funding, transportation, and implementation.

354. DOE was required to address Z.C.'s stay-put rights at the outset of the administrative process, not wait until a prehearing conference, merits hearing, FOFD, SRO appeal, or federal enforcement action.

355. DOE failed to use the resolution process to resolve or implement Z.C.'s pendency rights.

356. DOE's failure to hold or meaningfully participate in the resolution process did not suspend the automatic injunction created by § 1415(j).

357. The pendency basis for the DPC was FOFD 250764.

358. FOFD 250764 had already established iBRAIN, related services, and special transportation pursuant to the relevant agreements as Z.C.'s then-current educational placement. Exhibit A.

359. DOE did not appeal FOFD 250764.

360. Accordingly, when Parent filed the July 2, 2024 DPC, DOE was required to maintain Z.C.'s FOFD 250764 placement at public expense.

361. DOE's obligation attached immediately upon the filing of the DPC.

362. DOE's obligation did not depend on a new pendency hearing.

363. DOE's obligation did not depend on a new IHO order.

364. DOE's obligation did not depend on DOE's agreement with Parent's pendency position.

365. DOE's obligation did not depend on DOE's acceptance of the transportation provider.

**DOE's Obligation Did Not Depend On DOE's Willingness To Process The Matter In Its "Normal Course."**

366. DOE's obligation was imposed directly by § 1415(j).

367. From July 2, 2024 forward, DOE was required to maintain Z.C.'s placement, including tuition, related services, required supports, and specialized transportation.

368. DOE failed to do so.

## X. DOE AND OATH CONVERTED 2024–2025 PENDENCY INTO A DELAYED MERITS PROCESS

369. Z.C.'s pendency was not first raised at the September 5, 2024 prehearing conference.

370. Parent had already placed DOE on notice through the ten-day notice process.

371. Parent had already invoked pendency in the July 2, 2024 DPC. Exhibit B.

372. DOE was required to address pendency during the resolution period, before any prehearing conference occurred.

373. DOE failed to resolve or implement pendency during the resolution period.

374. By the time of the September 5, 2024 prehearing conference, DOE had already failed to maintain Z.C.'s placement for approximately two months after the DPC filing.

375. At the September 5, 2024 prehearing conference, Parent again asserted pendency based on FOFD 250764.

376. DOE disputed pendency based on cost, scope, and transportation issues.

377. DOE's position was not that it lacked notice of Parent's pendency claim.

378. DOE knew that Parent was asserting pendency based on FOFD 250764.

379. DOE knew that FOFD 250764 was final and unappealed.

380. DOE knew that Parent had invoked pendency in the DPC.

381. DOE knew that the resolution period should have addressed implementation before the case reached the prehearing conference stage.

382. DOE nevertheless treated the pendency obligation as disputed and unfunded.

383. OATH did not ensure that a standalone pendency order issued promptly.

384. The IHO did not decide pendency at or immediately after the September 5, 2024 prehearing conference.

385. Instead, pendency was deferred into the merits process.

386. The hearing convened on November 21, 2024.

387. The hearing concluded on April 10, 2025.

388. By the time the hearing concluded, more than nine months had passed since Parent filed the July 2, 2024 DPC.

389. During that period, DOE still had not maintained Z.C.'s pendency placement by funding tuition and transportation.

390. By June 9, 2025, no standalone pendency order had issued.

391. By June 9, 2025, no FOFD had issued.

392. By June 9, 2025, DOE had paid nothing toward Z.C.'s tuition or special transportation for the 2024–2025 school year.

393. In the June 9, 2025 status letter filed in *Bruckauf v. Banks*, Plaintiffs reported that DOE had not paid "a penny" toward Z.C.'s tuition or special transportation for the 2024–2025 school year and had not provided special transportation services to Z.C. *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 7 (S.D.N.Y. June 9, 2025).

394. That status letter further reported that DOE's position was that "pendency is disputed in this case and no determination with respect to Z.C.'s pendency placement has been made." *Id.* at 9.

395. The same status letter reported that, as of June 9, 2025, DOE owed more than $390,000 in tuition fees, inclusive of tuition late fees, and more than $160,000 in transportation fees, inclusive of transportation late fees, for Z.C.'s 2024–2025 pendency placement. *Id.* at 7.

396. Those amounts continued to accrue because DOE had not funded pendency when payment was due.

397. They also continued to accrue because DOE failed to address and implement pendency during the resolution process, and because OATH's hearing administration allowed pendency to remain unresolved until after the point when timely pendency implementation could have preserved the status quo.

398. On June 27, 2025, the IHO finally issued the FOFD in IHO Case No. 277285. Exhibit C.

399. The June 27, 2025 FOFD confirmed that Parent's pendency position was correct.

400. The IHO found that the basis for Z.C.'s pendency services was the unappealed January 24, 2024 FOFD. Exhibit C.

401. The IHO further ordered DOE to fund, "via pendency," Z.C.'s attendance at iBRAIN, including related services, and transportation expenses provided by Parent's chosen transportation provider from July 2, 2024 through the date of the decision. Exhibit C.

402. But by the time the IHO made that determination, the 12-month 2024–2025 school year was essentially over.

403. A pendency ruling issued at the end of the school year does not serve the core function of § 1415(j).

404. It does not preserve the status quo in real time.

405. It does not prevent disruption during the dispute.

406. It does not provide the immediate statutory protection Congress required.

407. It converts automatic stay-put protection into after-the-fact reimbursement or enforcement litigation.

408. OATH's handling of Z.C.'s pendency therefore deprived the stay-put provision of its intended effect.

409. DOE benefited from that delay by continuing to withhold funding while insisting that pendency remained disputed or undetermined.

410. DOE and OATH together converted Z.C.'s 2024–2025 pendency from an automatic injunction into a delayed merits issue.

411. This delay independently denied FAPE procedurally.

412. It significantly impeded Parent's ability to participate meaningfully in the IDEA process.

413. It deprived Z.C. and Parent of timely procedural protections.

414. It increased Parent's contract-based exposure.

415. It increased accrued late fees.

416. It increased attorneys' fees.

417. It made the automatic injunction practically meaningless during the very period when it was supposed to operate.

418. SRO Decision No. 25-499 later confirmed that there was no basis to disturb the IHO's determination that DOE was obligated to fund Z.C.'s iBRAIN tuition, related services, and transportation through Parent's chosen transportation provider. Exhibit D.

419. That later confirmation reinforces that DOE's and OATH's 2024–2025 delay did not reflect genuine absence of a pendency basis.

420. It reflects failure to implement and administer a right that had already attached automatically on July 2, 2024.

## XI. SRO DECISION NO. 25-499 REINFORCES THAT PENDENCY, NOT EQUITABLE REDUCTION, CONTROLS

421. Parent appealed adverse portions of the June 27, 2025 FOFD to the Office of State Review.

422. The appeal was assigned SRO Decision No. 25-499. Exhibit D.

423. Parent appealed the IHO's denial of transportation funding on the merits.

424. Parent also appealed the IHO's denial of funding for an independent neuropsychological evaluation.

425. DOE cross-appealed from the IHO's pendency determination and from the IHO's determinations concerning equitable considerations. Exhibit D.

### A. SRO Procedural Posture

426. In the SRO appeal, Parent requested that the IHO's findings that DOE denied Z.C. a FAPE, that iBRAIN was appropriate, and that equitable considerations supported direct tuition funding be affirmed. Exhibit D.

427. Parent challenged the IHO's denial of transportation funding on the merits. Exhibit D.

428. Parent also challenged the IHO's denial of the independent neuropsychological evaluation. Exhibit D.

429. DOE cross-appealed pendency.

430. DOE argued that increased costs for iBRAIN tuition and transportation changed or disrupted Z.C.'s pendency placement. Exhibit D.

431. DOE also argued that equitable considerations did not support Parent's requested relief. Exhibit D.

432. DOE further sought, if transportation funding were required, to provide transportation itself rather than fund Parent's chosen transportation provider. Exhibit D.

433. DOE's cross-appeal therefore placed before the SRO the same core positions DOE later used to justify nonimplementation: cost objections, transportation-provider objections, and DOE's asserted authority to substitute its own transportation arrangement instead of funding the transportation component of Z.C.'s established pendency placement.

**B. Final and Binding Findings**

434. DOE did not cross-appeal the IHO's finding that DOE failed to offer Z.C. a FAPE for the 2024–2025 school year. Exhibit D.

435. DOE did not cross-appeal the IHO's finding that iBRAIN was an appropriate unilateral placement for Z.C. for the 2024–2025 school year. Exhibit D.

436. Neither party appealed the IHO's determination that Z.C.'s pendency services were based on the unappealed January 24, 2024 FOFD. Exhibit D.

437. Accordingly, those findings became final and binding on the parties. Exhibit D.

438. Those final and binding findings are significant here.

439. They confirm that DOE's failure to offer FAPE for 2024–2025 is no longer open to administrative dispute.

440. They confirm that iBRAIN's appropriateness for Z.C. for the 2024–2025 school year is no longer open to administrative dispute.

441. They confirm that FOFD 250764 supplied the operative pendency basis.

442. They also confirm that DOE's later refusal to implement pendency cannot be justified by relitigating the existence of the pendency anchor.

443. Nor can DOE use the pendency appeal posture to retroactively excuse its failure to maintain Z.C.'s placement from the July 2, 2024 DPC filing date forward.

444. The SRO's final-and-binding analysis confirms that the central factual and legal premises supporting Parent's pendency claim were not unsettled in the way DOE suggests.

## C. The SRO's Pendency Holding

445. SRO Decision No. 25-499 held that there was no basis to disturb the IHO's determination that DOE was obligated to fund the costs of tuition and related services at iBRAIN and the costs of transportation services delivered by Parent's chosen provider. Exhibit D.

446. The SRO recognized that the January 24, 2024 unappealed FOFD formed the basis for pendency. Exhibit D.

447. The SRO rejected DOE's attempt, on the record presented, to treat cost increases as a change in Z.C.'s pendency placement. Exhibit D.

448. DOE argued that the cost of Z.C.'s program had increased from the 2023–2024 school year to the 2024–2025 school year and that this increase affected a change in placement. Exhibit D.

449. The SRO found that, on the underdeveloped record concerning the reasons for the cost increase, there was no basis to find that Z.C.'s iBRAIN program with transportation for the

2024–2025 school year constituted a significant increase in cost amounting to a change in placement. Exhibit D.

450. That determination is important because DOE relied on cost objections not merely as a merits argument, but as a practical justification for withholding implementation while the school year proceeded.

451. The SRO also addressed DOE's attempt to claim that it should be permitted to provide pendency transportation itself.

452. The SRO found that the January 2024 unappealed FOFD ordered DOE to fund Z.C.'s transportation services pursuant to the terms of Parent's transportation agreement. Exhibit D.

453. The SRO further found that the IHO in the 2024–2025 matter ordered DOE to "fund," rather than provide, Z.C.'s pendency transportation. Exhibit D.

454. The SRO concluded that DOE failed to articulate a coherent position with respect to its asserted right to deliver Z.C.'s pendency transportation services instead of funding Parent's chosen provider. Exhibit D.

455. The SRO therefore found no basis to disturb the IHO's pendency determination requiring DOE to fund iBRAIN tuition, related services, and transportation through Parent's chosen transportation provider. Exhibit D.

456. That holding reinforces Plaintiff's position in this action.

457. DOE's cost objections did not defeat pendency.

458. DOE's transportation-substitution theory did not defeat pendency.

459. DOE's dissatisfaction with Parent's chosen transportation provider did not permit DOE to withhold all transportation funding.

460. DOE's disagreement with the scope or cost of pendency did not authorize DOE to self-stay its funding obligations.

461. Because the SRO rejected DOE's pendency cross-appeal, DOE cannot now use the same rejected cost and transportation objections to limit implementation, avoid late-fee consequences, or narrow the pendency relief that should have been provided from the DPC filing date forward.

**D. SRO Decision No. 25-499 Confirms That Court Enforcement Is Proper**

462. SRO Decision No. 25-499 recognized that enforcement disputes concerning prior administrative determinations are properly pursued in court. Exhibit D.

463. The SRO noted that neither IHOs nor SROs have independent administrative-enforcement authority to enforce prior administrative decisions. Exhibit D.

464. The SRO further recognized that a party seeking enforcement of a favorable administrative determination may pursue enforcement through the judicial system. Exhibit D.

465. This confirms that the present action is properly postured as a federal enforcement and review action.

466. Plaintiff seeks enforcement of Z.C.'s pendency rights, enforcement of SRO Decision No. 25-499, and review or clarification of adverse portions of that final administrative decision.

467. Plaintiff does not ask this Court to perform a task that OATH or OSR retains exclusive jurisdiction to perform.

468. Plaintiff asks this Court to enforce federal rights, enforce final administrative determinations, and provide review under 20 U.S.C. § 1415(i)(2).

469. The SRO's own recognition of the limits of administrative enforcement supports federal jurisdiction and the need for judicial relief here.

470. This point is especially important because DOE's position depends on delay within the administrative system while simultaneously resisting judicial enforcement as premature.

471. SRO Decision No. 25-499 confirms that once the dispute concerns enforcement of favorable administrative determinations and pendency obligations, the proper forum is this Court.

**E. The SRO's Mootness Ruling Supports Plaintiff's Contract-Based Pendency Claim**

472. The SRO held that review of certain equitable-considerations and transportation-merits issues had become moot because pendency supplied the relief Parent sought for the 2024–2025 school year. Exhibit D.

473. The SRO reasoned that Z.C. was entitled to remain in the stay-put placement during the pendency of the proceedings and that, because the proceedings had encompassed the entirety of the 12-month 2024–2025 school year, Parent had received all of the relief sought through pendency. Exhibit D.

474. The SRO's mootness ruling helps Plaintiff; it does not help DOE.

475. If pendency supplied all relief sought for the 2024–2025 school year, then pendency supplied the full contract-based relief Parent sought in the DPC and that FOFD 250764 incorporated.

476. That relief includes iBRAIN tuition.

477. That relief includes related services.

478. That relief includes transportation through Parent's chosen provider.

479. That relief includes the contract-based financial consequences of DOE's failure to pay when payment was due, including late fees.

480. DOE cannot use the SRO's mootness ruling as both a sword and a shield.

481. DOE cannot argue that pendency made merits review unnecessary while denying the full contract-based pendency consequences that made the merits issues moot.

482. DOE cannot avoid merits review by invoking pendency and then avoid pendency implementation by refusing to pay the contractual amounts that accrued because DOE did not timely fund the placement.

483. DOE cannot transform the SRO's mootness ruling into a windfall for DOE.

484. The SRO's reasoning confirms that pendency—not an equitable reduction, transportation-merits denial, or year-specific remedial limitation—is what controlled the relief for the 2024–2025 school year.

485. Because pendency controlled, the relevant inquiry is what placement and funding obligations were required to maintain Z.C.'s established educational program from July 2, 2024 forward.

486. FOFD 250764 answered that question by ordering payment pursuant to the terms of Parent's enrollment agreement and transportation agreement. Exhibit A.

487. The 2024–2025 DPC invoked that pendency and included the relevant 2024–2025 agreements. Exhibit B.

488. SRO Decision No. 25-499 confirmed that there was no basis to disturb the requirement that DOE fund iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

489. Accordingly, to the extent DOE contends that SRO Decision No. 25-499 extinguished or limited contract-based late fees, transportation funding consequences, or full pendency implementation, Plaintiff seeks judicial review, reversal, modification, or clarification.

490. The requested clarification is necessary because DOE cannot be permitted to characterize the SRO's mootness ruling as eliminating the very contract-based relief that made the merits issues moot.

491. If DOE had timely funded pendency, the contractual obligations would have been satisfied when due.

492. Because DOE did not do so, the resulting late fees are part of the financial consequences of DOE's failure to maintain pendency in accordance with the operative agreements.

**F. Any Prong III Reduction Was Merits-Specific and Does Not Carry Forward to Redefine Pendency**

493. Any 2024–2025 Prong III reduction or adverse equitable determination was a merits-specific, year-specific remedy.

494. It did not redefine Z.C.'s pendency placement.

495. It did not amend FOFD 250764.

496. It did not erase the January 24, 2024 FOFD as the final unappealed pendency anchor.

497. It did not authorize DOE to withhold pendency funding for the 2025–2026 school year.

498. It did not convert Z.C.'s pendency transportation from Parent's chosen provider into DOE-provided transportation.

499. It did not eliminate contract-based late fees that accrued because DOE failed to maintain pendency when payment was due.

500. Pendency carries forward the educational placement and services that constitute the student's then-current educational placement.

501. Pendency does not carry forward an equitable penalty, a Prong III reduction, or a year-specific remedial limitation imposed in a merits analysis.

502. DOE's attempt to transform merits-specific equitable issues into a pendency limitation would undermine § 1415(j).

503. It would allow DOE to use year-specific equitable disputes to destabilize an otherwise established stay-put placement.

504. It would also allow DOE to obtain indirectly what it could not obtain directly: a self-stay of funding obligations during the pendency of administrative and judicial proceedings.

505. The proper rule is that Z.C.'s pendency placement continues based on the operative placement anchor unless the parties agree otherwise or a lawful pendency-changing event occurs.

506. Moonsammy reinforces this principle. There, the court recognized that pendency placement and funding obligations continue based on the operative placement and are not defeated by year-specific equitable disputes or DOE's administrative disagreement with implementation. See *Moonsammy v. Banks*, No. 24-cv-05151(PAE), ECF No. 27 (S.D.N.Y. Aug. 26, 2025).

507. Here, the operative placement anchor was FOFD 250764. Exhibit A.

508. The 2024–2025 DPC invoked that placement. Exhibit B.

509. The 2025–2026 DPC again invoked continuing pendency based on the same placement. Exhibit E.

510. SRO Decision No. 25-499 confirmed that there was no basis to disturb the determination that DOE must fund iBRAIN tuition, related services, and transportation through Parent's chosen provider as pendency. Exhibit D.

511. Therefore, pendency—not a merits-specific Prong III reduction or transportation-merits ruling—controls Z.C.'s maintenance rights across the 2024–2025 and 2025–2026 proceedings.

512. DOE may argue about equities in a merits proceeding.

513. DOE may not transform those arguments into a suspension, reduction, or unilateral alteration of the stay-put placement that federal law required DOE to maintain while the dispute was pending.

## XII. LATE FEES ARE PART OF THE CONTRACT-BASED PENDENCY FUNDING OBLIGATION

514. Late fees are part of the relief sought in this action because DOE's pendency obligation was not an abstract obligation to provide some later, discretionary payment. DOE was required to maintain Z.C.'s pendency placement during the pendency of the proceedings, at public expense, pursuant to the operative placement, the operative administrative order, and the agreements through which the placement was maintained.

515. The late fees sought here are not punitive sanctions.

516. They are not contempt sanctions.

517. They are not a separate request for windfall damages.

518. They are the contract-based financial consequences of DOE's failure to fund Z.C.'s pendency placement when DOE should have funded it.

519. They also reflect the concrete financial injury caused or increased by OATH and OSR delay, which allowed DOE to continue asserting uncertainty, administrative posture, appeal posture, or the absence of a later order as a practical justification for nonpayment.

### A. FOFD 250764 Incorporated Contract Terms

520. FOFD 250764 did not order generic reimbursement untethered to the actual placement Parent obtained for Z.C. Exhibit A.

521. FOFD 250764 ordered DOE to reimburse Parent for any payments made for Z.C.'s attendance at iBRAIN, related services, and special transportation, and to directly pay the remainder of the cost for school, related services, and transportation. Exhibit A.

522. The IHO further ordered that "[t]he amount of these payments shall be pursuant to the terms of the parent's enrollment agreement for tuition and related services and the transportation agreement for transportation." Exhibit A.

523. That language incorporated the operative contractual payment terms into the administrative relief ordered for Z.C.

524. DOE did not appeal FOFD 250764.

525. Because DOE did not appeal, FOFD 250764 became final and binding.

526. FOFD 250764 therefore established Z.C.'s then-current educational placement and the contract-based payment framework for maintaining that placement.

527. When Parent later filed the 2024–2025 and 2025–2026 DPCs, that final unappealed FOFD supplied the pendency anchor.

528. Because the pendency anchor was contract-based, DOE's pendency obligation required funding the placement in accordance with the relevant agreements necessary to maintain the placement.

529. DOE cannot accept FOFD 250764 as the pendency anchor while rejecting the contract-based payment consequences that FOFD 250764 expressly incorporated.

**B. The DPCs Included the Contracts and Payment Terms**

530. Parent's 2024–2025 DPC invoked Z.C.'s pendency rights and included the 2024–2025 iBRAIN enrollment contract and Sisters transportation agreement. Exhibit B.

531. Parent's 2025–2026 DPC again invoked Z.C.'s pendency rights and included the 2025–2026 iBRAIN enrollment contract and Sisters transportation agreement. Exhibit E.

532. Those contracts included payment schedules.

533. Those contracts included payment obligations.

534. Those contracts included late-fee provisions.

535. DOE therefore had notice of the amounts due under the relevant agreements.

536. DOE also had notice of the payment schedules governing those amounts.

537. DOE had notice that nonpayment would cause late fees to accrue.

538. DOE had notice because the contracts were included with the DPC materials.

539. DOE had notice because FOFD 250764 ordered payment pursuant to the terms of the enrollment and transportation agreements.

540. DOE had notice because Parent repeatedly asserted that Z.C.'s pendency was anchored in FOFD 250764 and required funding of iBRAIN tuition, related services, and special transportation pursuant to the applicable contracts.

541. DOE also had notice before the DPCs were filed because Parent's ten-day notices identified Parent's intent to continue Z.C.'s placement and seek public funding, thereby giving DOE advance notice of the placement, the claimed pendency position, and the financial consequences of nonimplementation.

542. DOE nevertheless withheld funding.

543. DOE's nonpayment caused principal amounts to remain unpaid and caused contract-based late fees to accrue.

544. DOE cannot claim lack of notice of the contractual consequences of nonpayment where the agreements were part of the DPC materials, the ten-day notices placed DOE on advance notice of Parent's continued placement and funding position, and the final unappealed pendency anchor expressly directed payment pursuant to contract terms.

## C. Pendency Required Timely Maintenance

545. Pendency means maintenance of the student's then-current educational placement during the pendency of proceedings.

546. Maintenance must occur while the proceedings are pending.

547. Maintenance is not satisfied in spirit or function by withholding funding during the educational period and later treating the matter as an account payable.

548. The purpose of § 1415(j) is to preserve educational stability during the dispute.

549. It is not to allow DOE to defer payment until after the educational period has been consumed.

550. It is not to allow DOE to force a parent, school, or provider to carry DOE's statutory obligation for months or years.

551. It is not to allow DOE to convert stay-put into retroactive reimbursement litigation.

552. For Z.C., timely maintenance required funding the iBRAIN placement, related services, required supports, and special transportation as they became necessary to maintain the placement during the 2024–2025 and 2025–2026 school years.

553. DOE did not maintain Z.C.'s placement by withholding payment while the school year proceeded.

554. DOE did not maintain Z.C.'s placement by waiting for a new IHO order.

555. DOE did not maintain Z.C.'s placement by treating the administrative appeal process as a practical stay.

556. DOE did not maintain Z.C.'s placement by acknowledging the pendency anchor in theory while refusing to fund the placement in practice.

557. Because DOE failed to maintain the placement when maintenance was due, the contract-based late fees that accrued are part of the relief necessary to make Parent and Z.C. whole for DOE's pendency violation.

**D. Late Fees Accrued Because DOE Failed to Pay When It Should Have Paid**

558. For the 2024–2025 school year, DOE's pendency obligation attached on July 2, 2024, when Parent filed Z.C.'s 2024–2025 DPC. Exhibit B.

559. For the 2025–2026 school year, DOE's continuing pendency obligation attached when Parent filed Z.C.'s 2025–2026 DPC. Exhibit E.

560. DOE was required to maintain Z.C.'s placement from those filing dates forward.

561. DOE was required to fund the contractual installment obligations when due, or at minimum in the ordinary course of business without undue delay, in a manner sufficient to maintain the placement during the proceedings.

562. DOE did not do so.

563. DOE withheld pendency funding for Z.C.'s 2024–2025 tuition and transportation.

564. DOE withheld pendency funding for Z.C.'s 2025–2026 tuition and transportation.

565. In the June 9, 2025 status letter in the 2024–2025 *Bruckauf* action, Plaintiffs reported that DOE had not paid "a penny" toward Z.C.'s tuition or special transportation for the 2024–2025 school year and had not provided special transportation services to Z.C. *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 7 (S.D.N.Y. June 9, 2025).

566. That same filing reported that, as of June 9, 2025, DOE owed more than $390,000 in tuition fees, inclusive of tuition late fees, and more than $160,000 in transportation fees, inclusive of transportation late fees, for Z.C.'s 2024–2025 pendency placement. *Id.*

567. In the December 24, 2025 status letter in the 2025–2026 *Bruckauf* action, Plaintiffs reported that DOE had not implemented any aspect of pendency or issued any pendency payments for *Z.C. Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

568. That filing further reported that, as of December 24, 2025, DOE was delinquent in funding Z.C.'s 2025–2026 pendency tuition by $167,847.72 and transportation by $78,771.00, and that in early January 2026 those amounts would increase to $343,647.40 and $157,542.00, respectively, exclusive of applicable late fees that continued to accrue. *Id.*

569. DOE cannot delay payment, allow late fees to accrue, and then argue that only principal is recoverable.

570. That approach would reward DOE for noncompliance.

571. It would allow DOE to reduce the practical cost of violating § 1415(j).

572. It would shift the financial consequences of DOE's nonpayment from DOE to Parent, Z.C., the school, and the transportation provider.

573. It would undermine the automatic and mandatory nature of pendency.

574. It would also create a perverse incentive for DOE to delay funding until the end of a school year, or beyond, while preserving for itself the argument that the only recoverable amount is the principal DOE should have paid months earlier.

575. Where DOE's failure to timely fund pendency causes contract-based late fees to accrue, those late fees are part of the amount necessary to enforce the pendency funding obligation.

**E. Late Fees Also Accrued Because OATH and OSR Failed to Follow Timelines**

576. Plaintiff does not concede that DOE needed a new IHO order, a new SRO decision, or any further administrative confirmation before DOE was required to maintain Z.C.'s pendency placement.

577. DOE's obligation arose when the DPCs were filed.

578. In the alternative, however, even if DOE contends that it needed administrative clarification before funding, OATH and OSR delay caused or increased Parent's financial injury.

579. OATH should have ensured prompt resolution of pendency.

580. OATH should have ensured that Z.C.'s stay-put rights were addressed as an immediate statutory protection, not deferred into the final merits decision.

581. DOE's failure to conduct or meaningfully use the resolution process further compounded the delay. The resolution meeting was the first required statutory opportunity after receipt of the DPC for DOE to address Parent's claims, including Parent's invoked pendency position, before any prehearing conference or merits hearing occurred.

582. Because Parent had already invoked pendency in the ten-day notice and DPC, DOE should have addressed implementation immediately, including through the resolution process, rather than waiting for a later PHC, final hearing, FOFD, or appeal.

583. Had DOE convened and participated in the resolution process as required, DOE could have addressed Z.C.'s pendency implementation at the outset of the proceeding, before contract exposure and late fees compounded.

584. Had OATH promptly issued a standalone pendency order, DOE would have had less ability to claim that pendency remained unclear, disputed, or administratively unresolved.

585. Had OATH issued a timely FOFD within required federal and state timelines, DOE would have had less ability to prolong nonpayment through administrative uncertainty.

586. Instead, Z.C.'s 2024–2025 pendency determination was not issued until the June 27, 2025 FOFD, nearly the end of the 12-month school year. Exhibit C.

587. That delay allowed contract-based late fees to accrue or increase.

588. OSR delay likewise caused or increased Parent's financial injury.

589. Parent objected to DOE's August 2025 extension request in the SRO appeal because delay in a pendency matter was prejudicial. Exhibit F.

590. Parent also objected to DOE's late answer and cross-appeal posture because it prolonged the review process and gave DOE additional time to withhold implementation. Exhibit G.

591. Had OSR timely resolved review and not permitted extension abuse, DOE would have had less opportunity to claim appeal posture as a basis for continued nonpayment.

592. OATH and OSR delay therefore caused concrete financial injury.

593. That injury includes increased contract-based late fees.

594. That injury includes increased attorneys' fees.

595. That injury includes the burden of litigating a right that should have been self-executing.

596. OATH and OSR delay also materially impaired the function of pendency by allowing a supposedly automatic right to remain practically unenforced during the period it was supposed to protect.

**F. SRO Decision No. 25-499's Mootness Ruling Reinforces the Late-Fee Claim**

597. SRO Decision No. 25-499 held that certain transportation and equitable issues were moot because pendency supplied all relief sought for the 2024–2025 school year. Exhibit D.

598. That ruling supports Plaintiff's late-fee claim.

599. If pendency supplied all relief, then pendency supplied the full contract-based relief required to maintain Z.C.'s placement.

600. FOFD 250764 defined that relief by reference to the enrollment agreement and transportation agreement. Exhibit A.

601. The 2024–2025 DPC invoked pendency and included the relevant 2024–2025 agreements. Exhibit B.

602. Contract-based relief includes the contract-based consequences of delayed or withheld payment.

603. If DOE disputes late fees, then the controversy remains live.

604. DOE cannot rely on the SRO's mootness ruling to avoid review of merits transportation and equity issues while also denying the full pendency relief that made those issues moot.

605. DOE cannot argue that Parent received all relief through pendency while refusing to pay the contract-based amounts that accrued because DOE failed to fund pendency.

606. To the extent DOE contends that the SRO's mootness ruling means Parent received all relief for 2024–2025, DOE must also accept the consequence of that position: the relief supplied by pendency was the full contract-based relief necessary to maintain the placement.

607. To the extent SRO Decision No. 25-499 could be construed to extinguish or limit contract-based late fees, Plaintiff seeks judicial review, reversal, modification, or clarification under 20 U.S.C. § 1415(i)(2).

### G. Late Fees Are Not Sanctions

608. The late fees sought in this action are not sanctions.

609. They are not contempt penalties.

610. They are not punitive damages.

611. They are not collateral consequential damages unrelated to pendency.

612. They are contract-based pendency amounts caused by DOE's failure to maintain Z.C.'s placement and by administrative delay that permitted DOE to continue withholding payment.

613. DOE's obligation was to maintain the placement at public expense.

614. The placement was maintained through contracts.

615. FOFD 250764 ordered payment pursuant to the terms of those contracts. Exhibit A.

616. The 2024–2025 and 2025–2026 DPCs included the operative contracts and invoked pendency under FOFD 250764. Exhibits B, E.

617. When DOE did not pay under the contracts, the amounts due under those contracts increased.

618. Those increased amounts are part of the cost of maintaining the placement after DOE's delay.

619. Treating late fees as unrecoverable would give DOE an incentive to delay payment and then pay only principal after the harm is done.

620. That result would contradict § 1415(j)'s purpose of preserving the student's placement during the pendency of proceedings.

**H. Late Fees Are Essential to Mootness Resistance**

621. Even if DOE later pays principal amounts for tuition or transportation, live claims remain.

622. Plaintiff's claim for contract-based late fees remains live.

623. Plaintiff's claim for declaratory relief remains live.

624. Plaintiff's procedural-denial-of-FAPE claims remain live.

625. Plaintiff's § 1983 and *Monell* claims remain live.

626. Plaintiff's claims for attorneys' fees and costs remain live.

627. Plaintiff's claims for prospective enforcement remain live.

628. Plaintiff's claims for discovery into DOE, OATH, and OSR delay practices remain live.

629. Payment of principal alone would not resolve whether DOE violated § 1415(j) by failing to maintain Z.C.'s placement when the DPCs were filed.

630. Payment of principal alone would not resolve whether DOE is responsible for the late fees caused by its delay.

631. Payment of principal alone would not resolve whether OATH and OSR delay caused concrete financial and procedural injury.

632. Payment of principal alone would not resolve whether DOE's conduct reflects a policy, custom, or practice actionable under § 1983.

633. Payment of principal alone would not resolve whether declaratory and prospective relief is necessary to prevent repetition of the same pendency self-stay practice.

634. Accordingly, the late-fee claims are not peripheral.

635. They are central to the live controversy, the completeness of relief, and the Court's ability to prevent DOE from converting automatic pendency into delayed principal-only reimbursement.

## XII. PROSPECTIVE PAYMENT AND THE DUTY TO MAINTAIN PENDENCY

636. Pendency requires DOE to maintain the student's then-current educational placement during the pendency of proceedings.

637. Maintenance is prospective in function.

638. It must preserve the placement while the dispute is pending.

639. It is not satisfied by payment only after the school year is over.

640. It is not satisfied by delayed reimbursement after the parent, school, or provider has been forced to carry DOE's statutory obligation.

641. It is not satisfied by DOE's recognition of a pendency anchor without the funding necessary to maintain the placement.

642. For families who cannot front hundreds of thousands of dollars, delayed payment threatens the practical availability of the placement and undermines the purpose of § 1415(j).

643. FOFD 250764 recognized that Parent could not afford to front the costs of Z.C.'s placement and ordered direct payment. Exhibit A.

644. The direct-payment order was not incidental.

645. It reflected the reality that Parent could not be required to carry DOE's obligation and wait for later reimbursement.

646. Public funding and placement go hand-in-hand under pendency.

647. DOE cannot recognize a placement in theory while refusing to fund it in practice.

648. DOE cannot maintain Z.C.'s iBRAIN placement without funding the tuition, related services, required supports, and special transportation that make the placement available.

649. For Z.C., prospective maintenance required DOE to fund the placement during the 2024–2025 and 2025–2026 proceedings.

650. DOE's failure to do so converted pendency into delayed reimbursement and undermined the automatic statutory protection Congress created.

## A. DOE's "Ordinary Course" Cannot Begin Only After DOE's Preferred Order

651. DOE has repeatedly invoked "ordinary course" or "normal course" language in pendency and implementation disputes.

652. But DOE's unlawful practice is delaying the beginning of that so-called ordinary course until after DOE receives the administrative order, pendency form, or clarification it wants.

653. In related federal litigation, DOE stated that, when pendency is disputed, it "requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

654. That position is inconsistent with § 1415(j).

655. Ordinary-course processing cannot begin only after DOE decides the statutory obligation has become sufficiently clear for DOE's purposes.

656. Ordinary-course processing must begin when the statutory obligation attaches.

657. For 2024–2025, that occurred when Parent filed the July 2, 2024 DPC. Exhibit B.

658. For 2025–2026, that occurred when Parent filed the July 2025 DPC. Exhibit E.

659. DOE was also on notice before each DPC through Parent's ten-day notice, which identified Parent's intent to continue Z.C.'s placement and seek public funding.

660. DOE therefore had notice before the DPC filing, statutory obligation upon the DPC filing, and a mandatory resolution-process opportunity immediately after the DPC filing to address implementation.

661. DOE may conduct reasonable ministerial processing necessary to issue payment.

662. DOE may review invoices and documentation in a manner consistent with federal law.

663. But DOE may not use internal processing, administrative uncertainty, or a self-created dispute to postpone the start of funding for months.

664. DOE may not condition the beginning of payment processing on a new IHO order where the pendency placement is already anchored in a final unappealed FOFD.

665. DOE may not ignore the resolution process as a vehicle for prompt implementation and then later claim that pendency remained too uncertain to fund.

666. DOE may not create a dispute, refuse to fund because the matter is disputed, and then call the resulting delay "ordinary course."

667. "Ordinary course" cannot be a label for nonimplementation.

668. "Ordinary course" cannot mean that DOE waits until the school year is nearly over.

669. "Ordinary course" cannot mean that DOE leaves Parent exposed to contract obligations, late fees, and repeated litigation costs while DOE waits for a later order.

670. "Ordinary course" must be consistent with the statutory command that the child "shall remain" in the then-current educational placement during the pendency of proceedings.

671. Because DOE's ordinary-course position delays the start of implementation until after DOE's preferred administrative preconditions are met, it functions as an unlawful self-stay.

**B. DOE's Public "Normal Due Course" Representations Undermine Its Litigation Position**

672. DOE's public representations concerning payment timing undermine its litigation use of vague "ordinary course" language.

673. On January 30, 2025, DOE General Counsel Liz Vladeck testified before the New York City Council concerning DOE's payment process.

674. Ms. Vladeck described a process in which, once the implementation team breaks down an order, obtains required authorizations, and moves forward to authorize payment, the matter moves to the Division of Financial Operations.

675. Ms. Vladeck testified that her understanding was that the Division of Financial Operations was "getting payments out the day they receive our authorization or within a day." New

York City Council, Committee on Education Hearing, testimony of DOE General Counsel Liz Vladeck, Jan. 30, 2025.

676. Plaintiff does not allege that every pendency payment must issue immediately on the same day a DPC is filed.

677. That is not the point.

678. The point is that DOE cannot leave the pendency obligation unauthorized for months, call that "ordinary course," and then invoke Mendez to justify the delay.

679. The point is that once DOE knows a pendency obligation exists, DOE cannot indefinitely delay the internal authorization step while representing that payment will occur in due course.

680. The point is that DOE's own public description of its payment process suggests that the long delay in Z.C.'s case was not caused by ordinary disbursement timing after authorization.

681. It was caused by DOE's refusal to authorize pendency funding in the first place.

682. That refusal was based on DOE's unlawful view that it could wait for a new administrative order, administrative clarification, appeal resolution, or a DOE-approved understanding of pendency before beginning implementation.

683. DOE's reliance on "ordinary course" is therefore misleading when the delay is not ordinary payment processing, but DOE's refusal to start implementation.

684. Mendez does not authorize that practice.

685. Mendez does not allow DOE to withhold pendency funding for months or years by refusing to authorize payment.

686. Mendez does not convert § 1415(j) into a principal-only reimbursement rule.

687. Mendez does not permit DOE to use vague "ordinary course" language to avoid maintaining an already-established pendency placement.

688. DOE's public payment-timing testimony reinforces Plaintiff's claim that the problem here was not the short time required to issue payment after authorization.

689. The problem was DOE's policy and practice of withholding authorization and implementation while treating pendency as disputed, appeal-dependent, or contingent on a new order.

690. That practice violates § 1415(j).

691. It also supports Plaintiff's claims for declaratory relief, prospective enforcement, contract-based late fees, procedural-denial-of-FAPE relief, and Monell / § 1983 relief.

## XIV. DOE MAY NOT SELF-STAY PENDENCY OBLIGATIONS

692. DOE never obtained a stay of Z.C.'s pendency obligations from an IHO.

693. DOE never obtained a stay of Z.C.'s pendency obligations from an SRO.

694. DOE never obtained a stay of Z.C.'s pendency obligations from this Court.

695. DOE never obtained a stay of Z.C.'s pendency obligations from the Second Circuit.

696. DOE nevertheless treated Z.C.'s pendency obligations as stayed.

697. DOE treated pendency as stayed because DOE disputed cost.

698. DOE treated pendency as stayed because DOE disputed Parent's chosen transportation provider.

699. DOE treated pendency as stayed because DOE wanted a new IHO order.

700. DOE treated pendency as stayed because DOE claimed administrative clarification was necessary.

701. DOE treated pendency as stayed because DOE cross-appealed pendency and equitable issues.

702. DOE treated pendency as stayed because Parent appealed adverse portions of the June 27, 2025 FOFD.

703. DOE treated pendency as stayed because OSR review was pending.

704. DOE treated pendency as stayed because DOE claimed it did not yet know what portions of pendency were or were not "under appeal."

705. None of those circumstances stayed DOE's statutory obligation under 20 U.S.C. § 1415(j).

706. FOFD 250764 established Z.C.'s pendency placement. Exhibit A.

707. The 2024–2025 DPC invoked that pendency placement and triggered DOE's automatic maintenance obligation. Exhibit B.

708. The 2025–2026 DPC again invoked continuing pendency based on the same placement anchor. Exhibit E.

709. SRO Decision No. 25-499 confirmed that there was no basis to disturb the determination that DOE was obligated to fund Z.C.'s iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

710. DOE's disagreement with cost did not stay pendency.

711. DOE's disagreement with Sisters transportation did not stay pendency.

712. DOE's desire for a new IHO order did not stay pendency.

713. DOE's cross-appeal did not stay pendency.

714. Parent's appeal did not stay pendency.

715. OSR review did not stay pendency.

716. DOE's internal implementation preferences did not stay pendency.

717. DOE's litigation position did not stay pendency.

718. A stay of pendency cannot be self-created.

719. If DOE believed it had grounds to suspend, narrow, alter, or replace Z.C.'s automatic pendency placement, DOE was required to seek appropriate relief from an adjudicatory body with authority to grant such relief.

720. DOE did not do so.

721. DOE instead withheld payment.

722. DOE's withholding of payment functioned as an unlawful self-stay.

723. DOE cannot accomplish indirectly through nonpayment what it did not obtain directly through a stay application.

724. DOE cannot invoke administrative uncertainty while simultaneously creating or prolonging that uncertainty.

725. DOE cannot dispute transportation in every iBRAIN case and then use the existence of that dispute as a basis to withhold all transportation funding.

726. DOE cannot challenge cost and then use its own cost objection as a reason to suspend the statutory maintenance obligation.

727. DOE cannot convert the automatic injunction into a pay-if-and-when-DOE-is-satisfied rule.

728. DOE's self-stay theory is confirmed by its own statements in related litigation.

729. In *Davis v. Aviles-Ramos*, DOE stated that, when pendency is disputed, it "requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

730. DOE further stated that "in every iBrain case," DOE contests Sisters transportation and offers transportation through the Office of Pupil Transportation instead. *Id.*

731. Those statements show that DOE's position is not limited to Z.C.

732. They show an institutional policy or practice of manufacturing or asserting a pendency dispute and then using that dispute to delay funding.

733. DOE applied that same structure to Z.C.

734. In the June 9, 2025 *Bruckauf* status letter, DOE's position was that "pendency is disputed in this case and no determination with respect to Z.C.'s pendency placement has been made." *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 9 (S.D.N.Y. June 9, 2025).

735. By that time, Parent had already filed the 2024–2025 DPC, DOE had already been on notice of FOFD 250764, and DOE had already withheld payment for almost the entire 2024–2025 school year.

736. In the 2025–2026 *Bruckauf* action, DOE stated through the Kapoor Declaration that, "[o]nce the extent of the pendency issues on appeal are known, DOE will implement the portions of pendency that are not under appeal, if any." *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

737. That statement admits an appeal-based self-stay.

738. DOE did not say it was maintaining Z.C.'s pendency while the appeal proceeded.

739. DOE did not say it had sought or obtained a stay.

740. DOE did not say it was funding the placement subject to later adjustment.

741. DOE said it would wait until the extent of the pendency issues on appeal were known and then implement only the portions DOE deemed not under appeal, if any.

742. That is not maintenance.

743. That is not automatic pendency.

744. That is a unilateral stay of implementation based on appeal posture.

745. The December 24, 2025 status letter in *Bruckauf* documented the practical effect of DOE's position: DOE had implemented no aspect of *Z.C.'s pendency and had issued no pendency payments. Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

746. DOE's appeal-based and order-dependent implementation position is unlawful.

747. It contradicts the mandatory command that the child "shall remain" in the then-current educational placement during proceedings.

748. It contradicts the purpose of stay-put, which is to preserve stability while disputes are pending.

749. It allows DOE to benefit from the very delay the statute was designed to prevent.

750. It forces Parent, Z.C., iBRAIN, and the transportation provider to bear the risk and financial consequences of DOE's refusal to maintain the placement.

751. It increases late fees and attorneys' fees.

752. It converts a federal statutory injunction into delayed reimbursement litigation.

753. It also creates a policy incentive for DOE to dispute pendency reflexively, cross-appeal, withhold funding, and then claim that no payment is due until administrative uncertainty is eliminated.

754. *Crespo* rejected this theory.

755. In *Crespo*, the court described DOE's order-dependent pendency theory as "baseless" and "unsupported by the statute, case law, and the governing regulations." *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38, at 11–14 (S.D.N.Y.).

756. DOE's conduct toward Z.C. reflects the same unlawful theory.

757. DOE's self-stay caused concrete injury to Z.C. and Parent, including nonimplementation of pendency, contract-based late fees, increased attorneys' fees, procedural delay, and the need for this federal enforcement action.

## XV. 2025–2026 DPC AND REPETITION OF THE SAME DELAY STRUCTURE

758. In July 2025, Parent filed Z.C.'s DPC for the 2025–2026 school year. Exhibit E.

759. The 2025–2026 DPC was assigned IHO Case No. 297177.

760. Before filing the 2025–2026 DPC, Parent provided notice of Parent's disagreement with DOE's proposed program and invoked Z.C.'s right to remain in her then-current educational placement.

761. Parent requested pendency in the 2025–2026 DPC.

762. Parent sought continued maintenance of Z.C.'s iBRAIN placement, related services, required supports, and special transportation. Exhibit E.

763. The pendency source remained FOFD 250764. Exhibit A.

764. FOFD 250764 remained final and unappealed.

765. No lawful pendency-changing event had occurred.

766. No agreement between Parent and DOE changed Z.C.'s pendency placement.

767. The 2025–2026 DPC therefore triggered DOE's continuing obligation to maintain Z.C.'s established placement.

768. DOE had notice of Parent's pendency position before any PHC occurred.

769. DOE also had an obligation to address the dispute-resolution process required by the IDEA upon receipt of the DPC, including the resolution-meeting process.

770. The resolution meeting is the first statutory opportunity for DOE to address the parent's claims, including pendency-related implementation issues, before the matter proceeds to hearing.

771. DOE failed to hold the required resolution meeting within fifteen days of receiving the DPC.

772. DOE therefore failed to address pendency at the first statutory stage when it should have been addressed.

773. DOE's failure to hold the resolution meeting deprived Parent of an early opportunity to demand implementation of Z.C.'s automatic pendency rights and to resolve DOE's nonpayment before the matter was pushed deeper into administrative litigation.

774. DOE conceded during the 2025–2026 administrative proceeding that "pendency would arise out of the FOFD, 250764."

775. DOE's concession confirmed the pendency anchor.

776. DOE nevertheless disputed implementation.

777. DOE disputed implementation based on alleged cost increases.

778. DOE disputed implementation based on Ventura de Paulino.

779. DOE disputed implementation based on transportation-provider substitution.

780. DOE claimed that it had the right to implement transportation "as we see fit."

781. DOE asserted that it could provide transportation through its Office of Pupil Transportation instead of funding Parent's chosen transportation provider.

782. DOE's position acknowledged the anchor while withholding the practical funding necessary to maintain the placement.

783. That is the same unlawful distinction DOE drew in the 2024–2025 school year.

784. DOE's position was not that Z.C. lacked a pendency anchor.

785. DOE's position was that DOE could accept the anchor in theory while contesting or withholding the components that made the placement operational in practice.

786. OATH did not issue a standalone pendency order at the outset of the 2025–2026 proceeding.

787. Instead, OATH directed the parties to argue pendency at the due process hearing.

788. That direction again delayed pendency.

789. That direction again converted the automatic stay-put right into an issue to be litigated through the merits process.

790. That direction again allowed DOE to continue withholding funding while claiming that pendency remained disputed.

791. Parent invoked 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b) during the 2025–2026 administrative proceeding.

792. Parent argued that DOE had failed to hold the resolution meeting within fifteen days of receiving the DPC.

793. Parent requested that the impartial hearing timeline begin immediately because DOE failed to hold the resolution meeting within the required timeframe.

794. DOE opposed that request.

795. DOE argued that the timeline should not be accelerated.

796. DOE further argued that there was no prejudice because Z.C. was attending iBRAIN.

797. DOE's no-prejudice argument ignored the actual harm caused by DOE's nonimplementation.

798. Parent responded that DOE was disputing pendency and that DOE's dispute left Parent exposed to greater financial liability.

799. Parent's response was correct.

800. A student's physical attendance at school does not eliminate the harm caused by DOE's refusal to fund pendency.

801. Attendance does not eliminate Parent's contract exposure.

802. Attendance does not eliminate late fees.

803. Attendance does not eliminate the risk created when a parent, school, or provider is forced to carry DOE's statutory obligation.

804. Attendance does not cure DOE's failure to maintain the placement at public expense.

805. Attendance does not make § 1415(j) optional.

806. Attendance does not excuse DOE's failure to hold the resolution meeting required by law.

807. Attendance does not excuse OATH from recognizing the consequences of DOE's failure to hold that meeting.

808. Attendance does not excuse OATH from timely addressing pendency.

809. The 2025–2026 proceeding therefore repeated the same delay structure as the 2024–2025 proceeding.

810. Parent invoked pendency before and through the DPC.

811. DOE failed to address pendency through the resolution process.

812. DOE conceded the anchor but disputed implementation.

813. DOE used cost and transportation objections to avoid funding.

814. OATH did not issue a standalone pendency order.

815. Pendency was deferred into later hearing proceedings.

816. DOE then used administrative posture and appeal posture as practical reasons not to pay.

817. This repetition is critical.

818. It shows that the harm is capable of repetition.

819. It supports Plaintiff's *Monell* claim.

820. It supports Plaintiff's procedural-denial-of-FAPE claim.

821. It supports Plaintiff's request for declaratory relief.

822. It supports Plaintiff's mootness resistance.

823. It supports Plaintiff's claim for late-fee causation.

824. It supports Plaintiff's request for prospective relief.

825. It also confirms that DOE's treatment of Z.C. was not an isolated administrative mistake.

826. It was part of a repeated structure under which automatic pendency was converted into disputed, delayed, order-dependent funding.

827. For Z.C., that repeated structure caused continuing nonpayment, accruing late fees, increased attorneys' fees, and the need for federal enforcement.

## XVI. DOE'S 2025–2026 SELF-STAY POSITION IN FEDERAL COURT

828. DOE's self-stay position was not limited to the administrative proceeding.

829. DOE presented the same appeal-dependent position to this Court in the 2025–2026 Bruckauf action.

830. In *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), DOE submitted the Declaration of Sapna Kapoor, Esq., Senior Policy Advisor for the Impartial Hearing Order Implementation Unit. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1 (S.D.N.Y. Nov. 24, 2025).

831. The Kapoor Declaration included a Z.C.-specific statement.

832. DOE stated that Z.C.'s 2025–2026 DPC was designated Case No. 297177. *Id.* at 7.

833. DOE stated that an FOFD dated October 20, 2025 had denied, in relevant part, Parent's request for tuition and special transportation funding. *Id.*

834. DOE stated that the FOFD also included a finding on pendency. *Id.*

835. DOE stated that Parent appealed the FOFD and pendency on October 27, 2025. *Id.*

836. DOE then stated: "Once the extent of the pendency issues on appeal are known, DOE will implement the portions of pendency that are not under appeal, if any." *Id.*

837. That statement is an admission of DOE's appeal-based self-stay position.

838. DOE did not represent that it was maintaining Z.C.'s pendency placement during the appeal.

839. DOE did not represent that it had funded iBRAIN tuition.

840. DOE did not represent that it had funded Sisters transportation.

841. DOE did not represent that it had obtained a stay.

842. DOE did not represent that it was paying subject to later adjustment.

843. Instead, DOE represented that it would wait until the extent of pendency issues on appeal were known.

844. DOE further represented that it would implement only the portions of pendency not under appeal, if any.

845. The phrase "if any" confirms that DOE believed the appeal itself could leave no pendency obligation for DOE to implement.

846. That position is incompatible with § 1415(j).

847. Pendency exists during the pendency of proceedings.

848. Pendency does not disappear because a parent appeals.

849. Pendency does not disappear because DOE disagrees with the parent's appeal.

850. Pendency does not disappear because the scope of appeal issues must be identified.

851. Pendency does not disappear because DOE has not yet decided which portions it considers uncontested.

852. DOE's statement treated appeal posture as a reason to suspend implementation.

853. That is a de facto stay.

854. DOE had not obtained such a stay.

855. DOE's position therefore reflects unilateral nonimplementation.

856. The December 24, 2025 status letter in the 2025–2026 *Bruckauf* action documented the practical consequences of DOE's position. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40 (S.D.N.Y. Dec. 24, 2025).

857. Plaintiffs reported that DOE had not implemented any aspect of Z.C.'s pendency and had issued no pendency payments. *Id.* at 12.

858. Plaintiffs further reported that DOE was delinquent in funding Z.C.'s 2025–2026 pendency tuition by $167,847.72 and transportation by $78,771.00 as of December 24, 2025. *Id.*

859. Plaintiffs reported that, in early January 2026, those amounts would increase to $343,647.40 for tuition and $157,542.00 for transportation, exclusive of applicable late fees that continued to accrue. *Id.*

860. Thus, DOE's appeal-dependent statement was not harmless.

861. It was not merely descriptive.

862. It was not neutral case administration.

863. It functioned as the practical basis for withholding all funding.

864. It left Parent exposed to contract obligations.

865. It caused or increased late fees.

866. It prolonged Z.C.'s pendency nonimplementation.

867. It forced Parent to continue litigating a right that should have been automatic.

868. It confirms that DOE's administrative and federal-court positions were aligned around the same self-stay theory.

869. DOE's 2025–2026 federal-court position therefore supports Plaintiff's claims for pendency enforcement, declaratory relief, contract-based late fees, procedural-denial-of-FAPE relief, and Monell / § 1983 relief.

## XVII. DOE'S POLICY AND CUSTOM: *MONELL* ALLEGATIONS

870. DOE's conduct toward Z.C. was not isolated.

871. DOE's conduct toward Z.C. reflects a broader policy, custom, practice, and recurring litigation position by which DOE converts automatic pendency into discretionary, delayed, post-order implementation.

872. DOE's policy and custom caused the deprivation of Z.C.'s rights under the IDEA, 20 U.S.C. § 1415(j), and the Fourteenth Amendment.

873. DOE's policy and custom are actionable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### A. Z.C.-Specific Evidence of DOE's Policy and Custom

874. The Z.C.-specific record demonstrates that DOE's conduct was consistent, repeated, and policy-driven.

875. DOE did not appeal FOFD 250764. Exhibit A.

876. FOFD 250764 therefore became final and binding.

877. FOFD 250764 established Z.C.'s pendency placement, including iBRAIN tuition, related services, and special transportation pursuant to the relevant enrollment and transportation agreements. Exhibit A.

878. Parent placed DOE on notice of Z.C.'s pendency before the administrative hearing process began in earnest.

879. Parent invoked pendency in the ten-day notice.

880. Parent invoked pendency again in the 2024–2025 DPC. Exhibit B.

881. The 2024–2025 DPC also requested that, if DOE failed to hold the required resolution meeting within fifteen days or failed to participate in the resolution meeting, the IHO begin the impartial hearing timeline immediately pursuant to 34 C.F.R. § 300.510(b)(5) and 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b). Exhibit B.

882. DOE therefore had notice at the first stages of the IDEA process that Parent was asserting Z.C.'s right to immediate maintenance of the FOFD 250764 placement.

883. Despite that final unappealed pendency anchor, DOE stated in June 2025 that "pendency is disputed in this case and no determination with respect to Z.C.'s pendency placement has been made." *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 9 (S.D.N.Y. June 9, 2025).

884. By June 2025, DOE had paid nothing toward Z.C.'s 2024–2025 tuition.

885. By June 2025, DOE had paid nothing toward Z.C.'s 2024–2025 special transportation.

886. By June 2025, DOE had not provided special transportation services to Z.C.

887. DOE's position was not based on lack of notice.

888. DOE had notice of FOFD 250764.

889. DOE had notice that FOFD 250764 was final and unappealed.

890. DOE had notice that Parent filed the 2024–2025 DPC invoking pendency. Exhibit B.

891. DOE had an opportunity to address pendency in the resolution process.

892. DOE failed to resolve pendency at that first procedural stage.

893. DOE nevertheless treated pendency as unfunded and undetermined until a later administrative order issued.

894. When the June 27, 2025 FOFD confirmed Parent's pendency position, DOE still did not accept automatic implementation as required by § 1415(j). Exhibit C.

895. Instead, DOE cross-appealed pendency, cost, and equitable issues to OSR. Exhibit D.

896. DOE used the appeal posture to continue delaying payment.

897. In the 2025–2026 proceeding, Parent again invoked pendency in the DPC. Exhibit E.

898. DOE conceded that "pendency would arise out of the FOFD, 250764."

899. That concession confirmed that DOE knew the pendency anchor.

900. DOE nevertheless disputed implementation based on cost, transportation-provider substitution, and DOE's claimed right to implement transportation "as we see fit."

901. DOE invoked the same cost and transportation objections in both school years.

902. DOE's repetition of those objections shows that DOE's conduct was not an isolated error in a single proceeding.

903. DOE's conduct shows a recurring position that iBRAIN pendency may be acknowledged in theory while funding is withheld in practice.

904. DOE then stated in federal court that, "[o]nce the extent of the pendency issues on appeal are known, DOE will implement the portions of pendency that are not under appeal, if any." *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

905. That statement shows that DOE treated OSR appeal posture as a basis for nonpayment.

906. DOE's phrase "if any" confirms that DOE viewed pending appeal issues as potentially eliminating any immediate implementation obligation.

907. That is a self-stay policy.

908. DOE applied that self-stay policy to Z.C.

909. The result was two school years of unpaid or unimplemented pendency obligations, contract-based late fees, increased attorneys' fees, procedural delay, and the need for federal enforcement.

**B. Related-Case Evidence of DOE's Policy and Custom**

910. DOE's Z.C.-specific conduct is consistent with DOE's positions in related iBRAIN pendency litigation.

911. In *Davis v. Aviles-Ramos*, DOE stated that, when pendency is disputed, it "requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

912. DOE further stated in Davis that "in every iBrain case," it contests Sisters transportation and offers transportation through the Office of Pupil Transportation instead. *Id.*

913. DOE did not describe that position as a one-off position limited to one student.

914. DOE described a recurring iBRAIN practice.

915. DOE's Davis position confirms that DOE-created "disputes" operate as a trigger for delayed funding.

916. DOE's Davis position also confirms an adverse iBRAIN-specific practice: DOE contests Sisters transportation as a categorical matter and then uses that dispute to delay or withhold funding.

917. Plaintiffs in Davis responded that DOE's position constituted an improper refusal to implement, fund, and make payments on pendency placements until DOE obtained an interim pendency order acceptable to DOE. *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 30, at 4–5 (S.D.N.Y. Nov. 19, 2025).

918. Plaintiffs in Davis further argued that nothing in the IDEA or governing case law authorizes DOE to wait for an interim pendency order before implementing pendency. *Id.*

919. DOE's Davis position is the same position DOE applied to Z.C.

920. DOE also advanced a comparable order-dependent theory in *Crespo v. Aviles-Ramos.*

921. In *Crespo*, the court rejected DOE's position as "baseless" and "unsupported by the statute, case law, and the governing regulations." *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38, at 11–14 (S.D.N.Y.).

922. Crespo confirms that DOE's policy of withholding pendency based on DOE-created disputes is unlawful.

923. Moonsammy likewise supports the principle that pendency placement and funding obligations continue based on the operative placement and are not defeated by DOE's year-specific equitable or implementation disputes. *See Moonsammy v. Banks*, No. 24-cv-05151, ECF No. 27 (S.D.N.Y. Aug. 26, 2025).

924. *L.V. v. New York City Department of Education* placed DOE on long-standing notice that final administrative orders must be implemented timely and that DOE's implementation

failures are systemic, recurring, and subject to federal judicial oversight. *See L.V. v. N.Y.C. Dep't of Educ.*, No. 03-cv-9917 (LAP), 2021 WL 663718 (S.D.N.Y. Feb. 18, 2021).

925. JSM and related proceedings likewise placed DOE and the relevant administrative actors on notice of systemic timeliness failures in New York City's IDEA hearing system. *See J.S.M. v. N.Y.C. Dep't of Educ.*, No. 20-cv-705 (E.D.N.Y.).

926. These related authorities and filings are not pleaded to convert this case into a classwide challenge.

927. They are pleaded as notice, context, and evidence that DOE's treatment of Z.C. was consistent with recurring policies and practices.

## C. Legal Theory

928. DOE has a policy and custom of converting automatic pendency into discretionary post-order implementation.

929. DOE treats pendency as automatic only when DOE does not dispute scope, cost, transportation, provider, appeal posture, documentation, or its own preferred implementation method.

930. When DOE asserts a dispute, DOE treats the dispute as permission to delay funding until a new IHO order, administrative clarification, DOE-approved form, or appeal-related determination occurs.

931. That policy is contrary to § 1415(j).

932. Section 1415(j) exists to maintain the student's then-current educational placement during disputes.

933. DOE's policy allows DOE to suspend maintenance because a dispute exists.

934. That reverses the statute.

935. DOE's policy caused Z.C.'s deprivation.

936. DOE's policy caused DOE to withhold funding during the 2024–2025 school year despite FOFD 250764 and Parent's July 2, 2024 DPC.

937. DOE's policy caused DOE to withhold funding during the 2025–2026 school year despite DOE's concession that pendency arose from FOFD 250764.

938. DOE's policy caused DOE to treat OSR appeal posture as a basis for implementing nothing.

939. DOE's policy caused Parent to incur contract-based late fees, increased attorneys' fees, and repeated litigation costs.

940. DOE's policy deprived Z.C. and Parent of the benefit of the automatic stay-put protection Congress created.

## D. Policy Categories Supporting *Monell* Liability

941. DOE's conduct supports multiple *Monell* theories.

942. First, DOE maintained an express policy or official position that disputed pendency requires a new IHO order fully determining the scope of DOE's obligations before funding begins.

943. Second, DOE maintained a widespread practice or custom of refusing to fund iBRAIN pendency when DOE contests cost, scope, or Sisters transportation.

944. Third, DOE maintained an iBRAIN-specific adverse practice by contesting Sisters transportation "in every iBrain case" and using that dispute to delay funding.

945. Fourth, DOE acted with deliberate indifference to the known and obvious consequences of its policy.

946. DOE knew that delaying pendency funding would expose parents to contract obligations.

947. DOE knew that delaying pendency funding would cause or increase late fees.

948. DOE knew that delaying pendency funding would force parents to litigate automatic rights.

949. DOE knew that students like Z.C. depend on continuity of school placement, related services, specialized transportation, and intensive supports.

950. Fifth, DOE failed to train or supervise staff, attorneys, and implementation personnel to implement pendency automatically upon DPC filing when a pendency anchor is final and unappealed.

951. Sixth, DOE ratified the unlawful practice through repeated litigation positions, federal filings, administrative positions, cross-appeals, and implementation decisions.

952. Seventh, final policymakers or officials with policymaking authority ratified or maintained the challenged practices by defending them in federal court and applying them across related matters.

953. Eighth, DOE treated its recurring litigation position as operational policy.

954. DOE's courtroom position and implementation practice were aligned: when DOE asserted a dispute, DOE withheld funding.

955. That alignment demonstrates policy or custom, not isolated mistake.

956. DOE's policy, custom, practice, deliberate indifference, failure to train or supervise, ratification, and iBRAIN-specific adverse practice were moving forces behind the deprivation of Z.C.'s rights.

957. Plaintiff therefore seeks relief under 42 U.S.C. § 1983 and *Monell* against DOE.

## XVIII. OATH'S ROLE IN PROCEDURAL DENIAL OF FAPE AND PENDENCY DELAY

958. OATH and OATH's Special Education Hearings Division administered the impartial hearing process in which Z.C.'s pendency rights were delayed rather than timely enforced.

959. OATH's role is relevant because pendency is intended to operate immediately during the dispute-resolution process.

960. A hearing system that defers pendency until the end of the school year deprives § 1415(j) of practical effect.

961. As applied to Z.C., OATH's hearing administration contributed to the procedural denial of FAPE, increased Parent's contract-based exposure, and enabled DOE's nonimplementation.

## A. 2024–2025 OATH Allegations

962. Parent provided DOE with notice of Z.C.'s pendency position before the due process hearing process began.

963. Parent's ten-day notice invoked Z.C.'s right to pendency and advised DOE that Parent was continuing Z.C.'s iBRAIN placement.

964. Parent then filed Z.C.'s 2024–2025 DPC on July 2, 2024. Exhibit B.

965. Parent invoked pendency in that DPC. Exhibit B.

966. Parent's pendency position was anchored in FOFD 250764. Exhibit A.

967. The DPC also requested that, if DOE failed to hold a resolution meeting within fifteen days or failed to participate in the resolution meeting, the IHO begin the impartial hearing timeline immediately. Exhibit B.

968. DOE's obligation to address pendency therefore arose before any prehearing conference.

969. DOE had an opportunity and obligation to address pendency during the resolution process.

970. DOE did not resolve pendency through the resolution process.

971. Pendency was then raised during the September 5, 2024 prehearing conference.

972. DOE disputed pendency based on cost, scope, and transportation.

973. OATH did not ensure that a standalone pendency order issued promptly.

974. OATH did not ensure that DOE's failure to fund pendency was addressed at the outset of the proceeding.

975. Instead, pendency was deferred until the FOFD.

976. The merits hearing did not convene until November 21, 2024. Exhibit D.

977. The merits hearing did not conclude until April 10, 2025. Exhibit D.

978. The FOFD did not issue until June 27, 2025. Exhibit C.

979. By the time the June 27, 2025 FOFD issued, the 12-month 2024–2025 school year was essentially over.

980. The June 27, 2025 FOFD confirmed that Parent's pendency position was correct. Exhibit C.

981. The IHO found that FOFD 250764 was the basis for Z.C.'s pendency. Exhibit C.

982. The IHO ordered DOE to fund, "via pendency," Z.C.'s attendance at iBRAIN, including related services, and transportation expenses provided by Parent's chosen transportation provider from July 2, 2024 through the date of the decision. Exhibit C.

983. But that confirmation came too late to preserve Z.C.'s status quo in real time.

984. The delay deprived stay-put of practical effect.

985. A pendency determination issued at the end of the school year does not provide the immediate maintenance required by § 1415(j).

986. OATH's handling converted Z.C.'s automatic pendency right into after-the-fact funding litigation.

987. That delay significantly impeded Parent's participation, increased Parent's financial exposure, increased late fees, increased attorneys' fees, and deprived Z.C. and Parent of timely IDEA procedures.

**B. 2025–2026 OATH Allegations**

988. Parent filed Z.C.'s 2025–2026 DPC in July 2025. Exhibit E.

989. Parent again requested pendency. Exhibit E.

990. Parent again requested that, if DOE failed to hold the required resolution meeting within fifteen days or failed to participate in the resolution meeting, the IHO begin the impartial hearing timeline immediately. Exhibit E.

991. The pendency source remained FOFD 250764. Exhibit A.

992. OATH administered the 2025–2026 impartial hearing process through its Special Education Hearings Division.

993. OATH's case-management materials describe OATH as an independent adjudicatory agency whose impartial hearing officers are appointed to hear IDEA claims.

994. DOE conceded during the 2025–2026 proceeding that "pendency would arise out of the FOFD, 250764."

995. DOE nevertheless disputed implementation based on cost, Ventura de Paulino, transportation substitution, and DOE's claimed authority to implement transportation "as we see fit."

996. OATH did not issue a standalone pendency order at the outset of the 2025–2026 proceeding.

997. Instead, OATH directed the parties to argue pendency at the due process hearing.

998. That procedure again delayed pendency.

999. That procedure again allowed DOE to withhold funding while claiming that pendency remained disputed.

1000. Parent also raised DOE's failure to hold the required resolution meeting within fifteen days of receiving the DPC.

1001. Parent requested acceleration of the hearing timeline based on DOE's failure to hold the resolution meeting.

1002. OATH rejected or declined to grant the requested compliance-date acceleration.

1003. OATH granted DOE an extension.

1004. OATH's handling of the 2025–2026 proceeding repeated the same structure that had deprived Z.C. of timely pendency enforcement during 2024–2025.

1005. Parent invoked pendency.

1006. DOE conceded the anchor but disputed implementation.

1007. DOE failed to resolve pendency through the resolution process.

1008. OATH did not immediately enforce pendency.

1009. Pendency was again deferred into the merits process.

1010. The result was continued nonpayment, continued late-fee accrual, increased attorneys' fees, and continued procedural injury.

## C. Resolution-Meeting Framework

1011. The IDEA requires a local educational agency to convene a resolution meeting within fifteen days of receiving notice of a parent's due process complaint unless the parties agree in writing to waive the meeting or agree to mediation. 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(a).

1012. The purpose of the resolution meeting is to give the school district and parent an early opportunity to resolve the complaint before the matter proceeds to hearing.

1013. In a pendency matter, that early opportunity is especially important.

1014. The resolution meeting should be the first stage at which DOE addresses its obligation to maintain the student's placement and fund the services necessary to preserve the status quo.

1015. DOE's failure to convene or participate in the resolution meeting deprived Parent of the earliest statutory forum in which pendency could have been addressed.

1016. If the local educational agency fails to hold or participate in the resolution meeting, the parent may seek the intervention of the IHO to begin the due process hearing timeline. 34 C.F.R. § 300.510(b)(5); 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b).

1017. Z.C.'s DPC requested that relief. Exhibit E.

1018. Parent reasserted that request during the 2025–2026 proceeding.

1019. Parent argued that DOE failed to hold the resolution meeting within the required fifteen-day period.

1020. Parent requested that the impartial hearing timeline begin immediately.

1021. DOE opposed the request.

1022. DOE argued that there was no prejudice because Z.C. was attending iBRAIN.

1023. OATH declined to accelerate the compliance timeline.

1024. That ruling disregarded the practical prejudice caused by DOE's nonimplementation.

1025. A student's physical attendance at iBRAIN does not mean DOE is maintaining pendency at public expense.

1026. Attendance does not eliminate Parent's contract exposure.

1027. Attendance does not eliminate late fees.

1028. Attendance does not eliminate the need for timely pendency funding.

1029. Attendance does not excuse DOE's failure to hold the resolution meeting.

1030. Attendance does not excuse OATH from recognizing the consequences of that failure.

1031. OATH's refusal to accelerate the timeline allowed DOE's failure to hold a resolution meeting to produce continued delay in a pendency matter.

**D. Extension Framework**

1032. Federal and state regulations require that extensions of IDEA hearing timelines be individualized, justified, and documented.

1033. An IHO must respond in writing to extension requests and set forth the facts relied upon when granting an extension. 34 C.F.R. § 300.515(c); 8 N.Y.C.R.R. § 200.5(j)(5).

1034. State regulations require consideration of specific factors when deciding whether to grant an extension, including the impact on the child's educational interest or well-being, the need for additional time to prepare, the need to avoid prejudice, and other relevant factors.

1035. Extensions in Z.C.'s proceedings were granted or maintained despite the pendency posture of the case.

1036. OATH did not adequately account for the unique prejudice caused by delay in a pendency matter.

1037. OATH did not adequately account for the fact that pendency is supposed to operate automatically during the proceeding.

1038. OATH did not adequately account for DOE's failure to hold the resolution meeting.

1039. OATH did not adequately account for Parent's contract-based exposure.

1040. OATH did not adequately account for late fees.

1041. OATH did not adequately account for DOE's continued nonpayment.

1042. OATH did not adequately account for the loss of stay-put's practical protection.

1043. By granting, accepting, or failing to correct extensions and timeline delays without adequately addressing these factors, OATH contributed to the procedural denial of FAPE.

**E. JSM Background and Notice**

1044. OATH and DOE were on notice that New York City's IDEA hearing system has systemic timeliness problems.

1045. *JSM* and related materials addressed delays in New York City's IDEA due process hearing system and the need for compliance with mandatory timelines. See *J.S.M. v. N.Y.C. Dep't of Educ.*, No. 20-cv-705(ERK) (E.D.N.Y.).

1046. Plaintiff does not plead this case as a *JSM* classwide enforcement action.

1047. Plaintiff cites *JSM* as notice and background.

1048. The issue here is Z.C.-specific.

1049. As applied to Z.C., known systemic timeliness problems resulted in delayed pendency adjudication, nonimplementation, late-fee accrual, and procedural injury.

**F. Injury Caused by OATH Delay**

1050. OATH delay caused delayed pendency implementation.

1051. OATH delay increased contract-based late fees.

1052. OATH delay increased attorneys' fees.

1053. OATH delay impaired Parent's participation in the IDEA process.

1054. OATH delay denied Z.C. and Parent timely FAPE procedures.

1055. OATH delay practically nullified § 1415(j) during the school year.

1056. OATH delay allowed DOE to continue withholding funding while asserting that pendency remained disputed or administratively unresolved.

1057. OATH delay transformed an automatic statutory injunction into delayed merits litigation.

1058. Plaintiff seeks declaratory and prospective relief directed to OATH's hearing-administration practices as applied to pendency, resolution-meeting consequences, extensions, and timely adjudication.

## XIX. NYSED / OSR ROLE IN PROCEDURAL DENIAL OF FAPE AND PENDENCY DELAY

1059. NYSED is responsible for general supervision of special education in New York State.

1060. OSR, as part of NYSED, is responsible for state-level review of IHO decisions.

1061. OSR review is governed by federal and state timelines.

1062. An SRO must ensure that a final decision is reached and mailed to the parties not later than thirty days after receipt of a request for review, subject only to specific extensions granted in accordance with governing regulations. 34 C.F.R. § 300.515(b), (c); 8 N.Y.C.R.R. § 200.5(k)(2).

1063. Timely OSR review is especially important in pendency matters.

1064. Delay in state-level review allows DOE to treat administrative uncertainty or appeal posture as a basis for nonpayment.

1065. Delay in state-level review increases contract-based exposure.

1066. Delay in state-level review increases late fees.

1067. Delay in state-level review increases attorneys' fees.

1068. Delay in state-level review undermines the practical purpose of stay-put.

1069. In Z.C.'s 2024–2025 appeal, DOE sought extension relief and filed or pursued late answer and cross-appeal relief.

1070. Parent objected.

1071. Parent objected that DOE's extension request was untimely and prejudicial because pendency was at issue. Exhibit F.

1072. Parent further objected to DOE's late answer and cross-appeal posture. Exhibit G.

1073. Parent explained that delay in a pendency matter prejudiced Parent and prolonged DOE's nonimplementation. Exhibits F–G.

1074. Those objections placed OSR and NYSED on notice that timing was not a neutral procedural issue.

1075. Timing directly affected whether DOE would continue withholding funding.

1076. Timing directly affected Parent's contract-based exposure.

1077. Timing directly affected late fees.

1078. Timing directly affected attorneys' fees.

1079. Timing directly affected the practical enforcement of § 1415(j).

1080. OSR delay allowed DOE to continue treating Z.C.'s pendency as disputed and unimplemented.

1081. OSR delay also allowed DOE to rely on appeal posture as a practical justification for nonpayment.

1082. In SRO Decision No. 25-499, the SRO ultimately rejected DOE's cross-appeal and found no basis to disturb the IHO's pendency determination. Exhibit D.

1083. The SRO confirmed that Z.C.'s pendency was based on FOFD 250764. Exhibit D.

1084. The SRO confirmed there was no basis to disturb the requirement that DOE fund iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

1085. But by the time SRO Decision No. 25-499 issued, DOE had already used delay and appeal posture to avoid timely implementation.

1086. In the 2025–2026 proceeding, Parent appealed the FOFD and pendency determination.

1087. DOE then used the pending appeal as a reason to implement nothing.

1088. DOE's Kapoor Declaration stated that, once the extent of pendency issues on appeal were known, DOE would implement portions of pendency not under appeal, if any. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

1089. That position converted OSR appeal posture into a de facto stay.

1090. OSR and NYSED are responsible for ensuring that state-level review procedures do not permit DOE to use the appeal process as a practical stay of pendency.

1091. OSR and NYSED failed to prevent that result as applied to Z.C.

1092. OSR delay caused appeal-based self-stay.

1093. OSR delay increased late fees.

1094. OSR delay increased attorneys' fees.

1095. OSR delay delayed resolution.

1096. OSR delay contributed to procedural denial of FAPE.

1097. OSR delay created and prolonged uncertainty across school years.

1098. Plaintiff does not name individual SROs as defendants.

1099. Plaintiff names OSR as part of NYSED and Commissioner Rosa in her official capacity.

1100. Plaintiff seeks judicial review of adverse portions of SRO Decision No. 25-499 under 20 U.S.C. § 1415(i)(2). Exhibit D.

1101. Plaintiff also seeks declaratory and prospective relief directed to NYSED/OSR and Commissioner Rosa concerning state-level review timing, extension practice, and prevention of appeal-based self-stays in pendency matters.

## XX. DOE'S ATTEMPT TO SUBSTITUTE OPT TRANSPORTATION IS AN UNLAWFUL CHANGE IN PENDENCY

1102. DOE's attempt to substitute OPT transportation for Parent's chosen transportation provider is an unlawful attempt to alter Z.C.'s pendency placement.

1103. FOFD 250764 ordered payment pursuant to the transportation agreement. Exhibit A.

1104. FOFD 250764 did not order DOE to provide generic transportation.

1105. FOFD 250764 did not order DOE to provide OPT transportation.

1106. FOFD 250764 did not authorize DOE to replace the transportation provider chosen by Parent.

1107. FOFD 250764 ordered DOE to fund transportation pursuant to the parent's transportation agreement. Exhibit A.

1108. The 2024–2025 DPC invoked pendency and included the Sisters transportation agreement for the 2024–2025 school year. Exhibit B.

1109. The 2025–2026 DPC again invoked pendency and included the Sisters transportation agreement for the 2025–2026 school year. Exhibit E.

1110. DOE had notice of the transportation component of Z.C.'s pendency placement.

1111. DOE had notice that specialized transportation was necessary for Z.C. to access iBRAIN.

1112. DOE had notice that Z.C.'s transportation required features including paraprofessional support, air conditioning, lift-bus and wheelchair accessibility, and limited travel time. Exhibit A.

1113. DOE nevertheless claimed in the 2025–2026 proceeding that it could implement transportation "as we see fit."

1114. DOE asserted that it could provide transportation through OPT instead of funding Sisters transportation.

1115. DOE's position is inconsistent with FOFD 250764.

1116. DOE's position is inconsistent with the 2024–2025 DPC and transportation agreement.

1117. DOE's position is inconsistent with the 2025–2026 DPC and transportation agreement.

1118. DOE's position is inconsistent with SRO Decision No. 25-499. Exhibit D.

1119. SRO Decision No. 25-499 recognized that the January 2024 unappealed FOFD ordered DOE to fund transportation services pursuant to the terms of Parent's transportation agreement. Exhibit D.

1120. SRO Decision No. 25-499 further recognized that the IHO in the 2024–2025 matter ordered DOE to "fund," rather than provide, Z.C.'s pendency transportation. Exhibit D.

1121. SRO Decision No. 25-499 found no basis to disturb the IHO's determination that DOE was obligated to fund transportation through Parent's chosen transportation provider. Exhibit D.

1122. DOE's OPT substitution theory therefore conflicts with the operative administrative record.

1123. DOE's OPT substitution theory would give DOE unilateral control over a component of Z.C.'s stay-put placement.

1124. Section 1415(j) prohibits that result.

1125. The purpose of pendency is to strip school districts of unilateral authority to alter the student's educational placement during disputes.

1126. DOE's OPT theory would restore the unilateral control that § 1415(j) forbids.

1127. Specialized transportation is not collateral for Z.C.

1128. Specialized transportation is an integral part of Z.C.'s maintained placement.

1129. Without appropriate transportation, Z.C. cannot safely and consistently access iBRAIN.

1130. Without appropriate transportation, Z.C. cannot reliably access her related services, 1:1 support, assistive technology, therapies, and educational program.

1131. DOE cannot maintain Z.C.'s placement by replacing an established transportation component with a disputed DOE-created alternative.

1132. DOE's attempted substitution also reflects a broader iBRAIN-specific practice.

1133. In Davis, DOE admitted that "in every iBrain case," it contests Sisters transportation and offers OPT instead. *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

1134. Plaintiffs in Davis explained that DOE's OPT offer is legally and practically defective because DOE cannot use an "a la carte" substitution to avoid pendency transportation funding. *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 30, at 4–8 (S.D.N.Y. Nov. 19, 2025).

1135. Plaintiffs in Davis further argued that DOE's OPT substitution theory should not delay automatic pendency implementation. *Id.*

1136. DOE applied the same adverse iBRAIN transportation practice to Z.C.

1137. DOE invoked Sisters transportation as a basis to dispute implementation.

1138. DOE then used that dispute to delay or withhold transportation funding.

1139. DOE's transportation dispute therefore functioned as part of its self-stay.

1140. DOE cannot use a disputed OPT substitution to avoid funding the transportation component of Z.C.'s pendency placement.

1141. DOE cannot unilaterally replace Sisters transportation with OPT absent Parent's agreement or a lawful pendency-changing event.

1142. No such agreement occurred.

1143. No such lawful pendency-changing event occurred.

1144. Plaintiff seeks declaratory relief that DOE's OPT substitution theory does not alter Z.C.'s pendency placement.

1145. Plaintiff seeks enforcement of DOE's obligation to fund Z.C.'s transportation through Parent's chosen provider pursuant to FOFD 250764, the relevant transportation agreements, and SRO Decision No. 25-499.

1146. Plaintiff further seeks all contract-based transportation amounts, including late fees caused by DOE's failure to fund transportation when due.

## XXI. ATTORNEYS' FEES AND COSTS

1147. Plaintiff was forced to retain counsel to enforce rights that should have attached automatically under 20 U.S.C. § 1415(j).

1148. Plaintiff was forced to retain counsel because DOE failed to maintain Z.C.'s pendency placement upon the filing of the 2024–2025 DPC.

1149. Plaintiff was forced to retain counsel because DOE failed to maintain Z.C.'s continuing pendency placement upon the filing of the 2025–2026 DPC.

1150. Plaintiff was forced to retain counsel because DOE treated automatic pendency as disputed, delayed, order-dependent, appeal-dependent, and subject to DOE's unilateral self-stay.

1151. Plaintiff was forced to retain counsel because DOE required Parent to litigate the existence, scope, and implementation of a pendency right that already attached by operation of federal law.

1152. Plaintiff was forced to retain counsel because OATH failed to ensure timely adjudication and enforcement of Z.C.'s pendency rights during the 2024–2025 and 2025–2026 administrative proceedings.

1153. Plaintiff was forced to retain counsel because OSR delay and extension practice permitted DOE to use appeal posture as a practical justification for continued nonimplementation.

1154. Plaintiff incurred attorneys' fees and costs in the 2024–2025 administrative proceeding.

1155. Plaintiff incurred attorneys' fees and costs in the 2024–2025 SRO appeal.

1156. Plaintiff incurred attorneys' fees and costs in the 2025–2026 administrative proceeding.

1157. Plaintiff incurred attorneys' fees and costs in the 2025–2026 OSR appeal.

1158. Plaintiff incurred attorneys' fees and costs in related federal enforcement efforts arising from DOE's nonimplementation of Z.C.'s pendency rights.

1159. Plaintiff has incurred, and will continue to incur, attorneys' fees and costs in this federal action.

1160. Plaintiff seeks attorneys' fees and costs under the IDEA, including 20 U.S.C. § 1415(i)(3)(B).

1161. Plaintiff also seeks attorneys' fees and costs under 42 U.S.C. § 1988 to the extent Plaintiff prevails on claims brought under 42 U.S.C. § 1983.

1162. Plaintiff's attorneys' fees are not incidental.

1163. They are part of the injury caused by DOE's refusal to implement self-executing pendency rights.

1164. They are part of the injury caused by DOE's order-dependent and appeal-dependent self-stay practice.

1165. They are part of the injury caused by DOE's insistence that Parent repeatedly prove and re-prove a pendency entitlement already established by FOFD 250764.

1166. They are part of the injury caused by OATH's delay in addressing pendency while DOE withheld funding.

1167. They are part of the injury caused by OSR delay and extension practice that allowed DOE to continue treating pendency as unresolved.

1168. They are part of the injury caused by Defendants' failure to provide timely, effective IDEA procedures in a manner that preserved Z.C.'s educational stability during the disputes.

1169. Plaintiff preserves her claim for attorneys' fees and costs arising from administrative merits success in the 2024–2025 proceeding.

1170. Plaintiff preserves her claim for attorneys' fees and costs arising from the June 27, 2025 FOFD's pendency determination and merits findings in Parent's favor.

1171. Plaintiff preserves her claim for attorneys' fees and costs arising from the 2024–2025 SRO appeal, including Parent's success in SRO Decision No. 25-499 on the independent neuropsychological evaluation issue and DOE's unsuccessful cross-appeal on pendency.

1172. Plaintiff preserves her claim for attorneys' fees and costs arising from enforcement of Z.C.'s 2024–2025 pendency rights.

1173. Plaintiff preserves her claim for attorneys' fees and costs arising from enforcement of Z.C.'s 2025–2026 continuing pendency rights.

1174. Plaintiff preserves her claim for attorneys' fees and costs arising from this federal enforcement and review action.

1175. Plaintiff preserves her claim for "fees on fees" incurred in establishing entitlement to attorneys' fees and costs.

1176. Plaintiff preserves her claim for attorneys' fees and costs for work on § 1983 claims where available.

1177. Plaintiff seeks an award of reasonable attorneys' fees, costs, expenses, and such other fee-related relief as permitted by law.

## XXII. DOE'S EXPECTED RELIANCE ON MENDEZ IS MISPLACED — AND MENDEZ SUPPORTS PLAINTIFF

1178. DOE is expected to argue that *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), bars Plaintiff's request for pendency funding.

1179. DOE's expected reliance on *Mendez* is misplaced.

1180. Plaintiff is not seeking a preliminary injunction.

1181. Plaintiff is not asking the Court to create a new pendency placement on a blank slate.

1182. Plaintiff is not seeking accelerated payment before pendency is established.

1183. Plaintiff is not asking the Court to require DOE to bypass legitimate ordinary-course payment procedures after DOE timely recognizes and processes a pendency obligation.

1184. Plaintiff seeks enforcement of automatic statutory injunctions that attached in July 2024 and July 2025.

1185. Plaintiff seeks enforcement of Z.C.'s pendency placement anchored in FOFD 250764.

1186. Plaintiff seeks enforcement after the June 27, 2025 FOFD confirmed Parent's 2024–2025 pendency position.

1187. Plaintiff seeks enforcement after SRO Decision No. 25-499 confirmed that there was no basis to disturb the determination that DOE must fund iBRAIN tuition, related services, and transportation through Parent's chosen provider.

1188. No reading of *Mendez* can realistically suggest that payment for 2024–2025 pendency, after the school year passed and after administrative confirmation, is an improper "fast-track" request.

1189. No reading of *Mendez* can realistically suggest that payment for 2025–2026 continuing pendency, after DOE conceded the FOFD 250764 anchor but withheld implementation, is an improper "fast-track" request.

1190. DOE cannot use *Mendez* to transform years of nonimplementation into ordinary payment administration.

1191. DOE cannot use *Mendez* to justify a system in which DOE refuses to authorize, process, or fund pendency until the school year has been substantially or completely consumed.

## A. *Mendez* Supports Plaintiff

1192. *Mendez* confirms that pendency placement and public funding are linked.

1193. *Mendez* does not allow DOE to recognize a placement in theory while refusing to fund it in practice.

1194. *Mendez* does not create a self-stay doctrine.

1195. *Mendez* does not require a new IHO order before pendency attaches.

1196. *Mendez* does not permit DOE to ignore a final, unappealed administrative decision that already established the student's pendency placement.

1197. *Mendez* does not allow DOE to wait until after the school year to fund the placement.

1198. *Mendez* does not allow DOE to use OATH delay as a substitute for a stay.

1199. *Mendez* does not allow DOE to use OSR delay as a substitute for a stay.

1200. *Mendez* does not allow DOE to withhold all payments while disputing only cost increases, transportation-provider identity, or implementation method.

1201. *Mendez* does not allow DOE to convert a transportation dispute into nonpayment of all transportation pendency funding.

1202. *Mendez* does not eliminate contract-based late fees caused by DOE's nonpayment.

1203. *Mendez* does not transform pendency enforcement into a discretionary budgetary process controlled by DOE's litigation preferences.

1204. *Mendez* does not hold that DOE may delay the beginning of ordinary-course processing until DOE obtains a new IHO order, SRO decision, or DOE-approved pendency form.

1205. *Mendez* does not permit DOE to use its own refusal to authorize payment as proof that payment is not yet due.

1206. *Mendez* does not permit DOE to characterize nonauthorization as ordinary-course processing.

1207. *Mendez* supports Plaintiff because it recognizes that pendency protects the student's educational placement during the dispute-resolution process.

1208. For Z.C., that placement includes iBRAIN tuition, related services, required supports, and special transportation.

1209. For Z.C., maintenance of that placement required funding.

1210. DOE's nonpayment did not maintain the placement.

1211. DOE's nonpayment shifted the financial burden of the stay-put placement onto Parent, iBRAIN, and the transportation provider.

1212. That is the opposite of the public maintenance required by § 1415(j).

1213. DOE may not use *Mendez* to separate the student's right to remain in placement from DOE's obligation to fund the placement that allows the student to remain there.

**B. Ordinary-Course Payment Procedures Do Not Authorize DOE's Delay**

1214. Plaintiff does not dispute that DOE may use legitimate ordinary-course payment procedures to review documentation and process payments.

1215. But ordinary-course procedures must begin when the statutory obligation attaches.

1216. Ordinary-course procedures cannot begin months later, after DOE receives a new IHO order it considers sufficient.

1217. Ordinary-course procedures cannot begin months later, after DOE receives an SRO decision.

**C. Ordinary-course procedures cannot begin months later, after DOE decides what portions of pendency are not "under appeal."**

1218. Ordinary-course procedures cannot begin only after DOE secures a DOE-approved pendency form or administrative clarification.

1219. Ordinary-course procedures cannot be used to avoid the duty to maintain placement during the pendency of proceedings.

1220. DOE may not manufacture delay, call the delay ordinary course, and then invoke Mendez to excuse the delay.

1221. The distinction matters.

1222. *Mendez* permits legitimate ordinary payment procedures.

1223. *Mendez* does not permit DOE to delay the start of those procedures through a self-created precondition.

1224. DOE's position here is not ordinary-course processing.

1225. DOE's position is order-dependent nonprocessing.

1226. DOE's position is appeal-dependent nonprocessing.

1227. DOE's position is transportation-dispute-dependent nonprocessing.

1228. DOE's position is cost-dispute-dependent nonprocessing.

1229. DOE's position is pendency-form-dependent nonprocessing.

1230. DOE's position is administrative-clarification-dependent nonprocessing.

1231. DOE's position is unlawful self-stay.

1232. Plaintiff therefore seeks enforcement of Z.C.'s pendency rights notwithstanding DOE's expected reliance on *Mendez*.

### XXIII. ANTICIPATED DEFENSES AND WHY THEY FAIL

1233. Plaintiff anticipates that Defendants may assert defenses based on ripeness, prematurity, exhaustion, mootness, *Ventura de Paulino*, *Mendez*, and year-specific equitable determinations.

1234. Those defenses fail.

**A. Ripeness and Prematurity**

1235. This action is ripe.

1236. This action is not premature.

1237. This is not a blank-slate pendency preliminary-injunction action.

1238. This action is based on an existing final, unappealed pendency anchor: FOFD 250764. Exhibit A.

1239. This action is based on Parent's July 2, 2024 DPC, which triggered automatic pendency for the 2024–2025 school year. Exhibit B.

1240. This action is based on the June 27, 2025 FOFD, which confirmed Parent's 2024–2025 pendency position and ordered DOE to fund Z.C.'s attendance at iBRAIN, related services, and transportation by Parent's chosen provider via pendency. Exhibit C.

1241. This action is based on SRO Decision No. 25-499, which dismissed DOE's pendency cross-appeal and found no basis to disturb the IHO's pendency determination. Exhibit D.

1242. This action is based on Parent's July 2025 DPC, which triggered continuing pendency for the 2025–2026 school year. Exhibit E.

1243. This action is based on DOE's ongoing self-stay and nonimplementation.

1244. This action is based on OATH delay and OSR delay as applied to Z.C.

1245. This action is based on contract-based late fees and attorneys' fees that have already accrued.

1246. This action is based on concrete procedural injuries that have already occurred.

1247. This action is based on DOE's continuing refusal to treat automatic pendency as self-executing and immediately enforceable.

1248. The controversy is real, immediate, and ongoing.

1249. Plaintiff is not asking the Court to speculate about future events.

1250. Plaintiff asks the Court to enforce and review completed administrative actions, remedy past and ongoing nonimplementation, and prevent continued recurrence.

**B. Exhaustion**

1251. Exhaustion does not bar this action.

1252. Enforcement of final administrative determinations does not require new exhaustion.

1253. Enforcement of SRO Decision No. 25-499 does not require Plaintiff to return to OATH or OSR to obtain another order.

1254. Enforcement of FOFD 250764 as Z.C.'s pendency anchor does not require new exhaustion.

1255. Pendency enforcement does not require exhaustion because § 1415(j) creates an immediate, automatic protection designed to operate during the administrative process.

1256. Requiring exhaustion before enforcing pendency would defeat the purpose of pendency.

1257. Plaintiff's procedural-denial-of-FAPE claims also arise from the failure of the administrative process itself.

1258. Plaintiff cannot be required to exhaust a process that is the source of the procedural injury being challenged.

1259. Plaintiff has, in any event, participated extensively in the administrative process.

1260. Parent litigated the 2024–2025 administrative proceeding.

1261. Parent appealed adverse portions of the June 27, 2025 FOFD to OSR.

1262. Parent obtained SRO Decision No. 25-499.

1263. Parent filed and litigated the 2025–2026 DPC.

1264. Parent appealed adverse 2025–2026 determinations.

1265. DOE cannot invoke exhaustion to shield its own failure to implement rights that attached automatically and were later confirmed.

1266. DOE cannot require Parent to exhaust a new process before enforcing rights that DOE was required to honor during the process.

## C. Mootness

1267. This action is not moot.

1268. Late fees remain live.

1269. Contract-based transportation consequences remain live.

1270. Declaratory claims remain live.

1271. Procedural-denial-of-FAPE claims remain live.

1272. *Monell* and § 1983 claims remain live.

1273. OATH and OSR procedural-delay claims remain live.

1274. Attorneys' fees and costs remain live.

1275. Prospective enforcement claims remain live.

1276. Discovery into DOE, OATH, and OSR delay practices remains relevant to live claims.

1277. The same conduct repeated in the 2025–2026 school year.

1278. DOE's later partial or belated payment, if any, cannot moot claims for late fees.

1279. DOE's later partial or belated payment, if any, cannot moot claims for declaratory relief.

1280. DOE's later partial or belated payment, if any, cannot moot claims for procedural injury.

1281. DOE's later partial or belated payment, if any, cannot moot Monell claims.

1282. DOE's later partial or belated payment, if any, cannot moot attorneys' fees.

1283. DOE's later partial or belated payment, if any, cannot moot prospective relief designed to prevent repetition.

1284. DOE's later payment of principal would not erase the harm caused by years of nonimplementation.

1285. DOE's later payment of principal would not erase the contract-based late fees caused by DOE's failure to pay when due.

1286. DOE's later payment of principal would not erase the procedural injury caused by OATH and OSR delay.

1287. DOE's later payment of principal would not erase DOE's policy and custom of appeal-dependent and order-dependent self-stay.

1288. DOE's later payment of principal would not erase the need for declaratory relief clarifying that pendency attaches automatically and may not be withheld pending DOE's preferred order, form, or appeal posture.

1289. The controversy remains live.

## D. *Ventura de Paulino*

1290. DOE may rely on *Ventura de Paulino* to argue that it has authority to determine how pendency services are provided.

1291. That argument fails as applied to Z.C.

1292. This case does not involve a parent unilaterally transferring a student to a new school and then asking DOE to fund a materially different placement based only on substantial similarity.

1293. This case does not involve Parent attempting to create a new stay-put placement through unilateral substitution.

1294. Z.C.'s pendency anchor is FOFD 250764.

1295. FOFD 250764 ordered DOE to fund iBRAIN tuition, related services, and transportation pursuant to the parent's enrollment agreement and transportation agreement. Exhibit A.

1296. The 2024–2025 DPC invoked that placement and included the relevant contracts. Exhibit B.

1297. The 2025–2026 DPC invoked continuing pendency based on the same anchor and included the relevant contracts. Exhibit E.

1298. SRO Decision No. 25-499 confirmed that there was no basis to disturb the determination that DOE must fund iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

1299. DOE cannot use *Ventura de Paulino* to rewrite a funding obligation tied to FOFD 250764 and confirmed in SRO Decision No. 25-499.

1300. *Ventura de Paulino* does not permit DOE to substitute OPT transportation for a contract-based transportation component of an established pendency placement.

1301. *Ventura de Paulino* does not permit DOE to withhold all transportation funding while asserting a unilateral right to provide different transportation.

1302. *Ventura de Paulino* does not permit DOE to use cost objections as a self-stay.

1303. *Ventura de Paulino* does not permit DOE to disregard a final, unappealed administrative decision.

1304. *Ventura de Paulino* does not permit DOE to transform pendency into an a la carte menu from which DOE may select cheaper or preferred components.

1305. *Ventura de Paulino* does not permit DOE to replace public maintenance of an established pendency placement with an unaccepted alternative that changes the practical operation of the placement.

1306. DOE's reliance on *Ventura de Paulino* cannot defeat Plaintiff's pendency, transportation, late-fee, or enforcement claims.

**E. Prong III Reductions**

1307. DOE may argue that equitable or Prong III determinations limit Z.C.'s pendency rights.

1308. That argument fails.

1309. Equitable reductions are school-year-specific.

1310. Equitable reductions are merits-specific.

1311. Equitable reductions do not redefine pendency unless they constitute a lawful pendency-changing event.

1312. Any 2024–2025 Prong III reduction or adverse equitable determination did not amend FOFD 250764.

1313. Any 2024–2025 Prong III reduction or adverse equitable determination did not erase FOFD 250764 as the final, unappealed pendency anchor.

1314. Any 2024–2025 Prong III reduction or adverse equitable determination did not authorize DOE to withhold 2025–2026 pendency funding.

1315. Any 2024–2025 Prong III reduction or adverse equitable determination did not convert Sisters transportation into OPT transportation.

1316. Any 2024–2025 Prong III reduction or adverse equitable determination did not eliminate contract-based late fees caused by DOE's failure to fund pendency when due.

1317. Pendency carries forward the placement and services, not an equitable penalty or year-specific remedial limitation.

1318. DOE cannot use a merits-specific equitable argument to accomplish indirectly what it could not obtain directly: a stay or alteration of the automatic pendency placement.

1319. SRO Decision No. 25-499 confirms that pendency, not equitable reduction, controlled the 2024–2025 relief posture. Exhibit D.

1320. The same principle applies to continuing pendency for 2025–2026 absent a lawful change in placement.

1321. No lawful change in Z.C.'s pendency placement occurred.

1322. No agreement between Parent and DOE changed Z.C.'s pendency placement.

1323. DOE's Prong III defense therefore fails.

## COUNT I

**Enforcement of 2024–2025 Pendency Under 20 U.S.C. § 1415(j)**

**Against DOE and Chancellor Samuels**

1324. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1325. This Count is brought against DOE and Chancellor Samuels for enforcement of Z.C.'s 2024–2025 pendency rights under 20 U.S.C. § 1415(j).

1326. FOFD 250764 established Z.C.'s then-current educational placement for pendency purposes. Exhibit A.

1327. FOFD 250764 ordered DOE to fund Z.C.'s iBRAIN tuition, related services, and special transportation pursuant to the terms of Parent's enrollment agreement and transportation agreement. Exhibit A.

1328. DOE did not appeal FOFD 250764.

1329. FOFD 250764 therefore became final and binding.

1330. On July 2, 2024, Parent filed Z.C.'s DPC for the 2024–2025 school year. Exhibit B.

1331. The July 2, 2024 DPC invoked Z.C.'s pendency rights and sought continued funding for iBRAIN tuition, related services, required supports, and Sisters transportation. Exhibit B.

1332. Upon the filing of the July 2, 2024 DPC, 20 U.S.C. § 1415(j) automatically required DOE to maintain Z.C.'s then-current educational placement at public expense.

1333. DOE was required to maintain the placement beginning July 2, 2024.

1334. DOE's obligation did not depend on a new IHO order.

1335. DOE's obligation did not depend on DOE's agreement.

1336. DOE's obligation did not depend on DOE's preferred pendency form.

1337. DOE's obligation did not depend on DOE's later litigation position concerning cost, transportation, or scope.

1338. DOE's obligation did not depend on OATH issuing a standalone pendency order, OSR completing review, or this Court entering a separate order recreating a right that § 1415(j) had already created by operation of law.

1339. DOE violated § 1415(j) by failing to maintain Z.C.'s FOFD 250764 placement during the 2024–2025 school year.

1340. DOE failed to timely fund Z.C.'s iBRAIN tuition.

1341. DOE failed to timely fund Z.C.'s related services.

1342. DOE failed to timely fund Z.C.'s required supports.

1343. DOE failed to timely fund Z.C.'s special transportation through Parent's chosen transportation provider.

1344. DOE failed to maintain the placement at public expense while the 2024–2025 administrative proceedings were pending.

1345. By June 9, 2025, DOE had paid nothing toward Z.C.'s 2024–2025 tuition or special transportation, and DOE's position remained that "pendency is disputed in this case and no determination with respect to Z.C.'s pendency placement has been made." *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 7, 9 (S.D.N.Y. June 9, 2025).

1346. The June 27, 2025 FOFD later confirmed that Parent's pendency position was correct and ordered DOE to fund, "via pendency," Z.C.'s attendance at iBRAIN, related services, and transportation expenses provided by Parent's chosen transportation provider from July 2, 2024 through the date of the decision. Exhibit C.

1347. SRO Decision No. 25-499 found no basis to disturb the IHO's determination that DOE was obligated to fund Z.C.'s iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

1348. DOE's failure to maintain Z.C.'s pendency placement caused unpaid tuition, unpaid related-services obligations, unpaid transportation obligations, contract-based late fees, attorneys' fees, costs, and other injuries.

1349. Plaintiff is entitled to enforcement of Z.C.'s 2024–2025 pendency rights from July 2, 2024 forward.

1350. Plaintiff is entitled to an order requiring DOE and Chancellor Samuels to fund Z.C.'s 2024–2025 iBRAIN tuition, related services, required supports, and Sisters transportation pursuant to the operative contracts and FOFD 250764.

1351. Plaintiff is entitled to contract-based late fees accruing from the dates DOE should have paid.

1352. Plaintiff is entitled to attorneys' fees and costs incurred in enforcing Z.C.'s 2024–2025 pendency rights.

1353. Plaintiff seeks such other legal and equitable relief as the Court deems just and proper.

## COUNT II

### Enforcement of 2025–2026 Continuing Pendency Under 20 U.S.C. § 1415(j)

**Against DOE and Chancellor Samuels**

1354. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1355. This Count is brought against DOE and Chancellor Samuels for enforcement of Z.C.'s continuing pendency rights for the 2025–2026 school year under 20 U.S.C. § 1415(j).

1356. FOFD 250764 established Z.C.'s then-current educational placement for pendency purposes. Exhibit A.

1357. SRO Decision No. 25-499 reinforced that FOFD 250764 supplied the operative pendency basis and found no basis to disturb the determination that DOE was obligated to fund Z.C.'s

iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

1358. In July 2025, Parent filed Z.C.'s DPC for the 2025–2026 school year. Exhibit E.

1359. The 2025–2026 DPC invoked Z.C.'s pendency rights. Exhibit E.

1360. The 2025–2026 DPC sought continued funding of Z.C.'s iBRAIN placement, related services, required supports, and Sisters transportation. Exhibit E.

1361. Upon filing of the 2025–2026 DPC, § 1415(j) automatically required DOE to continue maintaining Z.C.'s FOFD 250764 placement at public expense unless and until a lawful change occurred.

1362. No lawful pendency-changing event occurred.

1363. Parent and DOE did not agree to change Z.C.'s pendency placement.

1364. DOE conceded during the 2025–2026 administrative proceeding that Z.C.'s pendency would arise from FOFD 250764.

1365. DOE's concession confirmed the pendency anchor.

1366. DOE nevertheless disputed implementation based on alleged cost increases, transportation-provider objections, appeal posture, and DOE's asserted right to provide transportation through OPT.

1367. DOE's concession of the pendency anchor did not permit DOE to withhold funding for the placement.

1368. DOE could not comply with § 1415(j) by acknowledging FOFD 250764 in theory while refusing to fund the tuition, related services, supports, and transportation necessary to maintain the placement in practice.

1369. In the 2025–2026 Bruckauf action, DOE represented that, "[o]nce the extent of the pendency issues on appeal are known, DOE will implement the portions of pendency that are not under appeal, if any." *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

1370. DOE's statement reflected an unlawful appeal-based self-stay of Z.C.'s 2025–2026 pendency rights.

1371. In the December 24, 2025 status letter filed in *Bruckauf v. Aviles-Ramos*, Plaintiffs reported that DOE had implemented no aspect of *Z.C.'s pendency and had issued no pendency payments. Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

1372. The December 24, 2025 status letter further reported that DOE was delinquent in funding Z.C.'s 2025–2026 pendency tuition and transportation, exclusive of applicable late fees that continued to accrue. *Id.*

1373. DOE violated § 1415(j) by failing to maintain Z.C.'s continuing pendency placement during the 2025–2026 school year.

1374. Plaintiff is entitled to prospective and accrued 2025–2026 pendency funding.

1375. Plaintiff is entitled to funding for iBRAIN tuition, related services, required supports, and Sisters transportation.

1376. Plaintiff is entitled to contract-based late fees caused by DOE's failure to fund continuing pendency when payment was due.

1377. Plaintiff is entitled to attorneys' fees and costs incurred in enforcing Z.C.'s 2025–2026 continuing pendency rights.

1378. Plaintiff seeks such other legal and equitable relief as the Court deems just and proper.

## COUNT III

### Enforcement of SRO Decision No. 25-499

**Against DOE and Chancellor Samuels**

1379. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1380. This Count is brought against DOE and Chancellor Samuels for enforcement of SRO Decision No. 25-499.

1381. SRO Decision No. 25-499 is a final administrative determination subject to enforcement in this Court. Exhibit D.

1382. SRO Decision No. 25-499 confirmed that Z.C.'s pendency was based on the unappealed January 24, 2024 FOFD in IHO Case No. 250764. Exhibit D.

1383. SRO Decision No. 25-499 dismissed DOE's cross-appeal. Exhibit D.

1384. SRO Decision No. 25-499 found no basis to disturb the IHO's determination that DOE was obligated to fund the costs of tuition and related services at iBRAIN and the costs of transportation services delivered by Parent's chosen provider. Exhibit D.

1385. SRO Decision No. 25-499 rejected DOE's attempt, on the record presented, to treat alleged cost increases as a change in Z.C.'s pendency placement. Exhibit D.

1386. SRO Decision No. 25-499 also found that DOE failed to articulate a coherent basis to disturb the IHO's determination that DOE must fund transportation by Parent's chosen provider. Exhibit D.

1387. SRO Decision No. 25-499 ordered DOE to fund an independent neuropsychological evaluation of Z.C., subject to district criteria. Exhibit D.

1388. DOE is required to comply with SRO Decision No. 25-499.

1389. DOE has no lawful basis to refuse or delay implementation of the pendency obligations confirmed by SRO Decision No. 25-499.

1390. DOE has no lawful basis to refuse or delay implementation of the independent neuropsychological evaluation funding order.

1391. Plaintiff seeks enforcement of SRO Decision No. 25-499.

1392. Plaintiff seeks an order requiring DOE and Chancellor Samuels to implement the SRO's pendency determination, including full funding of Z.C.'s iBRAIN tuition, related services, and special transportation through Parent's chosen provider.

1393. Plaintiff seeks an order requiring DOE and Chancellor Samuels to fund the independent neuropsychological evaluation ordered by the SRO.

1394. Plaintiff seeks full contract-based implementation consistent with FOFD 250764, the 2024–2025 DPC, the June 27, 2025 FOFD, and SRO Decision No. 25-499. Exhibits A, B, C, D.

1395. Plaintiff seeks attorneys' fees, costs, and such other legal and equitable relief as the Court deems just and proper.

## COUNT IV

**Judicial Review, Modification, or Clarification of Adverse Portions of SRO Decision No. 25-499 Under 20 U.S.C. § 1415(i)(2)**

**Against DOE, NYSED, OSR, and Commissioner Rosa**

1396. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1397. This Count is brought under 20 U.S.C. § 1415(i)(2) for judicial review, modification, or clarification of adverse portions of SRO Decision No. 25-499.

1398. Plaintiff is aggrieved by SRO Decision No. 25-499 to the extent DOE or any Defendant contends that the SRO's mootness analysis extinguishes or limits Plaintiff's live claims for full contract-based relief, late fees, nonimplementation injury, declaratory relief, prospective relief, § 1983 relief, *Monell* relief, procedural-denial-of-FAPE relief, or attorneys' fees.

1399. The SRO held that certain transportation and equitable issues were moot because pendency supplied the relief sought for the 2024–2025 school year. Exhibit D.

1400. Plaintiff seeks clarification that the SRO's mootness ruling does not extinguish the full contract-based pendency consequences of DOE's failure to fund Z.C.'s placement when payment was due.

1401. If pendency supplied all relief sought for the 2024–2025 school year, then pendency supplied the full relief required to maintain Z.C.'s placement under the operative contracts, including contract-based late fees.

1402. DOE cannot use the SRO's mootness ruling to avoid merits review while denying the full contract-based pendency relief that made the appeal moot.

1403. DOE cannot use the SRO's mootness ruling as both a sword and a shield.

1404. Plaintiff seeks review, reversal, modification, or clarification of the SRO's mootness ruling to the extent it is construed to extinguish contract-based late fees.

1405. Plaintiff seeks review, reversal, modification, or clarification of the SRO's mootness ruling to the extent it is construed to extinguish full transportation funding consequences.

1406. Plaintiff seeks review, reversal, modification, or clarification of the SRO's mootness ruling to the extent it is construed to extinguish full pendency implementation.

1407. Plaintiff seeks review, reversal, modification, or clarification of the SRO's mootness ruling to the extent it is construed to extinguish review of actual nonimplementation.

1408. Plaintiff seeks review, reversal, modification, or clarification of the SRO's mootness ruling to the extent it is construed to extinguish recurring 2025–2026 pendency issues.

1409. Plaintiff seeks review, reversal, modification, or clarification of the SRO's mootness ruling to the extent it is construed to extinguish declaratory claims.

1410. Plaintiff seeks review, reversal, modification, or clarification of the SRO's mootness ruling to the extent it is construed to extinguish procedural-denial-of-FAPE claims caused by delay.

1411. Plaintiff seeks review, reversal, modification, or clarification of the SRO's mootness ruling to the extent it is construed to extinguish § 1983 or Monell claims.

1412. Plaintiff also seeks clarification that any 2024–2025 equitable or Prong III determination did not redefine Z.C.'s pendency placement and did not carry forward into 2025–2026 as a limitation on pendency.

1413. Plaintiff seeks a declaration that 2024–2025 equitable reductions, if any, were merits-specific and year-specific and do not alter the FOFD 250764 pendency anchor.

1414. Plaintiff seeks preservation of full enforcement relief for Z.C.'s 2024–2025 and 2025–2026 pendency placements.

1415. Plaintiff further seeks such review, modification, clarification, declaratory relief, attorneys' fees, costs, and other relief as the Court deems just and proper.

## COUNT V

### Declaratory Judgment: No New Order Required and No Self-Stay

**Against DOE and Chancellor Samuels**

1416. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1417. This Count is brought against DOE and Chancellor Samuels under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, the IDEA, and related federal law.

1418. An actual controversy exists concerning whether DOE may withhold pendency funding unless and until a new IHO order fully determines the scope of DOE's pendency obligations.

1419. An actual controversy exists concerning whether DOE may treat administrative appeal posture as a stay of pendency.

1420. An actual controversy exists concerning whether DOE may refuse to fund transportation through Parent's chosen provider and instead substitute OPT absent agreement or a lawful pendency-changing event.

1421. An actual controversy exists concerning when DOE's ordinary-course payment obligations must begin.

1422. Plaintiff seeks a declaration that pendency attaches upon the filing of a due process complaint when the student has an established then-current educational placement.

1423. Plaintiff seeks a declaration that no new IHO order was required to create Z.C.'s 2024–2025 pendency rights after Parent filed the July 2, 2024 DPC. Exhibits A, B.

1424. Plaintiff seeks a declaration that no new IHO order was required to create Z.C.'s 2025–2026 continuing pendency rights after Parent filed the 2025–2026 DPC. Exhibits A, E.

1425. Plaintiff seeks a declaration that DOE may not self-stay pendency obligations based on cost objections, transportation-provider objections, documentation objections, administrative posture, appeal posture, or the absence of DOE's preferred order or form.

1426. Plaintiff seeks a declaration that appeal posture is not a stay.

**Plaintiff seeks a declaration that DOE may not implement only portions of pendency it deems not under appeal, "if any."**

1427. Plaintiff seeks a declaration that DOE may not substitute OPT transportation for contract-based transportation ordered and maintained as part of Z.C.'s pendency placement absent agreement or a lawful pendency-changing event.

1428. Plaintiff seeks a declaration that ordinary-course payment procedures must begin when the statutory obligation attaches, not months later when DOE receives a new IHO order, SRO order, or DOE-approved pendency form.

1429. DOE's position in *Davis* confirms an actual controversy because DOE stated that, when pendency is disputed, it "requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

1430. DOE's position in *Davis* further confirms an actual controversy because DOE stated that "in every iBrain case" it contests Sisters transportation and offers OPT instead. *Id.*

1431. DOE's position in the Kapoor Declaration confirms an actual controversy because DOE represented that it would implement only portions of Z.C.'s pendency not under appeal, if any. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

1432. The December 24, 2025 *Bruckauf* status letter confirms the concrete effect of DOE's position because DOE had implemented no aspect of Z.C.'s pendency and had issued no pendency payments. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

1433. *Crespo* confirms that DOE's order-dependent pendency theory is baseless and unsupported by the statute, case law, and governing regulations. *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38, at 11–14 (S.D.N.Y.).

1434. Plaintiff seeks declaratory relief necessary to resolve these live controversies and prevent continued recurrence.

1435. Plaintiff seeks such other legal and equitable relief as the Court deems just and proper.

## COUNT VI

### Contract-Based Maintained Placement and Late Fees

**Against DOE and Chancellor Samuels; Against OATH and OSR Defendants to the Extent Procedural Delay Caused or Increased Late-Fee Exposure**

1436. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1437. This Count seeks relief concerning contract-based late fees and contract-based maintained-placement obligations.

1438. This Count is brought against DOE and Chancellor Samuels because DOE's nonpayment caused contract-based late fees to accrue.

1439. This Count is also brought against OATH Defendants and NYSED/OSR Defendants to the extent procedural delay, extension practice, and delayed adjudication caused or increased Parent's late-fee exposure.

1440. FOFD 250764 did not order generic reimbursement. Exhibit A.

1441. FOFD 250764 ordered payment pursuant to the terms of Parent's enrollment agreement for tuition and related services and the transportation agreement for transportation. Exhibit A.

1442. DOE did not appeal FOFD 250764.

1443. The contract-based payment obligation therefore became final and binding.

1444. The 2024–2025 DPC included the relevant iBRAIN enrollment contract and Sisters transportation agreement. Exhibit B.

1445. The 2025–2026 DPC included the relevant iBRAIN enrollment contract and Sisters transportation agreement. Exhibit E.

1446. Those contracts contained payment obligations, payment schedules, and late-fee provisions.

1447. DOE had notice of the amounts due.

1448. DOE had notice of the payment schedules.

1449. DOE had notice of the financial consequences of nonpayment.

1450. Pendency required DOE to maintain Z.C.'s placement during the proceedings.

1451. Maintenance required payment sufficient to keep the placement operational and available.

1452. DOE did not maintain Z.C.'s placement by withholding payment until after the school year had passed.

1453. DOE did not maintain Z.C.'s placement by refusing to authorize or process payment while treating pendency as disputed.

1454. DOE did not maintain Z.C.'s placement by shifting the financial burden to Parent, iBRAIN, and the transportation provider.

1455. Late fees accrued because DOE failed to pay when it should have paid under § 1415(j), FOFD 250764, and the operative contracts.

1456. For 2024–2025, DOE's obligation attached on July 2, 2024. Exhibit B.

1457. For 2025–2026, DOE's obligation attached when Parent filed the July 2025 DPC. Exhibit E.

1458. DOE was required to fund contractual installment obligations when due, or at least in the ordinary course without undue delay.

1459. DOE cannot delay payment, allow late fees to accrue, and then argue that only principal is recoverable.

1460. DOE cannot treat the contracts as controlling for the placement and payment structure while rejecting the contract-based consequences of nonpayment.

1461. DOE cannot benefit from its own refusal to fund the placement when payment was due.

1462. Late fees also accrued or increased because OATH and OSR failed to timely address pendency and related review obligations.

1463. Had OATH promptly issued a standalone pendency order or timely FOFD within required timelines, late fees would have been avoided or reduced.

1464. Had OSR timely resolved review and not permitted extension practice to prolong uncertainty in a pendency matter, DOE would have had less opportunity to claim appeal posture justified nonpayment.

1465. OATH and OSR delay therefore caused concrete financial injury.

1466. The June 9, 2025 *Bruckauf* status letter reported that Z.C.'s 2024–2025 tuition and transportation arrears included late fees that had accrued because DOE had not paid. *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 7 (S.D.N.Y. June 9, 2025).

1467. The December 24, 2025 Bruckauf status letter reported that DOE had not implemented any aspect of Z.C.'s 2025–2026 pendency and that late fees continued to accrue. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

1468. Late fees are not contempt sanctions.

1469. Late fees are not punitive damages.

1470. Late fees are not collateral consequential damages detached from pendency.

1471. Late fees are contract-based pendency amounts caused by DOE's failure to maintain Z.C.'s placement and by administrative delay that permitted DOE to continue withholding payment.

1472. Plaintiff seeks accrued late fees.

1473. Plaintiff seeks a declaration that late fees are part of the contract-based maintained-placement obligation where DOE's pendency anchor and the operative DPCs incorporate the contracts.

1474. Plaintiff seeks, in the alternative, allocation of responsibility against the entities whose delay caused or increased late-fee exposure, to the extent permitted by law.

1475. Plaintiff seeks attorneys' fees, costs, and such other legal and equitable relief as the Court deems just and proper.

## COUNT VII

### Procedural Denial of FAPE for the 2024–2025 School Year

**Against DOE, OATH Defendants, and NYSED/OSR Defendants**

1476. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1477. This Count is brought for procedural denial of FAPE for the 2024–2025 school year.

1478. DOE was required to provide Z.C. with the procedural protections guaranteed by the IDEA.

1479. OATH Defendants were required to administer Z.C.'s impartial hearing process in a manner consistent with federal and state timelines and due-process requirements.

1480. NYSED/OSR Defendants were required to administer state-level review in a manner consistent with federal and state timelines and due-process requirements.

1481. Procedural violations deny FAPE where they impede the child's right to a FAPE, significantly impede the parent's opportunity to participate in the decision-making process, or cause a deprivation of educational benefits.

1482. DOE procedurally denied FAPE by refusing to implement Z.C.'s automatic pendency rights upon the filing of the July 2, 2024 DPC. Exhibit B.

1483. DOE procedurally denied FAPE by treating FOFD 250764 pendency as disputed and unfunded despite having failed to appeal FOFD 250764. Exhibit A.

1484. DOE procedurally denied FAPE by failing to fund iBRAIN tuition, related services, required supports, and Sisters transportation while the 2024–2025 proceeding was pending.

1485. OATH Defendants procedurally denied FAPE by allowing Z.C.'s pendency issue to be deferred into the merits process.

1486. OATH Defendants procedurally denied FAPE by failing to ensure timely issuance of a standalone pendency order during the 2024–2025 school year.

1487. OATH Defendants procedurally denied FAPE by administering a process in which the hearing concluded on April 10, 2025, but the FOFD did not issue until June 27, 2025. Exhibit C.

1488. By the time the June 27, 2025 FOFD confirmed Parent's pendency position, the 12-month school year was essentially over. Exhibit C.

1489. NYSED/OSR Defendants procedurally denied FAPE by permitting state-level review delay and extension practice to prolong DOE's nonimplementation of pendency.

1490. Parent objected to DOE's extension request in the 2024–2025 OSR appeal because pendency was at issue and delay prejudiced Parent and Z.C. Exhibit F.

1491. Parent also objected to DOE's late answer and cross-appeal posture because delay and untimely appellate practice prolonged the pendency dispute and DOE's nonimplementation. Exhibit G.

1492. The June 9, 2025 *Bruckauf* status letter confirmed that DOE had paid nothing toward Z.C.'s tuition or transportation and that DOE's position remained that pendency was disputed and no determination had been made. *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 7, 9 (S.D.N.Y. June 9, 2025).

1493. Defendants' procedural violations significantly impeded Parent's opportunity to participate meaningfully in the IDEA process.

1494. Defendants' procedural violations deprived Parent of timely resolution of Z.C.'s pendency rights.

1495. Defendants' procedural violations deprived Z.C. and Parent of timely IDEA procedures.

1496. Defendants' procedural violations deprived Z.C. and Parent of the practical protection of stay-put during the school year.

1497. Defendants' procedural violations increased Parent's contract-based late-fee exposure.

1498. Defendants' procedural violations increased Parent's attorneys' fees and costs.

1499. Defendants' procedural violations forced Parent to litigate rights that should have been self-executing.

1500. Defendants' procedural violations converted automatic pendency into after-the-fact enforcement litigation.

1501. Defendants' conduct constituted a procedural denial of FAPE for the 2024–2025 school year.

1502. Plaintiff seeks declaratory relief, compensatory and equitable relief as available, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT VIII

### Procedural Denial of FAPE for the 2025–2026 School Year

**Against DOE, OATH Defendants, and NYSED/OSR Defendants**

1503. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1504. This Count is brought for procedural denial of FAPE for the 2025–2026 school year.

1505. In July 2025, Parent filed Z.C.'s DPC for the 2025–2026 school year. Exhibit E.

1506. The 2025–2026 DPC invoked pendency and sought continued maintenance of Z.C.'s iBRAIN placement, related services, required supports, and Sisters transportation. Exhibit E.

1507. DOE conceded during the 2025–2026 administrative proceeding that Z.C.'s pendency would arise from FOFD 250764.

1508. DOE nevertheless disputed implementation.

1509. DOE disputed implementation based on alleged cost increases.

1510. DOE disputed implementation based on transportation-provider substitution.

1511. DOE disputed implementation based on *Ventura de Paulino*.

1512. DOE asserted that it could implement transportation "as we see fit."

1513. DOE's position conceded the pendency anchor but denied the practical funding necessary to maintain the placement.

1514. OATH did not issue a standalone pendency order at the outset of the 2025–2026 proceeding.

1515. OATH instead directed the parties to argue pendency at the merits hearing.

1516. OATH's handling again converted an automatic stay-put right into a delayed litigation issue.

1517. Parent invoked 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b) based on DOE's failure to hold a resolution meeting within fifteen days.

1518. Parent requested immediate commencement of the impartial hearing timeline.

1519. OATH declined to accelerate the compliance timeline.

1520. DOE argued there was no prejudice because Z.C. was attending iBRAIN.

1521. Parent responded that DOE's dispute left Parent exposed to greater financial liability.

1522. DOE's no-prejudice argument was legally and factually wrong.

1523. Attendance at iBRAIN did not eliminate Parent's contract exposure.

1524. Attendance at iBRAIN did not eliminate late fees.

1525. Attendance at iBRAIN did not eliminate DOE's obligation to maintain the placement at public expense.

1526. Attendance at iBRAIN did not excuse OATH from timely addressing pendency.

1527. DOE later used OSR appeal posture to continue paying nothing.

1528. In the 2025–2026 *Bruckauf* action, DOE stated that once the extent of pendency issues on appeal were known, DOE would implement only the portions of pendency not under appeal, if any. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

1529. The December 24, 2025 Bruckauf status letter reported that DOE had implemented no aspect of Z.C.'s pendency and had issued no pendency payments. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

1530. DOE, OATH, and OSR repeated the same procedural denial from the 2024–2025 school year into the 2025–2026 school year.

1531. Defendants' conduct significantly impeded Parent's ability to participate meaningfully in the IDEA process.

1532. Defendants' conduct deprived Z.C. and Parent of timely pendency procedures.

1533. Defendants' conduct increased Parent's contract-based exposure, late fees, and attorneys' fees.

1534. Defendants' conduct made the automatic injunction practically meaningless during the period when it was supposed to operate.

1535. Defendants' conduct constituted a procedural denial of FAPE for the 2025–2026 school year.

1536. Plaintiff seeks declaratory relief, compensatory and equitable relief as available, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT IX

### Section 1983 Claim Against DOE and Chancellor Samuels

**Deprivation of Federal Rights Secured by the IDEA and Procedural Due Process**

1537. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1538. This Count is brought under 42 U.S.C. § 1983 against DOE and Chancellor Samuels.

1539. DOE and Chancellor Samuels acted under color of state law.

1540. Z.C. and Parent possessed rights secured by federal law, including rights under the IDEA and the Due Process Clause of the Fourteenth Amendment.

1541. Those rights included the right to automatic pendency under 20 U.S.C. § 1415(j).

1542. Those rights included the right to meaningful, timely IDEA procedures.

1543. Those rights included the right to enforcement of final administrative determinations.

1544. Those rights included the right not to have automatic pendency converted into delayed, discretionary, order-dependent funding.

1545. DOE and Chancellor Samuels deprived Z.C. and Parent of those rights.

1546. DOE deprived Z.C. and Parent of federal rights by failing to maintain Z.C.'s pendency placement during the 2024–2025 school year. Exhibits A, B.

1547. DOE deprived Z.C. and Parent of federal rights by failing to maintain Z.C.'s continuing pendency placement during the 2025–2026 school year. Exhibits A, E.

1548. DOE deprived Z.C. and Parent of federal rights by treating automatic pendency as stayed because DOE disputed cost, transportation, administrative posture, or appeal posture.

1549. DOE deprived Z.C. and Parent of federal rights by refusing to fund pendency unless and until DOE received a new order or clarification it deemed sufficient.

1550. DOE deprived Z.C. and Parent of federal rights by using appeal posture as a basis for nonpayment.

1551. DOE deprived Z.C. and Parent of federal rights by applying arbitrary and adverse iBRAIN-specific treatment, including its recurring position that Sisters transportation should be contested in every iBRAIN case.

1552. DOE deprived Z.C. and Parent of federal rights by refusing to recognize that pendency funding obligations attach automatically when the DPC is filed and a pendency placement exists.

1553. SRO Decision No. 25-499 confirms that there was no basis to disturb the determination that DOE was obligated to fund Z.C.'s iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

1554. DOE nevertheless maintained positions that delayed or denied implementation.

1555. In Davis, DOE stated that, when pendency is disputed, it requires an IHO order fully determining the scope of pendency before funding begins. *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

1556. In *Crespo*, the court rejected DOE's order-dependent pendency theory as baseless and unsupported by the statute, case law, and governing regulations. *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38, at 11–14 (S.D.N.Y.).

1557. In the Kapoor Declaration, DOE stated that it would implement only portions of Z.C.'s pendency not under appeal, if any. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

1558. The December 24, 2025 *Bruckauf* status letter reported that DOE had implemented no aspect of Z.C.'s pendency and had issued no pendency payments. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

1559. DOE's conduct was arbitrary, deliberate, and undertaken with knowledge of the consequences for Z.C. and Parent.

1560. DOE knew that withholding pendency funding exposed Parent to contract obligations.

1561. DOE knew that withholding pendency funding exposed Parent to late fees.

1562. DOE knew that withholding pendency funding forced Parent to incur attorneys' fees and costs.

1563. DOE knew that Z.C. depended on continuity of school, related services, support, and transportation.

1564. DOE's conduct caused injury to Z.C. and Parent.

1565. Plaintiff seeks declaratory relief, appropriate equitable relief, attorneys' fees and costs under 42 U.S.C. § 1988 where available, and such other relief as the Court deems just and proper.

## COUNT X

### *Monell* Claim Against DOE

1566. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1567. This Count is brought against DOE under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

1568. DOE is liable under *Monell* because the deprivation of Z.C.'s and Parent's federal rights was caused by DOE policy, custom, practice, ratification, deliberate indifference, and failure to train or supervise.

1569. DOE's conduct toward Z.C. was not isolated.

1570. DOE's conduct reflected an official or operational policy of converting automatic pendency into discretionary post-order implementation.

1571. DOE's conduct reflected a widespread practice or custom of refusing to fund iBRAIN pendency when DOE disputes cost, transportation provider, documentation, scope, or administrative posture.

1572. DOE's conduct reflected an iBRAIN-specific adverse practice.

1573. DOE's conduct reflected a recurring practice of contesting Sisters transportation and offering OPT transportation instead.

1574. DOE's conduct reflected a recurring practice of treating a DOE-created or DOE-asserted dispute as a reason not to fund pendency.

1575. DOE's conduct reflected a recurring practice of requiring a new IHO order fully determining pendency before funding disputed pendency.

1576. DOE's conduct reflected a recurring practice of using administrative appeal posture as a reason to withhold implementation.

1577. DOE's conduct reflected ratification by final policymakers or officials with authority over DOE's special education implementation and payment practices.

1578. DOE's conduct reflected deliberate indifference to the known and obvious consequences of nonimplementation.

1579. DOE's conduct reflected failure to train or supervise DOE personnel responsible for pendency, implementation, authorization, payment, and litigation positions.

1580. DOE's policy or custom is evidenced by DOE's Z.C.-specific conduct.

1581. DOE did not appeal FOFD 250764. Exhibit A.

1582. DOE nevertheless stated in June 2025 that pendency was disputed and no determination had been made. *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 9 (S.D.N.Y. June 9, 2025).

1583. DOE paid nothing toward Z.C.'s tuition or transportation during the 2024–2025 school year. *Id.* at 7.

1584. DOE cross-appealed pendency and cost-related issues after the June 27, 2025 FOFD. Exhibit D.

1585. DOE conceded in 2025–2026 that FOFD 250764 was the pendency anchor but disputed implementation.

1586. DOE stated through the Kapoor Declaration that it would implement only portions of Z.C.'s pendency not under appeal, if any. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

1587. DOE treated OSR appeal posture as a basis for nonpayment.

1588. DOE invoked cost increases and OPT substitution in both school years.

1589. DOE's policy or custom is also evidenced by related-case admissions.

1590. In *Davis*, DOE stated that when pendency is disputed, DOE "requires an order from the IHO fully determining the scope of its pendency obligations before it can begin funding a pendency program." *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 28, at 3 (S.D.N.Y. Nov. 17, 2025).

1591. In *Davis*, DOE further stated that "in every iBrain case" DOE contests Sisters transportation and offers OPT instead. *Id.*

1592. DOE's *Davis* statements show that DOE's conduct is not a one-off Z.C. position.

1593. DOE's *Davis* statements show that DOE's order-dependent and transportation-substitution positions are recurring iBRAIN practices.

1594. DOE's *Davis* statements show that DOE-created disputes are used as a trigger for delayed funding.

1595. Plaintiff's response in *Davis* explained that DOE's admissions confirmed an adverse iBRAIN policy and that DOE-created disputes cannot lawfully delay automatic pendency. *Davis v. Aviles-Ramos*, No. 25-cv-07555 (KPF), ECF No. 29 (S.D.N.Y. Nov. 19, 2025).

1596. *Crespo* further supports Plaintiff's Monell allegations because DOE advanced the same order-dependent pendency theory there, and the court rejected it as baseless and

unsupported by the statute, case law, and governing regulations. *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38, at 11–14 (S.D.N.Y.).

1597. *L.V.* further placed DOE on notice of systemic failures in implementation of special education administrative orders and the need for timely implementation.

1598. Despite this notice, DOE continued to maintain policies and practices that delayed or denied pendency implementation for Z.C.

1599. DOE's policy, custom, practice, ratification, deliberate indifference, and failure to train or supervise caused the deprivation of Z.C.'s and Parent's federal rights.

1600. DOE's policy or custom caused nonimplementation of pendency.

1601. DOE's policy or custom caused appeal-based nonpayment.

1602. DOE's policy or custom caused increased late fees.

1603. DOE's policy or custom caused increased attorneys' fees and costs.

1604. DOE's policy or custom caused procedural injury.

1605. DOE's policy or custom caused the need for this federal enforcement and review action.

1606. Plaintiff seeks declaratory relief, appropriate equitable relief, attorneys' fees and costs under 42 U.S.C. § 1988 where available, and such other relief as the Court deems just and proper.

## COUNT XI

### Declaratory and Injunctive Relief Against OATH Defendants

1607. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1608. This Count is brought against OATH, Commissioner Mayuga, Deputy Commissioner Garcia, and Assistant Commissioner Stewart in their official capacities.

1609. Plaintiff seeks declaratory and prospective relief concerning OATH's hearing administration as applied to Z.C.

1610. OATH's Special Education Hearings Division administered Z.C.'s impartial hearing proceedings.

1611. OATH's hearing administration affected whether Z.C.'s pendency rights were timely addressed or deferred until the school year was nearly over.

1612. In the 2024–2025 proceeding, Parent raised pendency.

1613. DOE disputed pendency.

1614. OATH did not ensure issuance of a standalone pendency order during the school year.

1615. OATH permitted pendency to be deferred into the merits process.

1616. The hearing concluded on April 10, 2025.

1617. The FOFD did not issue until June 27, 2025. Exhibit C.

1618. By the time the June 27, 2025 FOFD confirmed Parent's pendency position, the 12-month 2024–2025 school year was essentially over. Exhibit C.

1619. In the 2025–2026 proceeding, Parent again requested pendency.

1620. DOE conceded that pendency arose from FOFD 250764 but disputed implementation.

1621. OATH again did not issue a standalone pendency order at the outset of the proceeding.

1622. OATH directed the parties to address pendency at the merits hearing.

1623. Parent raised DOE's failure to hold a resolution meeting within fifteen days of receiving the DPC.

1624. Parent requested intervention to begin the due process hearing timeline.

1625. OATH declined to accelerate the compliance timeline.

1626. OATH's handling allowed delay to continue in a pendency matter where time was central to the statutory right.

1627. OATH's hearing administration, pendency deferral, compliance-date handling, resolution-meeting handling, and extension practice violated the IDEA and state regulations as applied to Z.C.

1628. OATH's conduct significantly impeded Parent's participation in the IDEA process.

1629. OATH's conduct deprived Z.C. and Parent of timely pendency procedures.

1630. OATH's conduct contributed to late fees, increased attorneys' fees, and increased financial exposure.

1631. OATH's conduct contributed to the practical nullification of § 1415(j) during the school years at issue.

1632. The June 9, 2025 *Bruckauf* status letter shows the practical consequence of OATH's delay: no pendency order or FOFD had issued, and DOE had paid nothing toward Z.C.'s tuition or transportation. *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), ECF No. 98, at 7, 9 (S.D.N.Y. June 9, 2025).

1633. Plaintiff seeks a declaration that OATH's handling of Z.C.'s pendency issues violated federal and state timelines and IDEA procedural protections as applied.

1634. Plaintiff seeks prospective relief requiring OATH Defendants to ensure timely pendency adjudication in Z.C.'s proceedings and in materially similar future proceedings involving Z.C.

1635. Plaintiff seeks prospective relief requiring that pendency issues be addressed promptly and not deferred until final merits adjudication where delay would deprive stay-put of practical effect.

1636. Plaintiff seeks discovery into OATH's extension practices, compliance-date practices, resolution-meeting consequences, and SEHD administration as applied to Z.C. and materially similar pendency matters.

1637. Plaintiff seeks attorneys' fees, costs, and such other legal and equitable relief as the Court deems just and proper.

## COUNT XII

### Declaratory and Injunctive Relief Against NYSED, OSR, and Commissioner Rosa

1638. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

1639. This Count is brought against NYSED, OSR as part of NYSED, and Commissioner Rosa in her official capacity.

1640. Plaintiff seeks declaratory and prospective relief concerning NYSED/OSR's state-level review, extension practice, and delay as applied to Z.C.

1641. OSR is responsible for timely state-level review of IHO decisions under the IDEA and New York Education Law.

1642. NYSED and Commissioner Rosa are responsible for supervision and administration of the State's special education review system.

1643. In Z.C.'s 2024–2025 appeal, DOE sought extension relief, late-answer relief, or cross-appeal relief in a matter involving pendency. Exhibits F, G.

1644. Parent objected that DOE's extension request was untimely and prejudicial because pendency was at issue. Exhibit F.

1645. Parent objected to DOE's late answer and cross-appeal posture because delay and late appellate practice prolonged uncertainty and prejudice in a pendency matter. Exhibit G.

1646. OSR delay and extension practice allowed DOE to continue treating Z.C.'s pendency as disputed and unimplemented.

1647. OSR delay and extension practice prolonged DOE's nonpayment.

1648. OSR delay and extension practice increased Parent's late-fee exposure.

1649. OSR delay and extension practice increased Parent's attorneys' fees and costs.

1650. In 2025–2026, Parent appealed the FOFD and pendency determination.

1651. DOE then used pending appeal posture as a reason to implement nothing.

1652. In the Kapoor Declaration, DOE stated that, once the extent of pendency issues on appeal were known, DOE would implement only portions of pendency not under appeal, if any. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

1653. The December 24, 2025 *Bruckauf* status letter reported that DOE had implemented no aspect of Z.C.'s pendency and had issued no pendency payments. *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), ECF No. 40, at 12 (S.D.N.Y. Dec. 24, 2025).

1654. NYSED/OSR's delay and extension practices allowed DOE's appeal posture to function as a practical stay of pendency.

1655. Administrative appeal posture is not a stay.

1656. DOE had not obtained a stay.

1657. OSR delay should not operate as a substitute for a stay.

1658. SRO Decision No. 25-499 recognized that there was no basis to disturb the determination that DOE must fund Z.C.'s iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

1659. The delay preceding that decision nevertheless caused concrete injury.

1660. That injury includes appeal-based self-stay.

1661. That injury includes increased late fees.

1662. That injury includes increased attorneys' fees.

1663. That injury includes delayed resolution.

1664. That injury includes procedural denial of FAPE.

1665. That injury includes continued uncertainty across school years.

1666. Plaintiff does not name individual SROs as defendants.

1667. Plaintiff seeks relief directed to NYSED, OSR as part of NYSED, and Commissioner Rosa in her official capacity because the claims concern state-level review structure, timing, extension practice, and prospective relief.

1668. Plaintiff seeks a declaration that OSR delay and extension practice violated the IDEA as applied to Z.C.

1669. Plaintiff seeks a declaration that administrative appeal posture cannot operate as a stay of pendency.

1670. Plaintiff seeks prospective relief concerning extension handling in pendency matters involving Z.C. and materially similar future proceedings involving Z.C.

1671. Plaintiff seeks discovery into OSR's handling of Z.C.'s appeal, extension requests, late-answer practice, and cross-appeal practice.

1672. Plaintiff seeks attorneys' fees, costs, and such other legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

A. Declare that the January 24, 2024 Corrected Findings of Fact and Decision in IHO Case No. 250764 established Z.C.'s then-current educational placement for purposes of pendency under 20 U.S.C. § 1415(j). Exhibit A.

B. Declare that Z.C.'s pendency placement includes iBRAIN tuition, related services, required supports, and special transportation pursuant to the terms of Parent's enrollment agreement and transportation agreement. Exhibit A.

C. Declare that Z.C.'s pendency rights attached automatically when Parent filed the DPC on July 2, 2024. Exhibit B.

D. Declare that Z.C.'s continuing pendency rights attached automatically when Parent filed the 2025–2026 DPC. Exhibit E.

E. Declare that DOE's obligation to maintain Z.C.'s pendency placement did not require a new IHO order, SRO decision, federal court order, DOE agreement, DOE-approved pendency form, or DOE-approved administrative clarification.

F. Declare that DOE may not self-stay pendency obligations created by 20 U.S.C. § 1415(j).

G. Declare that DOE may not treat administrative appeal posture, OSR review, cross-appeal posture, or uncertainty created by DOE's own litigation position as a stay of pendency.

H. Declare that DOE may not refuse all payment based on alleged cost disputes, transportation-provider objections, documentation objections, administrative-posture objections, or claimed uncertainty concerning the scope of pendency.

I. Declare that DOE may not substitute OPT transportation for Sisters transportation where the pendency anchor and operative contracts require funding of Parent's private transportation arrangement, absent agreement by Parent or a lawful pendency-changing event.

J. Enforce SRO Decision No. 25-499. Exhibit D.

K. Enforce the portion of SRO Decision No. 25-499 finding no basis to disturb the determination that DOE is obligated to fund Z.C.'s iBRAIN tuition, related services, and transportation through Parent's chosen provider. Exhibit D.

L. Enforce the portion of SRO Decision No. 25-499 ordering DOE to fund an independent neuropsychological evaluation of Z.C., subject to district criteria. Exhibit D.

M. Reverse, modify, or clarify adverse portions of SRO Decision No. 25-499 to the extent DOE or any Defendant contends that the SRO's mootness ruling extinguishes or limits Plaintiff's claims for contract-based late fees, full transportation funding consequences, pendency nonimplementation, declaratory relief, procedural-denial-of-FAPE relief, § 1983 relief, *Monell* relief, attorneys' fees, or prospective relief. Exhibit D.

N. Declare that the SRO's mootness ruling does not eliminate Plaintiff's live claims for full contract-based relief, including late fees.

O. Declare that if pendency supplied all relief sought for the 2024–2025 school year, then pendency supplied the full contract-based relief required to maintain Z.C.'s placement, including the contractual consequences of DOE's failure to pay when payment was due.

P. Order DOE and Chancellor Samuels to fund Z.C.'s 2024–2025 iBRAIN tuition, related services, required supports, and Sisters transportation pursuant to FOFD 250764 and the operative 2024–2025 contracts incorporated into the 2024–2025 DPC. Exhibits A, B.

Q. Order DOE and Chancellor Samuels to fund Z.C.'s 2025–2026 continuing pendency placement, including iBRAIN tuition, related services, required supports, and Sisters transportation pursuant to FOFD 250764 and the operative 2025–2026 contracts incorporated into the 2025–2026 DPC. Exhibits A, E.

R. Order DOE and Chancellor Samuels to fund the independent neuropsychological evaluation required by SRO Decision No. 25-499. Exhibit D.

S. Order DOE and Chancellor Samuels to make payment pursuant to the contracts incorporated into the 2024–2025 and 2025–2026 DPCs and the contract-based payment language of FOFD 250764, including accrued late fees. Exhibits A, B, E.

T. Order DOE and Chancellor Samuels to implement any future pendency-related payment obligations for Z.C. in the ordinary course beginning when the statutory obligation attaches, without conditioning implementation on a new administrative order, appeal posture, or DOE-approved form.

U. Alternatively, award late fees caused or increased by OATH's failure to ensure timely pendency adjudication, compliance-date administration, resolution-meeting consequences, and timely issuance of decisions in Z.C.'s proceedings.

V. Alternatively, award late fees caused or increased by NYSED/OSR's extension practice, delayed review, late-answer/cross-appeal handling, and permitting DOE's appeal posture to function as a practical stay of pendency.

W. Declare that any 2024–2025 Prong III reduction, adverse equitable determination, or merits-specific limitation does not carry over into Z.C.'s 2025–2026 pendency placement.

X. Declare that Z.C.'s pendency placement carries forward the placement and services established by FOFD 250764 and confirmed by SRO Decision No. 25-499, not a year-specific equitable penalty, transportation-merits denial, or remedial limitation. Exhibits A, D.

Y. Declare DOE's self-stay policy unlawful.

Z. Declare DOE's order-dependent pendency policy unlawful.

AA. Declare DOE's appeal-dependent pendency policy unlawful.

BB. Declare DOE's iBRAIN-specific practice of contesting Sisters transportation and using that dispute to delay or deny pendency funding unlawful.

CC. Declare that DOE's policy, custom, practice, ratification, deliberate indifference, and failure to train or supervise violated Z.C.'s and Parent's federal rights.

DD. Declare that OATH's pendency-deferral, resolution-meeting, compliance-date, hearing-administration, and extension practices violated the IDEA and state regulations as applied to Z.C.

EE. Declare that OATH may not administer pendency disputes in a manner that defers stay-put adjudication until the school year is substantially complete or until final merits adjudication where delay deprives § 1415(j) of practical effect.

FF. Declare that NYSED/OSR's extension and delayed-review practices violated the IDEA and state regulations as applied to Z.C.

GG. Declare that NYSED/OSR may not permit administrative appeal posture, extension practice, late-answer practice, or cross-appeal posture to operate as a practical stay of pendency.

HH. Award compensatory relief under 42 U.S.C. § 1983 to the extent available.

II. Award appropriate equitable relief to remedy DOE's nonimplementation, OATH's delay, and NYSED/OSR's delayed-review practices as applied to Z.C.

JJ. Award Plaintiff reasonable attorneys' fees, costs, and expenses under the IDEA, including 20 U.S.C. § 1415(i)(3)(B).

KK. Award Plaintiff reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988 to the extent Plaintiff prevails on claims brought under 42 U.S.C. § 1983.

LL. Award attorneys' fees and costs incurred in the 2024–2025 administrative proceeding.

MM. Award attorneys' fees and costs incurred in the 2024–2025 SRO appeal.

NN. Award attorneys' fees and costs incurred in the 2025–2026 administrative proceeding.

OO. Award attorneys' fees and costs incurred in the 2025–2026 OSR appeal.

PP. Award attorneys' fees and costs incurred in related federal enforcement efforts arising from DOE's nonimplementation of Z.C.'s pendency rights.

QQ. Award attorneys' fees and costs incurred in this federal action.

RR. Award "fees on fees" incurred in establishing Plaintiff's entitlement to attorneys' fees and costs.

SS. Order Defendants to preserve all records, communications, payment records, implementation records, internal guidance, policies, procedures, training materials, emails, memoranda, and other documents concerning Z.C.'s pendency, DOE's implementation practices, OATH's hearing administration, and NYSED/OSR's review and extension practices.

TT. Permit expedited discovery concerning DOE's pendency implementation practices, DOE's iBRAIN and Sisters transportation practices, DOE's payment authorization and ordinary-course processing practices, OATH's pendency and extension practices, and NYSED/OSR's extension and delayed-review practices as applied to Z.C. and materially similar pendency matters.

UU. Retain jurisdiction to ensure compliance with any declaratory, injunctive, enforcement, payment, or prospective relief ordered by the Court.

VV. Grant such other and further legal, equitable, declaratory, injunctive, compensatory, fee-related, and prospective relief as the Court deems just and proper.

Dated: New York, New York

May 11, 2026

<table>
<tr><td></td><td>Respectfully submitted,<br>LIBERTY & FREEDOM LEGAL GROUP LTD</td></tr>
<tr><td>By:</td><td><u>/s/ <em>Jeffrey Arlen Spinner</em></u><br>Jeffrey Arlen Spinner Esq. (JS22178)<br><em>Attorneys for Plaintiff</em><br>105 East 34th Street, No. 190<br>New York, New York 10016<br>Tel. (646) 850-5035<br>jeff@pabilaw.org</td></tr>
</table>