## FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 277285 |
| Student's Name: | ███████████ |
| School District: | N.Y.C. Dept. of Ed., District # 75 |
| Impartial Hearing Officer: | Di'Indra Forgenie-Dhanantwari, Esq. |
| Date of Filing: | 7/2/2024 |
| Hearing Requested by: | Parent |
| Date of Hearing: | 11/21/24; 11/26/24; 4/10/24 |
| Record Close Date: | 6/26/2025 |
| Date of Decision: | 6/27/2025 |

Findings of Fact and Decision                                                          2
Case No. 277285

## NAMES OF PERSONS WHO APPEARED ON 11/21/2024

For the Student and Parent:
Erik Sidel, Esq.

For the Department of Education:
Mitchell Poirier, Esq.


Witnesses for the Department of Education:
Susan Cuthbert


Witnesses for the Parent:
Caleb Asomugha


## NAMES OF PERSONS WHO APPEARED ON 11/26/2024

For the Student and Parent:
Erik Sidel Esq.

For the Department of Education:
Mitchell Poirier, Esq.


Witnesses for the Department of Education:
*None*


Witnesses for the Parent:
*None*


## NAMES OF PERSONS WHO APPEARED ON 4/10/2025

For the Student and Parent:
Lisa K. Eastwood Esq.
*Observer*- Poppy Kane


For the Department of Education:
Mitchell Poirier, Esq.


Witnesses for the Department of Education:
*None*

Witnesses for the Parent:
*None*


Observer:
Poppy Kane

## BACKGROUND

The Parent, through counsel, filed a Due Process Complaint ("DPC") on or about July 2, 2024. In the DPC, the Parent alleges that the Department of Education ("DOE") failed to offer the student with a free appropriate public education ("FAPE") for the 2024-2025, 12-month, school year. Ex. A.

Parent alleges that the DOE recommended an inappropriate program, failed to conduct necessary evaluations, and failed to offer the Student a placement for the 2024-2025 school year, *inter alia*. Id. By way of relief, Parent seeks an award of direct tuition funding for Student's attendance during the 2024-2025 school year at Private School, a private program not approved by the Commissioner of Education for the education of students with disabilities, direct funding for transportation, the CSE to reconvene to address changes if necessary, and an independent neuropsychological evaluation. Id. Furthermore, Parent alleges that the equities support their claims and requested relief for the school year at issue. Id. In light of the foregoing and as more fully discussed below, I find that a) the DOE failed to meet its burden that it offered Student FAPE for the 2024-2025 school year, b) the Private School offered Student with specially designed instruction sufficient to meet Student's needs, and c) the equities support a finding for partial relief.

## PROCEDURAL HISTORY

The undersigned was appointed on July 8, 2024. A virtual pre-hearing conference was held on September 5, 2024. A Due Process Hearing ("DPH") was held on November 21, 2024, November 26, 2024, and April 10, 2025. The DOE sought to submit 20 documentary exhibits into the record and the testimony of the DOE Special Education Teacher who was also the District Representative (hereafter "District Rep") from the August 7, 2024 IEP meeting in support of its case. Parent counsel sought to submit 16 exhibits into the record. Parent's Ex. I and Ex. J were withdrawn. Parent's remaining exhibits were admitted to the record. Included in Parent's evidence was 1 affidavit from the Deputy Director of Special Education for the Private School (hereafter "Deputy Director"). Both parties made opening statements and both parties submitted written closing briefs. The record closed on June 26, 2025.

## FINDINGS OF FACT AND DECISION

After a full review of the record generated at hearing, I make the following findings of fact and determination:

At the time of the DPC filing the Student was a 12 year old enrolled in the Private School for the 12 month school year. Ex. A. There is no dispute regarding the Student's status as a student with a disability and their entitlement to special education services. The Student is classified as a Traumatic Brain Injury ("TBI") student. Ex. 15. The CSE convened on August 7, 2024 to develop an IEP for the Student, in evidence as Ex. 15, which had a projected

implementation date of September 9, 2024 and a projected annual review date of August 7, 2025. The August 2024 IEP recommended a 12-month school year in a 12:1+4 NYSED NPS Day Program with adapted physical education and related services in Occupational Therapy ("OT") 5 times a week for 30 minutes individually, Parent Counseling and Training ("PCT") 1 time monthly for 60 minutes individual/group, Physical Therapy ("PT") 5 times a week for 60 minutes individually, Speech and Language Therapy ("SL") 5 times a week for 30 minutes individually, a full time 1:1 paraprofessional for ambulation, feeding, and safety, a dynamic display speech generating device, and AT Services 1 time a week for 60 minutes . The June 2023 IEP also recommended a health paraprofessional for health, safety, ambulation, and feeding and special transportation accommodations. Id.

*Pendency*

A child is entitled to remain in his or her placement at public expense during the pendency of a dispute over an individualized education program (IEP) or individualized education service plan (IESP), regardless of the merits of the dispute or the outcome of the relevant proceedings.  The "pendency" provision of the IDEA requires a school district "to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete."  The New York State Education Law includes a similar provision, at § 4404(4)(a).

The school district should not wait for a formal order from a hearing officer before implementing the student's pendency placement.  The pendency provision is in effect an "automatic preliminary injunction" to maintain a disabled student's educational status quo,  and it is triggered immediately after a parent or guardian files a due process complaint on behalf of the Student.  The pendency inquiry therefore focuses on identifying what specific services and placement are required to maintain the student's "then current educational placement" because the district must continue to finance those services and placement until the dispute is resolved. To cut off public funds would amount to a unilateral change in placement, which is prohibited by the Act.   Hearing officers and courts have the authority to address disputes regarding the pendency and to determine what constitutes the then current educational placement.   The phrase "then current educational placement" is not defined in the IDEA or New York statute, but it has been found to mean "the last agreed upon placement at the moment when the due process proceeding is commenced,"  including: "(1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'"

If there is an agreement between the parties on placement during the proceedings, it need not be reduced to a new IEP or IESP, and it can supersede the prior unchallenged IEP or IESP as the then-current placement. A prior impartial hearing officer's findings of fact and decision that was not appealed may also establish a student's current educational placement for purposes of pendency. Moreover, if "a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents" for purposes of establishing the student's current

educational placement. Lastly, a pendency determination can be established by a court on appeal from an SRO decision. Such decisions must be final decisions on the merits. Moreover, although State regulations do not require that a student who had previously been identified as a preschool student with a disability remain in a preschool program for which he or she is no longer eligible by reason of age, SROs have long noted that the IDEA makes no distinction between preschool and school-age children and consequently, if a student is no longer eligible to remain in a particular preschool program, the district remains obligated to provide the student with "comparable special education services during the pendency of an appeal from the CSE's recommendation for [the student's] first year of education as a school age child."

At hearing the Parent asserted that pendency lies in the Findings of Fact and Decision ("FOFD") for Case No. 250764 issued on January 24, 2024. Ex. D.  The award in FOFD#250764 provided an award of payment for Student's non-public school, related services, and transportation costs. Given, that FOFD#250764 is the last un-appealed FOFD I find the Student is entitled to pendency and award tuition, services, and transportation from the filing of the DPC through the issuance of the FOFD.

*Burden*

School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent or person in parental relationship seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement (NYS Educ. Law § 4404(1)(c)).

*Prong I*

The IDEA provides that children with disabilities are entitled to a Free Appropriate Public Education ("FAPE") (20 U.S.C. § 1400 (d)(1)(A). A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written Individualized Education Program ("IEP") (34 C.F.R. § 300.13). A school district has offered a student a FAPE when (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982). In order to meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).

As to Prong I of the Burlington/Carter standard, the DOE failed to meet its burden, at hearing. A School Location Letter ("SLL") was not mailed to the Parent until after the start of the 2024-2025, 12-month school year. Although the Federal and State regulations only mandate that an appropriate IEP be created prior to the start of the school year[1], implicit in a district's

---

[1] *See K.Y. ex rel. T.Y. v. New York City Dept. of Educ., 584 F.3d 412, 419 (2d Cir. 2009)* [finding that "the requirement that an IEP specify a 'location' does not mean that the IEP must specify a specific school site"].

obligation to implement an IEP is the requirement that prior to or contemporaneous with the date of initiation of services under an IEP, a district must provide parents with reasonable notice of the brick and mortar location of the special education program and related services in a student's IEP.  *See* SRO 21-077 quoting *T.C. v. New York City Dep't of Educ.*, 2016 WL 1261137, at *9 (S.D.N.Y. Mar. 30, 2016).   Moreover, in *A ex rel. D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. Feb. 1, 2011) the court also held that the school district's failure to offer a student a placement was a denial of FAPE. Additionally, the DOE was unable to provide a witness from the DOE recommended placement to demonstrate that placement was accessible for the Student and able to implement the IEP. Therefore, I am constrained to find that the DOE failed to offer the Student FAPE for the 2024-2025 school year.

*Prong II*

A private school placement must be "proper under the Act." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 15 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985). This means that the private school must offer an educational program which met the student's special education needs. See *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112, 115 (2d Cir. 2007); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate." *Gagliardo*, 489 F.3d at 112)" Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement.'" *Gagliardo*, 489 F.3d at 112, quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006)

Parents need not show that the placement provides every special service necessary to maximize the student's potential. *Frank G.*, 459 F.3d at 364-65. When determining whether a unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether the placement is "reasonably calculated to enable the child to receive educational benefits." *Frank G.*, 459 F.3d at 364; see *Gagliardo*, 489 F.3d at 115. A private placement is appropriate if it provides instruction specially designed to meet the unique needs of a student. 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 CFR 300.39(a)(1); 8 NYCRR 200.1(ww); *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014).

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement. No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate

that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction. *Gagliardo*, 489 F.3d at 112, quoting *Frank G.*, 459 F.3d at 364-65).

The Private School is a private and highly specialized special education program in New York City created for children who suffer from acquired brain injuries or brain-based disorders. Ex. P. The Deputy Director testified credibly in sum and substance: The Private School provides students with an individualized education program geared toward improving functioning skills appropriate to their cognitive, physical and developmental levels, through a collaborative and multidisciplinary approach. Id. The Private School offers a wide variety of related services including OT, PT, SLT, Vision Therapy, AT services, Music Therapy, PCT, and Hearing Education Services. Id. The Student is diagnosed with several conditions, including, among others, cerebral palsy, hydrocephalus meningitis, which is a buildup of fluid in the ventricles deep within the brain. Student used to have a G-tube for nutrition and feeding, wears bilateral braces to assist with ambulation in a gait trainer, and is dependent upon the use of a wheelchair. Id.

Student currently attends a small 8:1:1 class, which minimizes distractions and enables them to attend, receive educational benefits, and make progress. Id.  Student receives an intensive regimen of related services, including individual OT 5x per week, PT 5x per week, SL 4x per week, VES 2x per week, HES 1x per week, AT 1x per week, and music therapy (MT) 2x per week, all delivered in 60-minute sessions. Additionally, Student receives one session each per week of SL and MT in a group setting, in 60 minute sessions. As a result, Student requires an extended school day and an extended school year. Id. Over the past school year, Student has made progress in skills across academic and related service domains in his educational program at Private School. Id.

I find that Parent has met their burden in proving that the private program offered an educational program which met Student's need under Prong II of the *Burlington/Carter* standard. The weight of the evidence establishes that Student's individual special education needs were addressed by the Private School and that the instruction offered was "reasonably calculated to enable the child to receive educational benefits." *Frank G.*, 459 F.3d at 364.

*Equities*

Even if a parent establishes a right to reimbursement under the IDEA, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246-47, 129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009) In making that equitable determination, a hearing officer may consider many factors, including, inter alia, whether a parent's unilateral withdrawal of her child from the public school was justified, whether the parent provided the Department with adequate notice of the withdrawal, whether the amount of private-school tuition was reasonable, whether the parent should have availed herself of need-based scholarships or other financial aid from the private school, and

whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department, or whether the arrangement with the school was fraudulent or collusive in any other respect. *E.M. dforgeni. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014).

Here, Parent provided the necessary Ten-Days' Notice of their concerns with the DOE's offer of FAPE for the Student for the 2024-2025 school year. Ex. B. Therein, Parent detailed specific concerns. Id. Parent furthermore, gave the DOE notice of their intention to unilaterally place the Student at the Private School. Id. No evidence was submitted at hearing describing the DOE's response to the Ten-Day Letter.

Based on the hearing record, I find no issue with the reasonableness of the costs, including tuition, associated with the Private School. Ex. F. Student attended the Private School during the school year at issue. Ex. P. Overall and after considering the record at hearing, I find that the equities support Parent's claim for direct tuition funding and tuition reimbursement. However, equities bar the Parent from additional relief.

Transportation

The Parent claims that the DOE failed to provide appropriate transportation accommodations is without merit. The documentary evidence provided by the DOE demonstrates that they attempted to work with the Parent to secure transportation for the Student for the 2024-2025 school year. A negative inference was taken given Parent's decision to not appear to answer questions about why they chose to not work with the DOE to secure transportation, why they chose instead to have transportation provided by the agency they selected, to provide information on how the transportation services they chose were appropriate given the Student's needs and in accordance with the recommendations made on the IEP, and what the credentials are of the people providing the transportation services. Given the severe deficits in the record I find an award for the Parent's requested transportation agency is unreasonable and not compensable.

Independent Neuropsychologic Evaluation

The IDEA and State and federal regulations allow a parent of a child with a disability to request an IEE at public expense if the parent disagrees with a school district's evaluation. *See* 20 U.S.C. § 1415 (b)(1); 34 C.F.R. § 300.502(b); 8 NYCRR § 200.5(g)(1); *D.S. by M.S. and R.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 158 (2d Cir. 2020) ("[a] parent is entitled to a publicly funded IEE if the parent disagrees with an evaluation obtained by the public agency") (internal quotation marks and citations omitted).

When a parent disagrees with a school district's evaluation and requests an IEE at public expense, the school district "*must, without unnecessary delay,*" either (1) ensure that an IEE is provided at public expense; or (2) initiate an impartial hearing to establish that its evaluation is appropriate or that the evaluation obtained by the parent does not meet the school district criteria. *See* 34 C.F.R. § 300.502(b)(2)(i) -(ii); 8 NYCRR § 200.5(g)(1)(iv) (emphasis added).

SROs have expressed reservations where the initial request for IEEs is noted in the DPC and held that such a request is not the process contemplated by the IDEA and its implementing regulations (Application of the Dep't of Educ., Appeal No. 23-034; Application of a Student with a Disability, Appeal No. 22-150). *See* SRO 23-157, 22.

Here, the Parent's request for an independent neuropsychological evaluation for DOE's failure to conduct an updated psychoeducational or neuropsychological assessment and DOE's failure to conduct appropriate evaluations is denied. Ex. A. The DOE at hearing defended the evaluations they conducted and the information they used to develop the Student's IEP. I credit the District Rep's testimony that the DOE had all the evaluations required, to develop the IEP, including an up to date neuropsychological or psychoeducational evaluation. The Parent's initial request for the independent neuropsychological evaluation appears for the first time in the DPC, for which I take issue. By choosing to not testify, the Parent was unable to provide any specific information, through the documentary evidence submitted on their behalf, to inform the record regarding the basis of their disagreement with the DOE evaluations, to clarify which evaluations they were disputing, and why an award for an independent neuropsychological evaluation at public expense would be appropriate. Based on the record at hearing, I decline to award the requested IEE.

**ORDER**

NOW, THEREFORE, IN LIGHT OF THE ABOVE FINDINGS OF FACT, IT IS HEREBY **ORDERED THAT**:

(1)    The DOE shall fund the following services via pendency from the filing of the DPC on July 2, 2024 through the date of this Order:

    a.  Payment for Student's attendance at the nonpublic school, including the cost of related services; and

    b.  Payment for transportation expenses provided Parent's chosen transportation provider.

(2)    Parent's claim for direct tuition funding for the Student's unilateral placement at the Private School is GRANTED for the 2024-2025, 12-month, school year as follows:

    (a)    The District shall fund the cost of the Student's placement in the Private School in the amount of $323,791.20.

Dated:  06/27/2025

*Di'Indra Forgenie-Dhanantwari, Esq.*
Di'Indra Forgenie-Dhanantwari, Esq.
Impartial Hearing Officer

Findings of Fact and Decision                                                           11
Case No. 277285

## <u>NOTICE OF RIGHT TO APPEAL</u>

Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

## DISTRICT EVIDENCE

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| 1 | IEP Meeting Notice | 04/18/2024 | 3 |
| 2 | Social History Update | 04/29/2024 | 6 |
| 3 | Emails from Susan Cuthbert regarding Annual Review | Various | 3 |
| 4 | Emails regarding Annual Review | Various | 3 |
| 5 | Revised IEP Meeting Notice | 05/17/2024 | 3 |
| 6 | Emails containing Medical Accommodation Forms | 06/12/2024 | 3 |
| 7 | Individualized Education Program | 06/13/2024 | 44 |
| 8 | IEP Attendance Page | 06/13/2024 | 1 |
| 9 | Prior Written Notice & School Location Letter | 07/03/2024 | 15 |
| 10 | Email to Parent with PWN & SLL | 07/03/2024 | 1 |
| 11 | Notice of Secured Placement | 07/19/2024 | 3 |
| 12 | Notice of IEP Meeting | 07/25/2024 | 3 |
| 13 | Revised Notice of IEP Meeting | 07/31/2024 | 3 |
| 14 | Emails regarding Securement Meeting | Various | 3 |
| 15 | IEP | 08/07/2024 | 43 |
| 16 | PWN & SLL | 08/14/2024 | 9 |
| 17 | iBRAIN About Us | 10/11/2024 | 11 |
| 18 | Letter from Office of Pupil Transportation | 07/11/2024 | 1 |
| 19 | Pendency Letter from Office of Pupil Transportation | 08/29/2024 | 1 |
| 20 | Affidavit of Susan Cuthbert | 10/15/2024 | 7 |

## PARENT EVIDENCE

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| A | Due Process Complaint IH # 277285 | 07/02/2024 | 10 |
| B | Ten Day Notice | 06/17/2024 | 2 |
| C | Pendency Implementation Form | 07/02/2024 | 1 |
| D | Corrected FOFD IH# 250764 | 01/24/2024 | 15 |
| E | Order of Pendency | Undated | 2 |
| F | iBRAIN Enrollment Contract | 06/21/2024 | 7 |
| G | School Transportation Agreement | 06/18/2024 | 7 |
| H | iBrain Report and Education Plan 2024-25 School Year | 06/13/2024 | 64 |
| I | WITHDRAWN | | |
| J | MAFs 24-25 | Various Dates | 7 |
| K | School Quarterly Progress Report – Q1 | 10/02/2023 | 23 |
| L | School Quarterly Progress Report – Q2 | 01/05/2024 | 17 |

| M | School Quarterly Progress Report – Q3 | 04/12/2024 | 21 |
| N | School Quarterly Progress Report – Q4 | 07/05/2024 | 18 |
| O | WITHDRAWN | | |
| P | Affidavit of Caleb Asomugha – Deputy Director of Special Education at iBrain | 10/15/2024 | 5 |

## IHO EXHIBITS

| Exhibit | Title | Date | Pages |
|---------|-------|------|-------|
| I | 2024-2025 School Year Schedule | Undated | 1 |

Findings of Fact and Decision                                                                                           14
Case No. 277285

## APPENDIX

| Redacted Information | Term Used In FOFD |
|---|---|
| ████████ | Student |
| Crysal Crosley | Parent/Guardian |
| Erik Seidel | Parent Attorney/Representative |
| 75 | District Attorney /Representative |
| International Academy for the Brain ("iBRAIN") | Private School |
| | Public School |
| Sisters Travel and Transportation Services, LLC | Transportation Provider |
| 75 | District, DOE |
| Caleb Asomugha | Deputy Director of Special Education (iBRAIN) |