

# The University of the State of New York

## The State Education Department
### State Review Officer
www.sro.nysed.gov

No. 25-499

Application of a STUDENT WITH A DISABILITY, by her parent, for review of a determination of a hearing officer relating to the provision of educational services by the New York City Department of Education

**Appearances:**

Liberty & Freedom Legal Group, attorneys for petitioner, by Erin L. Brinkman, Esq.

Liz Vladeck, General Counsel, attorneys for respondent, by Nicole Daley, Esq.

## DECISION

## I. Introduction

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioner (the parent) appeals from those parts of a decision of an impartial hearing officer (IHO) which denied the parent's request for direct funding of the cost of the student's private transportation services to the International Academy for the Brain (iBrain) for the 2024-25 school year, and which denied the parent's request for funding for an independent educational evaluation (IEE). The district cross-appeals from the IHO's pendency determination and from the IHO's determinations on equitable considerations. The appeal must be sustained in part. The cross-appeal must be dismissed.

## II. Overview—Administrative Procedures

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on Special Education (CSE) that includes, but is not limited to, parents, teachers, a school psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C.

§§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[*l*]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2], 300.507[a][1]). First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8 NYCRR 200.5[j]). An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR 200.5[j][3][v], [vii], [xii]). The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process (34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]). A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]). The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8 NYCRR 200.5[k]). The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4). The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5). The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]). The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

2

## III. Facts and Procedural History

The student has been unilaterally enrolled at iBrain since at least April 2021 (Parent Ex. P ¶ 12).[1, 2] The student's physician determined that the student met the criteria for a diagnosis of cerebral palsy and a developmental delay (Parent Ex. J at pp. 3, 6, 7).[3] The student has a wheelchair that she can operate herself with supervision, she requires assistance for all activities of daily living (ADLs), and requires support throughout the day at school for all functional activities (Dist. Exs. 2 at p. 4; 7 at pp. 7, 9).[4] The student is mostly non-verbal and uses a total communication approach to communicate that includes facial expressions, gestures, one- to two-word verbal approximations, high-tech augmentative and alternative communication (AAC), and, on rare occasions, sign language (Dist. Ex. 7 at p. 4).

On January 24, 2024, an IHO in a prior matter (prior IHO) issued a decision which found that the district failed to provide the student with a free appropriate public education (FAPE) for the 2023-24 school year (Parent Ex. D at pp. 5-6). The prior IHO found that the student's educational placement and transportation were being provided by iBrain during that period and that the parent met her burden of establishing that the unilateral placement was addressing the student's unique educational needs (id. at pp. 6-7).[5] The prior IHO ordered the district to reimburse the parent for any payments already made to iBrain for the 2023-24 school year, including for the related services and special transportation received, and ordered the district to make the remainder of the payments directly to the school for the cost of that year's tuition, related services, and transportation (id. at pp. 7, 9).[6] The January 2024 IHO decision was not appealed.

---

[1] The hearing record contains conflicting information regarding when the student began attending iBrain. The student's social history update conducted on April 29, 2024, reflects that the student had attended iBrain from 2019 through the date of that report (Dist. Ex. 2 at p. 5). The June 20, 2024 IEP indicates that the student began attending in 2020 (Dist. Ex. 7 at p. 4). In an affidavit in lieu of direct testimony, the deputy director of iBrain testified that the student had attended iBrain since April 2021 (Parent Ex. P at ¶ 12). The July 2, 2024 due process complaint notice also states that the student began attending iBrain in April 2021 (Parent Ex. A at p. 4).

[2] iBrain has not been approved by the Commissioner of Education as a school with which districts may contract to instruct students with disabilities (see 8 NYCRR 200.1[d], 200.7).

[3] The hearing record indicates that the student has received additional diagnoses including traumatic brain injury, hydrocephalus, ataxia, and dysphagia; however, the source of these diagnoses is unknown (see Parent Ex. H at p. 38; Dist. Exs. 2 at p. 2; 9 at p. 4; 15 at p. 9; 16 at p. 4).

[4] The student is also able to walk using a walker, with supervision (Dist. Ex. 2 at p. 2).

[5] The January 24, 2024 IHO decision noted that the student's transportation services provided by the transportation company associated with iBrain, included the use of a paraprofessional, air-conditioning, a lift bus with wheelchair accessibility, and limited travel time of no more than 90 minutes (Parent Ex. D at p. 6).

[6] The January 24, 2024 IHO decision noted that the district had argued that the cost of the student's tuition at iBrain, related services, and transportation were excessive and that iBrain had engaged in improprieties including collusion with the transportation company, but had offered no evidence to support its position (Parent Ex. D at pp. 2-3, 7).

In an email dated April 14, 2024, and letter dated April 18, 2024, the district notified the parent that a CSE was scheduled to meet on May 15, 2024, to conduct the student's annual review and develop an updated IEP for the student (Dist. Ex. 3 at p. 3, see Dist. Ex. 1).

On April 29, 2024, a district school social worker interviewed the parent as part of a social history update for the student's annual review (Dist. Ex. 2 at pp. 1, 3, 6).

By email sent on May 14, 2024, the parent's counsel informed the district that the parent was not able to attend the May 15, 2024 CSE meeting, and asked to reschedule the meeting (Dist. Ex. 4 at p. 2). The district responded by email on May 17, 2024, and notified the parent that the CSE meeting had been rescheduled for June 13, 2024 (Dist. Ex. 3 at p. 1). By letter dated May 17, 2024, the district confirmed that a CSE meeting had been scheduled for June 13, 2024, to conduct the student's annual review (Dist. Ex. 5 at p. 1).

A CSE convened on June 13, 2024, continued to find the student eligible for special education as a student with a traumatic brain injury, and developed an IEP with a projected implementation date of June 20, 2024 (Dist. Ex. 7 at pp. 1, 33-34, 43). The June 2024 CSE recommended that the student receive 12-month services consisting of 35 periods per week of an 8:1+1 special class; three periods per week of adapted physical education; five 60-minute sessions per week of individual occupational therapy (OT); five 60-minute sessions per week of individual physical therapy (PT); four 60-minute sessions per week of individual speech-language therapy; one 60-minute session per week of speech-language therapy in a group; a daily, full time health paraprofessional for ambulation, feeding and safety; a dynamic speech generating device; and one 60-minute session per week of assistive technology services (id. at pp. 32-34, 39, 40-41). The June 2024 CSE also recommended special transportation services consisting of transportation from the closest safe curb location to school, a 1:1 paraprofessional, lift bus, oversize wheelchair accommodation, limited travel time, and door-to-door accommodation (id. at pp. 38-39). The June 2024 CSE also recommended that the parent receive one 60-minute session per month of parent counseling and training (id. at pp. 33, 40). The CSE recommended that the student receive the recommended programming in a State-approved nonpublic school but, until such nonpublic school was identified, recommended that the student attend a district specialized school (id. at pp. 33, 39, 42).

In a 10-day notice letter dated June 17, 2024, the parent asserted that the district failed to offer the student a free appropriate public education (FAPE) for the 12-month, 2024-25 school year and advised the district of her intention to unilaterally enroll the student at iBrain and seek public funding for the cost of the student's attendance (Parent Ex. B at pp. 1-2). The parent also purported to invoke the student's right to pendency (id. at p. 1).

On June 18, 2024, the parent signed a contract with Sisters Travel and Transportation Services, LLC (Sisters Travel), to provide special transportation services for the student to and from iBrain for the 12-month, 2024-25 school year (Parent Ex. G at pp. 1, 7). On June 21, 2024, the parent signed an enrollment contract with iBrain for the 12-month, 2024-25 school year (Parent Ex. F).

4

## A. Due Process Complaint Notice

In a due process complaint notice dated July 2, 2024, the parent alleged that the district denied the student a FAPE for the 2024-25 school year (see Parent Ex. A). In particular, the parent alleged that the district failed to offer an adequate IEP that was specifically tailored to meet the student's needs, failed to offer appropriate related services, and failed to provide an adequate school placement insofar as it had not provided the student with a prior written notice or school location letter for that school year (id. at pp. 7-8). The parent further asserted that the district had failed to recommend adequate transportation services with appropriate "porter services" and air conditioning (id. at p. 9). The parent claimed that the district had denied her meaningful participation in the CSE process by failing to notify her of the particular school location to which the district assigned the student to attend prior to the start of the 2024-25 school year, thereby impeding the parent's ability to investigate the "proposed educational program and placement" (id.).

The parent also alleged that the district failed to evaluate the student in all areas of suspected disability (Parent Ex. A at p. 8). The parent more specifically alleged that the district failed to conduct updated psychoeducational or neuropsychological testing and failed to conduct updated evaluations in the areas of OT, PT, and speech-language therapy prior to the commencement of the 2024-25 school year (id.). The parent also alleged that the district had failed to conduct a psychological assessment of the student within the three years prior to the June 2024 IEP meeting, failed to provide a written report indicating the reason why that assessment would not be needed, and failed to assess the student's specific educational needs in the preceding six months (id.). The parent therefore stated she disagreed with the district's evaluations, "or lack thereof," and requested an order directing the district to fund an independent neuropsychological evaluation, to be conducted by a qualified provider of the parent's choosing at a reasonable market rate (id. at pp. 8-9).

The parent requested an interim order of pendency, asking that the district be ordered to fund the cost of tuition and services at iBrain for the 2024-25 school year as well as funding for transportation services to be paid pursuant to the transportation contract between the parent and Sisters Travel (Parent Ex. A at pp. 2, 10; see generally Parent Exs. F; G). For relief, the parent requested that the district be required to fund the student's tuition at iBrain for the 12-month, 2024-25 school year, including the cost of related services and a 1:1 paraprofessional, and fund the student's special education transportation services provided by Sisters Travel (Parent Ex. A at p. 10). The parent also requested that the district be required to reconvene the CSE to make changes to the IEP if necessary (id.). Finally, the parent sought district funding for the costs of an independent neuropsychological evaluation (id.).

## B. Events Post-Dating the Due Process Complaint Notice

In a prior written notice dated July 3, 2024, the district summarized the recommendations of the June 2024 CSE (Dist. Ex. 9 at pp. 1-15).

In correspondence dated July 11, 2024, the district advised the parent that, subject to certain conditions, it was prepared to transport the student to and from iBrain beginning on July 1, 2024 with accommodations set forth in the student's IEP (Dist. Ex. 18).

5

On July 19, 2024, the district sent the parent a notice that a State-approved nonpublic school had accepted the student subject to certain changes to the IEP and that the CSE would review such changes (Dist. Ex. 11). By notice dated July 25, 2024, the parent was invited to attend a CSE meeting scheduled for July 29, 2024 (Dist. Ex. 12). By letter dated July 31, 2024, the district notified the parent that this meeting had been rescheduled to August 7, 2024 (Dist. Ex. 13 at pp. 1-3).

A CSE convened on August 7, 2024, continued to find the student eligible for special education as a student with a traumatic brain injury, and developed an IEP with a projected implementation date of September 9, 2024 (Dist. Ex. 15 at pp. 1, 32-33, 38, 39, 42). The August 2024 CSE recommended that the student receive 12-month services consisting of 35 periods per week of a 12:1+4 special class in a State-approved nonpublic day school; three periods per week of adapted physical education; five 30-minute sessions per week of individual OT; five 30-minute sessions per week of individual PT; five 30-minute sessions per week of individual speech-language therapy; a daily, full time health paraprofessional for ambulation, feeding, and safety; a dynamic speech generating device; and one 60-minute session per week of assistive technology services (id. at pp. 32-34, 38-39). The August 2024 CSE also recommended special transportation services consisting of transportation from the closest safe curb location to school, a 1:1 paraprofessional, lift bus, oversize wheelchair accommodation, limited travel time, and door-to-door accommodation (id. at p. 38). The August 2024 CSE also recommended that the parent receive one 60-minute session per month of parent counseling and training (id. at p. 32). By prior written notice dated August 14, 2024, the district summarized the recommendations of the August 2024 CSE (Dist. Ex. 16 at pp. 1-9).

In a letter addressed to the parent's counsel, dated August 29, 2024, the district stated that it was aware that a due process complaint notice had been filed and that the parent sought funding for private transportation services as part of the student's pendency entitlement (Dist. Ex. 19). The district further stated that it was prepared "to implement pendency transportation" to and from iBrain for the 2024-25 school year (id.).

## C. Impartial Hearing Officer Decision

An impartial hearing convened before an IHO with the Office of Administrative Trials and Hearings (OATH) on November 21, 2024, and concluded on April 10, 2025, after three days of proceedings (Tr. pp. 1-213).[7] In a decision dated June 27, 2025, the IHO first determined that the basis for the student's pendency services was the unappealed January 24, 2024 IHO decision (IHO Decision at p. 6; see Parent Ex. D). As pendency, the IHO stated that the student was entitled to district funding of iBrain tuition and special transportation (IHO Decision at p. 6).

Next, the IHO found that the district failed to meet its burden to show that it offered the student a FAPE for the 12-month, 2024-25 school year (IHO Decision at p. 6). Specifically, the IHO found that the district did not provide a timely school location letter or provide a witness from

---

[7] The IHO held a prehearing conference with the parties on September 5, 2024 (Sept. 5, 2024 Tr. pp. 1-25). The transcripts for the impartial hearing were not consecutively paginated with the prehearing conference (Sept. 5, 2024 Tr. pp. 1-25). To the extent it is necessary to cite to the prehearing conference, the transcript will be cited by date and corresponding page number.

6

the assigned school site to demonstrate that the school site was accessible for the student and able to implement the IEP (id. at pp. 6-7). After briefly summarizing the programming, classroom structure, and related services received by the student at iBrain, the IHO determined that the parent met her burden to demonstrate that iBrain was an appropriate unilateral placement that addressed the student's individual special education needs and was reasonably calculated to enable the student to receive educational benefits (id. at p. 8).

The IHO then found that equitable considerations did not warrant a reduction in the amount of tuition funding sought by the parent (IHO Decision at pp. 8-9). The IHO determined that the parent provided the district with a timely 10-day notice describing her disagreement with the CSE's recommendations and advised the district of her intent to unilaterally enroll the student at iBrain and seek public funding for the cost of the student's attendance (id. at p. 9). The IHO noted that the district did not submit any evidence during the impartial hearing that it responded to the parent's 10-day notice and she further stated that the cost of the student's attendance at iBrain was not unreasonable (id.).

However, the IHO separately addressed the parent's request for transportation funding and found that the parent's claim that the district failed to offer appropriate transportation accommodations for the student was without merit (IHO Decision at p. 9). The IHO found that the district had demonstrated that it attempted to work with the parent to secure transportation for the student for the 2024-25 school year, and drew a negative inference from the parent's decision to not appear and provide testimony at the hearing to address why she chose not to work with the district to secure transportation and chose instead to have transportation services provided by Sisters Travel (id.). The IHO also faulted the parent for not appearing to provide testimony addressing why the transportation services provided by Sisters Travel appropriately addressed the student's needs in accordance with the recommendations made in the IEP, and what the credentials were for the people providing those transportation services (id.). Based on these "deficits in the record" the IHO found that an award for the student's special transportation services was "unreasonable and not compensable" (id.).

Lastly the IHO addressed the parent's request for funding for an independent neuropsychological evaluation (IHO Decision at pp. 9-10). The IHO found that the district had "defended the evaluations they conducted and the information they used to develop the student's IEP" and credited the district representative's testimony that the district "had all the evaluations required" including an up-to-date neuropsychological or psychoeducational evaluation (id. at p. 10). The IHO faulted the parent for raising her request for an independent evaluation for the first time in her due process complaint notice, and for "choosing not to testify" to address the basis of her disagreement with the district's evaluations or to clarify which evaluations she was disputing or why an award of an independent neuropsychological evaluation would be appropriate (id.).

As relief, the IHO ordered the district to fund "via pendency," beginning on July 2, 2024 through the date of her decision, payment for the student's attendance at iBrain, including related services, and payment for transportation expenses provided by the parent's chosen transportation provider (IHO Decision at p. 10). On the merits, the IHO further awarded the parent direct funding for the cost of the student's attendance at iBrain for the 12-month, 2024-25 school year in the amount of $323,791.20 (id.).

7

## IV. Appeal for State-Level Review

The parent appeals and alleges that the IHO erred in denying the parent's request for funding for transportation services and for an independent neuropsychological evaluation. As a preliminary matter, the parent requests that the IHO's determinations that the district denied the student a FAPE for the 2024-25 school year, that iBrain was an appropriate placement, and that equitable considerations supported the parent's claim for direct tuition funding and tuition reimbursement be affirmed.

The parent argues that the IHO's denial of her request for funding for the student's special transportation services was in error. The parent alleges that the district had the burden to demonstrate that it offered or provided appropriate transportation as part of its provision of FAPE. The parent alleges that the district's transportation plan did not adequately address the student's safety needs given her medical requirements, including the need for air conditioning and limited travel time. The parent argues that the IHO erred in finding that the parent did not provide sufficient evidence regarding the student's transportation services.[8]

The parent further argues that the IHO erred in denying the parent's request for an independent neuropsychological evaluation. The parent argues that she participated in the CSE meeting, disagreed with the CSE's recommendations, and thereafter provided a timely 10-day notice indicating those disagreements. The parent alleges that the district did not respond to her concerns in a timely manner. The parent argues that there is no evidence in the hearing record that she refused or failed to consent to evaluations or otherwise cooperate with the CSE. Lastly, the parent alleges that the district failed to conduct updated psychoeducational or neuropsychological testing prior to the 2024-25 school year.

In an answer and cross appeal, the district argues that the cost of the student's program at iBrain had increased so substantially that it should no longer be considered the student's pendency program. The district argues that the IDEA did not create a right to allow pendency to result in an automatic injunctive procedure that would frustrate the fiscal policies of the State. The district further argues that, when a parent moves a student to a different school, resulting in the cost of providing the same services in that school being substantially higher, that it can disrupt the student's pendency placement. The district argues that nothing has changed regarding the student's placement or services, and so iBrain's increased tuition of $323,791.20 is not reasonable, nor is the $147,403.00 cost for transportation services. The district argues that, allowing iBrain to increase its rates without limitation during the course of a student's pendency, grants it a "blank check" and that a significant change in cost should be deemed a change in the student's pendency placement.

The district also argues that equitable considerations do not support the parent's claims for relief. The district alleges that the timing of the parent's signing of enrollment contracts with iBrain and Sisters Travel indicate that the parent did not seriously consider the district's offered educational program. The district alleges that the parent acted in bad faith by committing to significant payments for the transportation services one day after serving the district with her 10-

---

[8] The parent notes that the iBrain education plan specifically recommended transportation services and that the parent entered into the transportation agreement, arguing this reflects that that the student received those services (see Parent Exs. B, G).

day notice, in a transportation services contract that identified iBrain as the student's school, without the option to terminate that contract if the district offered the student an appropriate placement and while still communicating to the district that they were open to a district placement. The district alleges that the parent did not raise transportation issues during the June 2024 CSE meeting and did not mention any issues with transportation or evaluations in her 10-day notice.

Lastly, the district requests that, if the SRO finds that the district is required to fund the student's transportation, it be permitted "to provide" those transportation services to and from iBrain, alleging that the district is able to do so.

## V. Applicable Standards

Two purposes of the IDEA (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 [2009]; Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 [1982]).

A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151, 160 [2d Cir. 2014]; R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189-90 [2d Cir. 2012]; M.H. v. New York City Dep't of Educ., 685 F.3d 217, 245 [2d Cir. 2012]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). "'[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP'" (Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 [2d Cir. 1998], quoting Rowley, 458 U.S. at 206; see T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 253 [2d Cir. 2009]). The Supreme Court has indicated that "[t]he IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for pursuing academic and functional advancement" (Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. 386, 399 [2017]). While the Second Circuit has emphasized that school districts must comply with the checklist of procedures for developing a student's IEP and indicated that "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not" (R.E., 694 F.3d at 190-91), the Court has also explained that not all procedural errors render an IEP legally inadequate under the IDEA (M.H., 685 F.3d at 245; A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 [2d Cir. 2009]; Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]). Under the IDEA, if procedural violations are alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]; Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 [2007]; R.E., 694 F.3d at 190; M.H., 685 F.3d at 245).

9

The IDEA directs that, in general, an IHO's decision must be made on substantive grounds based on a determination of whether the student received a FAPE (20 U.S.C. § 1415[f][3][E][i]). A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" (Rowley, 458 U.S. at 203). However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP" (Walczak, 142 F.3d at 130; see Rowley, 458 U.S. at 189). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created" (Endrew F., 580 U.S. at 404). The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents" (Walczak, 142 F.3d at 132, quoting Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [citations omitted]; see Grim, 346 F.3d at 379). Additionally, school districts are not required to "maximize" the potential of students with disabilities (Rowley, 458 U.S. at 189, 199; Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132). Nonetheless, a school district must provide "an IEP that is 'likely to produce progress, not regression,' and . . . affords the student with an opportunity greater than mere 'trivial advancement'" (Cerra, 427 F.3d at 195, quoting Walczak, 142 F.3d at 130 [citations omitted]; see T.P., 554 F.3d at 254; P. v. Newington Bd. of Educ., 546 F.3d 111, 118-19 [2d Cir. 2008]). The IEP must be "reasonably calculated to provide some 'meaningful' benefit" (Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]; see Endrew F., 580 U.S. at 403 [holding that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"]; Rowley, 458 U.S. at 192). The student's recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. § 1412[a][5][A]; 34 CFR 300.114[a][2][i], 300.116[a][2]; 8 NYCRR 200.1[cc], 200.6[a][1]; see Newington, 546 F.3d at 114; Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 [2d Cir. 2007]; Walczak, 142 F.3d at 132).

An appropriate educational program begins with an IEP that includes a statement of the student's present levels of academic achievement and functional performance (see 34 CFR 300.320[a][1]; 8 NYCRR 200.4[d][2][i]), establishes annual goals designed to meet the student's needs resulting from the student's disability and enable him or her to make progress in the general education curriculum (see 34 CFR 300.320[a][2][i], [2][i][A]; 8 NYCRR 200.4[d][2][iii]), and provides for the use of appropriate special education services (see 34 CFR 300.320[a][4]; 8 NYCRR 200.4[d][2][v]).[9]

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 [1985]; R.E., 694 F.3d at 184-85; T.P., 554 F.3d at 252). In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (471 U.S. at 370-71; see Gagliardo, 489 F.3d at 111; Cerra, 427

---

[9] The Supreme Court has stated that even if it is unreasonable to expect a student to attend a regular education setting and achieve on grade level, the educational program set forth in the student's IEP "must be appropriately ambitious in light of his [or her] circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but every child should have the chance to meet challenging objectives" (Endrew F., 580 U.S. at 402).

10

F.3d at 192). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it offered the student a FAPE (Burlington, 471 U.S. at 370-71; see 20 U.S.C. § 1412[a][10][C][ii]; 34 CFR 300.148).

The burden of proof is on the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement (Educ. Law § 4404[1][c]; see R.E., 694 F.3d at 184-85).

## VI. Discussion

### A. Scope of Review

The district has not cross-appealed from the IHO's findings that it failed to offer the student a FAPE for the 12-month, 2024-25 school year, or that iBrain was an appropriate unilateral placement for the student for the 12-month, 2024-25 school year (IHO Decision at pp. 6-8, 10). Further, neither party has appealed the IHO's determination that the student's pendency placement lay in the unappealed January 24, 2024 IHO decision (id. at pp. 5-6, 10). Accordingly, these findings have become final and binding on the parties and will not be reviewed on appeal (34 CFR 300.514[a]; 8 NYCRR 200.5[j][5][v]; see M.Z. v. New York City Dep't of Educ., 2013 WL 1314992, at *6-*7, *10 [S.D.N.Y. Mar. 21, 2013]).

### B. Pendency

The IDEA and the New York State Education Law require that a student remain in his or her then current educational placement, unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the student (20 U.S.C. § 1415[j]; Educ. Law §§ 4404[4]; 34 CFR 300.518[a]; 8 NYCRR 200.5[m]; see Ventura de Paulino v. New York City Dep't of Educ., 959 F.3d 519, 531 [2d Cir. 2020]; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 170-71 [2d Cir. 2014]; Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist., 386 F.3d 158, 163 [2d Cir. 2004], citing Zvi D. v. Ambach, 694 F.2d 904, 906 [2d Cir. 1982]; M.G. v. New York City Dep't of Educ., 982 F. Supp. 2d 240, 246-47 [S.D.N.Y. 2013]; Student X v. New York City Dep't of Educ., 2008 WL 4890440, at *20 [E.D.N.Y. Oct. 30, 2008]; Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea, 353 F. Supp. 2d 449, 455-56 [S.D.N.Y. 2005]).[10] Pendency has the effect of an automatic injunction, and the party requesting it need not meet the requirements for injunctive relief such as irreparable harm, likelihood of success on the merits, and a balancing of the hardships (Zvi D., 694 F.2d at 906; see Wagner v. Bd. of Educ. of Montgomery County, 335 F.3d 297, 301 [4th Cir. 2003]; Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 [3d Cir. 1996]). The purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability and "strip schools of the unilateral authority they had traditionally employed to exclude disabled students . . . from school" (Honig v. Doe, 484 U.S. 305, 323 [1987] [emphasis in original]; Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist., 921 F. Supp. 1184, 1187 [S.D.N.Y. 1996], citing Bd. of Educ. of City of New York v. Ambach, 612 F. Supp. 230, 233 [E.D.N.Y. 1985]). A student's placement pursuant

---

[10] In Ventura de Paulino, the Court concluded that parents may not transfer a student from one nonpublic school to another nonpublic school and simultaneously transfer a district's obligation to fund that pendency placement based upon a substantial similarity analysis (see 959 F.3d at 532-36).

11

to the pendency provision of the IDEA is evaluated independently from the appropriateness of the program offered the student by the CSE (Mackey, 386 F.3d at 160-61; Zvi D., 694 F.2d at 906; O'Shea, 353 F. Supp. 2d at 459 [noting that "pendency placement and appropriate placement are separate and distinct concepts"]). The pendency provision does not require that a student remain in a particular site or location (Ventura de Paulino, 959 F.3d at 532; T.M., 752 F.3d at 170-71; Concerned Parents & Citizens for the Continuing Educ. at Malcolm X Pub. Sch. 79 v. New York City Bd. of Educ., 629 F.2d 751, 753, 756 [2d Cir. 1980]; see Child's Status During Proceedings, 71 Fed. Reg. 46,709 [Aug. 14, 2006] [noting that the "current placement is generally not considered to be location-specific"]), or at a particular grade level (Application of a Child with a Disability, Appeal No. 03-032; Application of a Child with a Disability, Appeal No. 95-16).

As noted, neither party challenges the IHO's finding that the student's pendency services were based on an unappealed January 24, 2024 IHO decision (see generally Parent Ex. D). However, the district argues that the change in the cost of the student's tuition from the prior school year to the 2024-25 school year at issue with "no . . . explanation for that increase in cost" affected a change in placement (Tr. p. 101; Answer & Cr.-Appeal ¶¶ 10-12).[11]

It is possible that a dramatically different cost or fee structure for a nonpublic school's tuition may constitute a change in the student's placement (C.S. v. New York City Dep't of Educ., 2025 WL 3224989, at *8 [S.D.N.Y. Nov. 19, 2025] [finding that parents cannot unilaterally modify pendency and that "significant increases in the cost of tuition" constitute changes in pendency even when the children remain in the same school]; see Ventura de Paulino, 959 F.3d at 533-35). As the district argues, if deemed otherwise, pendency could be "turn[ed] . . . into a blank check for unilateral placements." With respect to the same nonpublic school at issue here, at least one district court has remarked that "the [district] raise[d] legitimate concerns about waste, fraud, and abuse if parents and providers believe ex ante that the [district] will pay no matter what" (Davis v. Banks, 2023 WL 5917659, at *5 [S.D.N.Y. Sept. 11, 2023]).

The district cites the January 2024 IHO decision, which stated that the student's iBrain tuition and transportation costs totaled $417,000.00 for the 2023-24 extended school year (see Parent Ex. D at p. 2). The district contrasts this with the costs for the student's programming for the 2024-25 extended school year, which totaled $471,194.20, consisting of $323,791.20 for iBrain tuition and $147,403.00 in transportation costs (see Parent Exs. F ¶ 7; G at p. 2). This represents approximately a 13 percent increase in costs. Without more information about the change, it is not clear that this amounts to a "significant increase[]" such that it would be deemed a change in pendency (C.S., 2025 WL 3224989, at *3, *8 [finding that a school's shift from tuition-based

---

[11] During the prehearing conference, the district's attorney indicated that the district was challenging "the change in costs for the program," arguing that it was "a question of fact whether the program [wa]s the same at the school and if that's the reason for the cost increase or whether it's a different reason" (Sept. 5, 2024 Tr. p. 4). According to the January 2024 IHO decision, the student attended an 8:1+1 special class and received "several related services" and "the services of a 1:1 paraprofessional" and "special transportation services to and from school," including support of a 1:1 paraprofessional (Parent Ex. D at p. 6). The iBrain education plan for the student for the 2024-25 school year reflected that the student was to continue in an 8:1+1 special class with related services and support of a 1:1 paraprofessional and special transportation services (Parent Ex. H at pp. 61-64). The iBrain director of special education testified that "to [his] knowledge" all of the student's providers were the same between the two school years (Tr. p. 130).

program to a fee-for-services program resulted in a significant increase in costs from $172,300 to $340,727 per year (i.e., approximately a 98 percent increase in costs)]).[12]

Given the underdeveloped state of the hearing record with regard to the district's argument as to the increased costs of the student's program at iBrain, there is no basis to find that the student's program at iBrain with transportation for the 2024-25 school year constituted a significant increase in cost amounting to a change in placement.

With respect to transportation, there is no dispute that the January 2024 unappealed IHO decision, which formed the basis for pendency, ordered the district to fund the student's transportation services "pursuant to the terms of the parent's . . . transportation agreement" and that the IHO in this matter ordered the district to "fund" the student's pendency (IHO Decision at p. 10; Parent Ex. D at p. 9). To the extent the district claims that it, nevertheless, should be permitted to provide the pendency transportation, it has not directly appealed the IHO's order for it to "fund" rather than provide the services (see M.W. v. New York City Dep't of Educ., 2026 WL 504593, at *5 [S.D.N.Y. Feb. 24, 2026] [discussing implications of language in pendency orders that a district "fund" versus to "provide" services]; see also J.Z. v. New York City Dep't of Educ., 2024 WL 1833613, at *6 [S.D.N.Y. Apr. 26, 2024] [noting that a pendency order required the district to fund a particular service, and did not include language requiring the district "to provide it directly upon the parent's request"]; but see Chaperon v. Banks, 2025 WL 2207908, at *10 [S.D.N.Y. Aug. 4, 2025] [indicating that a district is "entitled to provide equivalent transportation services" to a student for purposes of pendency, but, in such a case, the evidence must show that the district "was capable of providing equivalent transportation services . . . , and that such services were in fact offered to the student by [the district] and turned down"]).[13] In its cross-appeal, although the

---

[12] I note that the iBrain director of special education testified that he was not familiar with the cost of the tuition at iBrain or why the tuition increased from the 2023-24 to the 2024-25 school years (Tr. pp. 127-28). The district did not attempt to subpoena iBrain or Sisters Travel to ascertain the reasons for the cost increase. Thus, the hearing record is not developed regarding the reasons for the cost increase.

[13] Given the district's failure to appeal this point, I will not attempt to reconcile the authorities which distinguish a district's obligation to fund or provide pendency services with authority indicating that the district may be able to provide pendency services "equivalent" to those it was required to fund, or whether a district may exercise such a right to provide pendency after the parent already arranged for the unilateral placement to continue consistent with the student's pendency entitlements (i.e., in this instance the district did not offer transportation services until after the parent entered a contract with Sisters Travel). For that matter, given that the parties do not challenge the student's underlying pendency placement, the remaining issues seem more akin to an enforcement dispute, and, in fact, it appears that the parent has pursued a federal civil action along with the parents of several other iBrain students for that purpose at least for the 2025-26 school year (see 25-CV-05679 [S.D.N.Y., filed July 9, 2025). Neither IHOs nor SROs have authority to enforce prior decisions rendered by administrative hearing officers (see Educ. Law §§ 4404[1][a]; [2]; see, e.g., A.R. v. New York City Dep't of Educ., 407 F.3d 65, 76, 78 n.13 [noting that IHOs do not retain jurisdiction to enforce their orders and that a party who receives a favorable administrative determination may enforce it in court]; A.T. v. New York State Educ. Dep't, 1998 WL 765371, at *7, *9-*10 & n.16 [E.D.N.Y. Aug. 4, 1998] [noting that SROs have no independent "administrative enforcement" power and granting an injunction requiring the district to implement a final SRO decision]). Accordingly, to the extent that the parties dispute relates to enforcement of the IHO's determination that the student was entitled to district funding of transportation provided by Sisters Travel, such claims are outside the jurisdiction of this administrative process and may be pursued through the judicial system (see SJB v. New York City Dep't of Educ., 2004 WL 1586500, at *4-*5 [S.D.N.Y. July 14, 2004] [finding that parties need not initiate additional administrative proceedings to enforce prior administrative orders]).

district references Ventura de Paulino, 959 F.3d 519, 535, and the district's "preexisting and independent authority to determine how to deliver the most recently agreed-upon program," it does so under a heading pertaining to equitable considerations and goes on to argue the merits of the CSE's transportation recommendations for the student, presumably to support its claim that the parent acted unreasonably in arranging for transportation by Sisters Travel, which is a consideration unrelated to the student's pendency placement (Answer ¶ 17). The district fails to articulate a coherent position with respect to its right to deliver the student's pendency transportation services, and it is not this SRO's role to research and construct the appealing party's arguments or guess what they may have intended (see, e.g., Gross v. Town of Cicero, 619 F.3d 697, 704 [7th Cir. 2010] [appellate review does not include researching and constructing the parties' arguments]; Fera v. Baldwin Borough, 2009 WL 3634098, at *3 [3rd Cir. Nov. 4, 2009] [a party on appeal should at least identify the factual issues in dispute]; Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 841 [10th Cir. 2005] [generalized assertion of error on appeal is not sufficient]; see generally Taylor v. American Chemistry Council, 576 F.3d 16, 32 n.16 [1st Cir. 2009]; L.I. v. Hawaii, 2011 WL 6002623, at *9 [D. Haw. Nov. 30, 2011]; Lance v. Adams, 2011 WL 1813061, at *2 [E.D. Cal. May 6, 2011] [the tribunal need not guess at the parties' intended claims]; Bill Salter Advertising, Inc. v. City of Brewton, 2007 WL 2409819, at *4 n.3 [S.D. Ala. Aug. 23, 2007]).

Accordingly, there is no basis to disturb the IHO's determination that the district is obligated to fund the costs of tuition and related services at iBrain, and the costs of transportation services delivered by the parent's chosen provider (IHO Decision at p. 10).

### C. Mootness

Typically the next issues to be addressed would be the parties' respective appeals related to equitable considerations. However, at this point in the proceeding those issues have been rendered moot.

A dispute between parties must at all stages be "real and live," and not "academic," or it risks becoming moot (Lillbask v. State of Conn. Dep't of Educ., 397 F.3d 77, 84 [2d Cir. 2005]; see Toth v. City of New York Dep't of Educ., 720 Fed. App'x 48, 51 [2d Cir. Jan. 2, 2018]; F.O. v. New York City Dep't of Educ., 899 F. Supp. 2d 251, 254 [S.D.N.Y. 2012]; Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist., 583 F. Supp. 2d 422, 428 [W.D.N.Y. 2008]; Student X, 2008 WL 4890440, at *12; J.N. v. Depew Union Free Sch. Dist., 2008 WL 4501940, at *3-*4 [W.D.N.Y. Sept. 30, 2008]; see also Coleman v. Daines, 19 N.Y.3d 1087, 1090 [2012]; Hearst Corp. v. Clyne, 50 N.Y.2d 707, 714 [1980]). In general, cases dealing with issues such as desired changes in IEPs, specific placements, and implementation disputes may become moot at the end of the school year because no meaningful relief can be granted (see, e.g., V.M. v. N. Colonie Cent. Sch. Dist., 954 F. Supp. 2d 102, 119-21 [N.D.N.Y. 2013]; M.S. v. New York City Dep't of Educ., 734 F. Supp. 2d 271, 280-81 [E.D.N.Y. 2010]; Patskin, 583 F. Supp. 2d at 428-29; J.N., 2008 WL 4501940, at *3-*4; but see A.A. v. Walled Lake Consol. Schs., 2017 WL 2591906, at *6-*9 [E.D. Mich. June 15, 2017] [considering the question of the "potential mootness of a claim for declaratory relief"]). Administrative decisions rendered in cases that concern such issues that arise out of school years since expired may no longer appropriately address the current needs of the student (see Daniel R.R. v. El Paso Indep. Sch. Dist., 874 F.2d 1036, 1040 [5th Cir. 1989]; Application of a Child with a Disability, Appeal No. 07-139; Application of the Bd. of Educ., Appeal No. 07-028; Application

14

of a Child with a Disability, Appeal No. 06-070; Application of a Child with a Disability, Appeal No. 04-007).

Here, in the July 2, 2024 due process complaint notice, as relief, the parent sought funding for the student's unilateral placement at iBrain, which consisted of full tuition for the 12-month, 2024-25 school year, the costs of related services, a 1:1 paraprofessional, and special transportation with limited travel time, paraprofessional, air conditioning, a lift bus, and accommodation for a regular-sized wheelchair, as per the transportation contract (Parent Ex. A at p. 10).

As discussed above, the district is required to fund the student's stay put placement from the date of the parent's July 2, 2024 due process complaint notice through the pendency of these proceedings in accordance with the IHO's decision dated June 27, 2025 (IHO Decision at pp. 5-6, 10). The student's pendency services were based on the unappealed January 2024 IHO decision and consisted of the district funding of the student's tuition, related services and transportation costs (id. at pp. 6, 10). The pendency of the proceedings have now encompassed the entirety of the 2024-25 school year at issue.

While a student is entitled to remain in his or her stay-put placement during the pendency of a proceeding, this statutory protection is similar to preliminary injunctive relief to protect the student while the proceedings are pending and is distinct from the ultimate relief available to a parent through the due process proceedings (20 U.S.C. § 1415 [j]; Educ. Law §§ 4404[4]; 34 CFR 300.518[a]; 8 NYCRR 200.5[m]; see Zvi D. v. Ambach, 694 F.2d 904, 906 [2d Cir. 1982]). However, in this instance, the student received services under pendency for the entirety of the 12-month, 2024-25 school year and the parent's due process complaint notice requested the same services for both pendency and the ultimate relief as part of the hearing (see Parent Ex. A at pp. 2, 10). Accordingly, regardless of the outcome of the parties' respective appeals of the IHO's determination regarding equitable considerations, the parent has received all of the relief she had sought in this proceeding and a review of whether the IHO correctly weighed such considerations has become moot.

On the other hand, a claim may not be moot despite the end of a school year for which the student's IEP was written, if the conduct complained of is "capable of repetition, yet evading review" (see Honig v. Doe, 484 U.S. 305, 318-23 [1988]; Scheff v. Banks, 2024 WL 3982986, at *4 [2d Cir. Aug. 29, 2024]; Toth, 720 Fed. App'x at 51; Lillbask, 397 F.3d at 84-85; Daniel R.R., 874 F.2d at 1040). The exception applies only in limited situations (City of Los Angeles v. Lyons, 461 U.S. 95, 109 [1983]), and is severely circumscribed (Knaust v. City of Kingston, 157 F.3d 86, 88 [2d Cir. 1998]). It must be apparent that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" (Murphy v. Hunt, 455 U.S. 478, 482 [1982]; see Knaust, 157 F.3d at 88). Many IEP disputes escape a finding of mootness due to the short duration of the school year facing the comparatively long litigation process (see Lillbask, 397 F.3d at 85). Controversies are "capable of repetition" when there is a reasonable expectation that the same complaining party would be subjected to the same action again (Weinstein v. Bradford, 423 U.S. 147, 149 [1975]; Toth, 720 Fed. App'x at 51; see Hearst Corp., 50 N.Y.2d at 714-15). To create a reasonable expectation of recurrence, repetition must be more than theoretically possible (Murphy, 455 U.S. at 482; Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet, 260 F.3d 114, 120 [2d Cir. 2001]). Mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or

15

demonstrated probability of recurrence (Scheff, 2024 WL 3982986, at *4; Russman, 260 F.3d at 120; but see A.A., 2017 WL 2591906, at *7-*9 [finding that the controversy as to "whether and to what extent the [s]tudent can be mainstreamed" constituted a "recurring controversy [that] will evade review during the effective period of each IEP for the [s]tudent"]; see also Toth, 720 Fed. App'x at 51 [finding that a new IEP that did not include the service requested by the parent established that the parent's concern that the prior IEP would be repeated was not speculative and the "capable of repetition, yet evading review" exception to the mootness doctrine applied]).

Some courts have taken a dim view of dismissing a Burlington/Carter reimbursement case as moot because all of the relief has been obtained through pendency (Cohen v. Aviles-Ramos, 2025 WL 3715102 [S.D.N.Y. Dec. 22, 2025]; New York City Dep't of Educ. v. S.A., 2012 WL 6028938, at *2 [S.D.N.Y. Dec. 4, 2012]; New York City Dep't of Educ. v. V.S., 2011 WL 3273922, at *9-*10 [E.D.N.Y. Jul. 29, 2011]), while others have found it an acceptable manner of addressing matters in which the relief has already been realized through pendency (see V.M., 954 F. Supp. 2d at 119-20 [explaining that claims seeking changes to the student's IEP/educational programing for school years that have since expired are moot, especially if updated evaluations may alter the scrutiny of the issue]; Thomas W. v. Hawaii, 2012 WL 6651884, at *1, *3 [D. Haw. Dec. 20, 2012] [holding that once a requested tuition reimbursement remedy has been funded pursuant to pendency, substantive issues regarding reimbursement become moot, without discussing the exception to the mootness doctrine]; F.O., 899 F. Supp. 2d at 254-55; M.R. v. S. Orangetown Cent. Sch. Dist., 2011 WL 6307563, at *9 [S.D.N.Y. Dec. 16, 2011]; M.S., 734 F. Supp. 2d at 280-81 [finding that the exception to the mootness doctrine did not apply to a tuition reimbursement case and that the issue of reimbursement for a particular school year "is not capable of repetition because each year a new determination is made based on [the student]'s continuing development, requiring a new assessment under the IDEA"]).

Review of the district court decision in V.S., shows that matter was determined not to be moot because a decision as to the adequacy of the proposed IEP in that matter would have supplanted the student's then-current pendency placement in that matter and established a new educational placement for the student (V.S., 2011 WL 3273922, at *10). However, in this matter, neither party has appealed from the IHO's determinations on the merits that the district failed to offer the student a FAPE for the 12-month, 2024-25 school year, and that iBrain was an appropriate unilateral placement (see IHO Decision at p. 23), and the IHO's determinations regarding equitable considerations, whether the reduction (i.e., omitting funding for transportation costs) be upheld or modified to further reduce an award, would not constitute a pendency changing event because it would not be in the parent's favor (see Letter to Hampden, 49 IDELR 197 [discussing the effect on pendency of a unappealed IHO decision in the parent's favor]; see also Mondano v. Banks, 2026 WL 32147, at *10 [S.D.N.Y. Jan. 5, 2026] [finding that an SRO decision that agrees with the district may not be treated as an agreement for purposes of pendency]). Accordingly, there can be no pendency changing determination in this proceeding and there is no further relief that could be addressed in this matter that is ongoing and further remediable.

Additionally, the capable of repetition yet evading review exception to mootness would not apply because the conduct complained of—the district's failure to offer the student a FAPE— is no longer at issue in this proceeding. Rather, the parties' dispute centers around whether the district should fund the unilateral placement consisting of enrollment at iBrain and transportation services the parent obtained as self-help to remedy the district's denial of a FAPE to the student,

16

with a focus on equitable considerations related to the parent's conduct. As the FAPE determination and appropriateness of the unilateral placement have already been addressed and the only issues in this matter relate to the weighing of equitable considerations, any parental concern that the district would continue to recommend the same program is not addressable at this level of the proceeding and cannot be used to justify a finding that the matter is "capable of repetition, yet evading review."

In addition, although it appears that the parent has pursued district funding of the unilateral placement for the student for the 2025-26 school year, the issues in that matter (which relate first to the district's offer of a FAPE for the 2025-26 school year) will not be affected by any determination on equitable considerations (i.e., as related to the parent's conduct which arose during the 2024-25 school year and during the impartial hearing) in this matter.[14] Even if the dispute here could be repeated, a determination in this matter would be of little consequence, as detailed procedural and substantive fact findings must be made regarding each disputed IEP, school year, or unilateral placement, and administrative hearing officers cannot rely on facts from one school year to make determinations about different school year (see J.R. v. New York City Dep't of Educ., 748 Fed. App'x 382, 386 [2d Cir. Sept. 27, 2018] [stating that "the [district's] funding of [the student's] schooling in other years is irrelevant: 'the adequacy vel non of an IEP . . . is to be judged on its own terms'" and that whether the district offered the student "an appropriate placement in other years 'makes no difference' to the question of whether the IEP provided a FAPE" in the school year at issue], quoting M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 67 [2d Cir. 2000]; but see Cohen v. Aviles-Ramos, 2025 WL 3715102, at *3 [S.D.N.Y. Dec. 22, 2025] [noting that the district in that matter did not present a reason to believe that a determination on funding for private transportation services would be subject to an annual reassessment]).

Based on the foregoing, the questions of whether equitable considerations favored relief, including review of the IHO's determination that equitable considerations did support the parent's request for funding of transportation services from Sisters Travel, are moot as there is no further relief that may be granted (see Beckford v. Aviles-Ramos, 2025 WL 2781539, at *4 [S.D.N.Y. Sept. 30, 2025] [finding parent's claim for tuition and related services was moot because defendant had already paid the tuition and related services expenses required by the IHO's decision, and noting that the 'hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed']). Further, the issues presented in this matter do not fit into the mootness exception as they are not capable of repetition yet evading review.[15]

---

[14] I note that an appeal involving the student's 2025-26 school year is currently pending with the Office of State Review.

[15] Notwithstanding my view that the issues are moot, I note that I would not have found that no equitable considerations warranted reduction or denial of relief. The parent provided timely 10-day notice dated June 17, 2024, and, despite the timing of the parent's contracts with iBrain and Sisters Travel, the Second Circuit Court of Appeals has explained that, so long as the parents cooperate with the district and do not impede the district's efforts to offer a FAPE, even if the parents had no intention of placing the student in the district's recommended program, their plan to unilaterally place a student, by itself, is not a basis to deny their request for tuition reimbursement (see E.M. v. New York City Dep't of Educ., 758 F.3d 442, 461 [2d Cir. 2014]; C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 840 [2d Cir. 2014] [holding that the parents' "pursuit of a private placement

### D. Independent Educational Evaluation

As a final matter, I turn to the parent's appeal of the IHO's determination that the parent was not entitled to district funding for an independent neuropsychological evaluation (IHO Decision at p. 10).

The IDEA and State and federal regulations guarantee parents the right to obtain an IEE (see 20 U.S.C. § 1415[b][1]; 34 CFR 300.502; 8 NYCRR 200.5[g]), which is defined by State regulation as "an individual evaluation of a student with a disability or a student thought to have a disability, conducted by a qualified examiner who is not employed by the public agency responsible for the education of the student" (8 NYCRR 200.1[z]; see 34 CFR 300.502[a][3][i]). Parents have the right to have an IEE conducted at public expense if the parent expresses disagreement with an evaluation conducted by the district and requests that an IEE be conducted at public expense (34 CFR 300.502[b]; 8 NYCRR 200.5[g][1]; see K.B. v Pearl Riv. Union Free Sch. Dist., 2012 WL 234392, at *5 [S.D.N.Y. Jan. 13, 2012] [noting that "a prerequisite for an IEE is a disagreement with a specific evaluation conducted by the district"]; R.L. v. Plainville Bd. of Educ., 363 F. Supp. 2d. 222, 234-35 [D. Conn. 2005] [finding parental failure to disagree with an evaluation obtained by a public agency defeated a parent's claim for an IEE at public expense]).

If a parent requests an IEE at public expense, the school district must, without unnecessary delay, either (1) ensure that an IEE is provided at public expense; or (2) initiate an impartial hearing to establish that its evaluation is appropriate or that the evaluation obtained by the parent does not meet the school district criteria (34 CFR 300.502[b][2][i]-[ii]; 8 NYCRR 200.5[g][1][iv]). If a school district's evaluation is determined to be appropriate by an IHO, the parent may still obtain an IEE, although not at public expense (34 CFR 300.502[b][3]; 8 NYCRR 200.5[g][1][v]). Additionally, both federal and State regulations provide that "[a] parent is entitled to only one [IEE] at public expense each time the public agency conducts an evaluation with which the parent disagrees" (34 CFR 300.502[b][5]; 8 NYCRR 200.5[g][1]). The Second Circuit Court of Appeals has recently found that, if a district and a parent agree that a student should be evaluated before the required triennial evaluation "the parent must disagree with any given evaluation before the child's next regularly scheduled evaluation occurs" or "[o]therwise, the parent's disagreement will be rendered irrelevant by the subsequent evaluation" (D.S. v. Trumbull Bd. of Educ., 975 F.3d 152, 170 [2d Cir. 2020]).

As noted above, in the due process complaint notice, the parent "disagree[d]" with the district's evaluations of the student, "or lack thereof" and requested that the district fund an independent neuropsychological evaluation (Parent Ex. A at pp. 8, 10). Recently, the District Court of the Southern District of New York found that a parent may commence an impartial hearing and request a district-funded IEE in a due process complaint notice in the first instance

---

was not a basis for denying their [request for] tuition reimbursement, even assuming . . . that the parents never intended to keep [the student] in public school"]). With respect to transportation, the district did not communicate its ability to provide transportation services for the student to travel to and from iBrain until July 11, 2024, and subsequently August 29, 2024, after the parent had already entered into a contract for transportation services with Sisters Travel and after the school year had started (compare Parent Ex. G, with Dist. Exs. 18-19). While, generally speaking, the IHO did not err in applying an adverse inference due to the parent's failure to appear to testify at the impartial hearing, her testimony would not have changed the outcome on this discrete issue.

and need not communicate with the school district or the CSE prior to seeking an impartial hearing regarding their request for such an IEE (Moonsammy v. Banks, 2024 WL 4277521, at *15-*17 [S.D.N.Y. Sept. 23, 2024]).[16] Taking into account the parent's request for an IEE in the due process complaint notice and given the recent district court authority permitting this practice, the district was required to defend its evaluation of the student.

The IHO determined that, during the impartial hearing, the district successfully defended the evaluations it conducted and the information the CSE used to develop the student's IEP (IHO Decision at p. 10). On appeal, the parent asserts that, "[a]s discussed' in her due process complaint notice, the district "failure to conduct updated psychoeducational or neuropsychological testing" prior to the 2024-25 school year (Req. for Rev. ¶ 30). While the parent does not directly challenge IHO's finding that the district had sufficient evaluative information available to it to develop an IEP, this is not determinative on the question of whether the district sufficiently defended its evaluation for purpose of assessing the student's right to an IEE at district expense.

On this point, the IHO relied on the testimony of the district representative that the CSE "had all the evaluations required, to develop the IEP, including an up to date neuropsychological or psychoeducational evaluation" (IHO Decision at p. 10).[17] However, the only evidence pointing to the district having conducted a neuropsychological or psychoeducational evaluation is the district representative's testimony that, when the CSE considers recommending a State-approved nonpublic school for the student, as it did in this instance, the district had "to have an assessment done within . . . three years" including "a psychoeducational and neuropsych[ological], a Vineland, [and] an updated social history" (Tr. p. 38; see Dist. Ex. 15). This general statement does not offer a definitive statement that the district conducted evaluations of the student in this matter but instead appears to describe the district's practice. For purposes of assessing the parent's request for an IEE, it was incumbent upon the district, at a minimum, to offer the results of the last evaluation of the student into evidence. Having failed to do so, I find that the district shall be required to fund an independent neuropsychological evaluation of the student subject to the district's criteria.

---

[16] Under 34 CFR 300.502(b)(2), it would appear that the district has only one option to forestall litigation on the issue, and that is to grant the IEE at public expense before the presentation of evidence begins in the due process hearing that was commenced by the parent. This is of little consequence so long as the district is in agreement with the parent to grant the IEE. However, with the burden of production and persuasion placed on school districts under State law, there is little incentive for a parent to use the resolution meeting with a school district. Strategically, it would almost always be more effective from a parent's perspective to force a district into defending itself in an impartial hearing as soon as possible on this issue. The district's second option under the regulation—to commence its own due process hearing "without unnecessary delay"—is illusory in cases where the parent has already initiated the proceeding by making the initial request for an IEE in their own due process complaint notice.

[17] The June and August 2024 prior written notices reflect that, in developing the student's June and August 2024 IEPs, the CSEs relied upon an April 2024 social history update (Dist. Exs. 9 at p. 4; 16 at p. 4; see Dist. Ex. 2). Additionally, the district representative testified that, in developing the student's IEP, the CSE used the student's prior IEP, data from the progress reports, iBrain's education plan for the student, and data from the providers that were "on the platform" (Tr. pp. 29-31; see Dist. Exs. 7; 8; 20). Other than the social history update, the documentary evidence in the hearing record includes no other reference to an evaluation conducted by the district.

19

## VII. Conclusion

Based on the foregoing, there is no basis to disturb the IHO's determination that the student's pendency placement included district funding of the student's iBrain tuition and the cost of transportation to be provided by Sisters Travel. Therefore, I find that it is unnecessary to review whether equitable considerations warrant a reduction in relief because the district has already funded all of the parent's requested relief related to the 2024-25 school year pursuant to pendency. However, contrary to the IHO's determination, I find that the parent is entitled to an IEE at district expense.

I have considered the parties' remaining contentions and find it is unnecessary to address them in light of my determinations above.

**THE APPEAL IS SUSTAINED TO THE EXTENT INDICATED.**

**THE CROSS-APPEAL IS DISMISSED.**

**IT IS ORDERED** that the IHO's decision, dated June 27, 2025, is modified by reversing that portion which denied the parent's request for an IEE at district expense; and

**IT IS FURTHER ORDERED** that the district shall fund an independent neuropsychological evaluation of the student, subject to the district's criteria.

Dated:        Albany, New York
              April 28, 2026

SARAH L. HARRINGTON
STATE REVIEW OFFICER

20