**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**          x

CRYSAL CROSLEY, individually and as Parent and
Natural Guardian of Z.C., a student with a disability

                                        Plaintiff,

-against-                                              No. 1:26-cv-03901

KAMAR H. SAMUELS, in his official capacity as
Chancellor of the New York City Department of
Education; NEW YORK CITY DEPARTMENT OF
EDUCATION; OFFICE OF ADMINISTRATIVE
TRIALS AND HEARINGS; VILDA VERA MAYUGA
in her official capacity as Commissioner and Chief
Administrative Law Judge of the Office of
Administrative Trials and Hearings; NOEL R. GARCIA
 in his official capacity as Deputy Commissioner of
OATH's Special Education Hearings Division; WILLIAM
STEWART, in his official capacity as Assistant
Commissioner of OATH's Special Education Hearings
Division; NEW YORK STATE EDUCATION
DEPARTMENT; OFFICE OF STATE REVIEW, as part
of the New York State Education Department; and
BETTY A. ROSA, in her official capacity as
Commissioner of Education of the State of New York,

                                        Defendants.

_____x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE
AND COMPEL COMPLIANCE WITH Z.C.'S STAY-PUT RIGHTS, SRO DECISION NO.
25-499, AND CONTINUING PENDENCY OBLIGATIONS, AND FOR AN ORDER TO
SHOW CAUSE WHY DOE SHOULD NOT BE HELD IN CONTEMPT**

Jeffrey Arlen Spinner, Esq.
*Attorneys for Plaintiff*
105 East 34th Street, Suite 190
New York, NY 10016
Tel. (646) 850-5035

jeff@pabilaw.org

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ...................................................................................................i

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT RECORD .......................................................................................................... 6

    A.    FOFD 250764 Established Z.C.'s Status Quo as a Matter of Law ............................. 6

    B.    DOE and OATH Converted 2024–2025 Pendency Into Delayed Merits Litigation ... 9

    C.    The June 27, 2025, FOFD Confirmed Plaintiff's Pendency Position, But Too Late. 10

LEGAL STANDARD............................................................................................................ 13

    A.    Stay-put is Automatic and Self-Executing.................................................................. 13

ARGUMENT ......................................................................................................................... 16

I.     FOFD 250764 ESTABLISHED Z.C.'S STATUS QUO AS A MATTER OF LAW, AND THE JULY 2024 DPC TRIGGERED DOE'S DUTY TO MAINTAIN IT.......... 16

    A.    FOFD 250764 Became Final and Binding When DOE Did Not Appeal .............. …16

        1.  The Ten-Day Notice Put DOE on Implementation Notice …………………………….…17

        2.  The July 2024 DPC Triggered DOE's Statutory Maintenance Obligation………...18

II.    SRO DECISION NO. 25-499 CONFIRMS AND ENFORCES DOE'S EXISTING OBLIGATION ...................................................................................................... 18

III.   THE COURT SHOULD SET A DEADLINE FOR IMPLEMENTATION .................. 20

    A.    DOE Must Maintain the Same Status Quo for 2025–2026........................................ 21

    B.    DOE May Not Grant Itself a Stay of § 1415's Automatic Injunction; Enforcement and/or Contempt Relief Is Appropriate or Should Be Reserved Through an Order to Show Cause.................................................................................................... 22

IV.   LATE FEES AND INTEREST ARE RECOVERABLE CONTRACT-BASED STATUS-QUO MAINTENANCE AMOUNTS ......................................................... 23

V.    THE COURT SHOULD COMPEL IMMEDIATE IMPLEMENTATION AND SET A CONCRETE COMPLIANCE ......................................................................... 27

CONCLUSION...................................................................................................................... 28

VERIFICATION OF WORD COUNT ..................................................................................... 29

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,*
 290 F.3d 476 (2d Cir. 2002) ...............................................................................4, 13

*Bd. of Educ. of The Cnty. of Boone, W. Va. v. K.M.,* No. 2:14-CV-10563,
 2015 WL 1481775 (S.D.W. Va. Mar. 31, 2015) ......................................................22

*C.P. by Curtis v. Kankakee Cmty. Unit Sch. Dist.,*
 No. 05-2145, 2005 WL 8163374 (C.D. Ill. Aug. 29, 2005) ......................................15

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302,*
 400 F.3d 508 (7th Cir. 2005) ........................................................................4, 22, 23

*Crespo v. Aviles-Ramos,* No. 25-CV-07563 (JAV),
 2025 WL 3022389 (S.D.N.Y. Oct. 29, 2025) .......................................................4, 23

*Dervishi v. Stamford Bd. of Educ.,*
 653 F. App'x 55 (2d Cir. 2016) .................................................................................4

*Doe v. E. Lyme Bd. of Educ.,*
 790 F.3d 440 (2d Cir. 2015) ...................................................................1, 4, 9, 13

*Draper v. Atlanta Indep. Sch. Sys.,* No. CIV.A.1:06CV487-MHS,
 2006 WL 1734257 (N.D. Ga. June 20, 2006) ..............................................3, 4, 15, 22

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter,*
 510 U.S. 7 (1993) ...............................................................................................5, 24

*Honig v. Doe,*
 484 U.S. 305 (1988) ..........................................................................................1, 17

*John M. ex rel. Christine M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202,* No. 05 C 6720,
 2006 WL 2796420 (N.D. Ill. Sept. 26, 2006) ...............................................4, 15, 22

*John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit,*
 318 F.3d 545–53 (3d Cir. 2003) ..............................................................................22

*JP ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.,*
 641 F. Supp. 2d 499 (E.D. Va. 2009) .......................................................................24

*M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.,*
 553 F.3d 315 (4th Cir. 2009) ...................................................................................24

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.,*
 386 F.3d 158 (2d Cir. 2004) ........................................................................... *passim*

*Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*,
112 F. App'x 89 (2d Cir. 2004) .........................................................................................1

*Mendez v. Banks*,
65 F.4th 56 (2d Cir. 2023) .............................................................................................25

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
297 F.3d 195 (2d Cir. 2002) ..................................................................................*passim*

*Petties v. D.C.*,
888 F. Supp. 165 (D.D.C. 1995) ....................................................................................22

*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*,
471 U.S. 359 (1985) ......................................................................................................24

*Sch. Dist. of Phila. v. Kirsch*,
No. 14-cv-4910, 2017 U.S. Dist. LEXIS 3907 (E.D. Pa. Jan. 11, 2017) ........................4, 15, 22

*Spilsbury v. D.C.*,
307 F. Supp. 2d 22 (D.D.C. 2004) ................................................................................15

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
96 F.3d 78 (3d Cir. 1996) ..........................................................................2, 3, 6, 14, 16

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
752 F.3d 145 (2d Cir. 2014) ..............................................................................4, 22, 23

*Ventura de Paulino v. New York City Dep't of Educ.*,
959 F.3d 519 (2d Cir. 2020) ..............................................................................2, 15, 18

*Zvi D. by Shirley D. v. Ambach*,
694 F.2d 904 (2d Cir. 1982) ..........................................................1, 13, 14, 16, 17

**Statutes**

20 U.S.C. § 1415 ...........................................................................................*passim*

**Other**

34 C.F.R. § 300.510 .........................................................................................................9

34 C.F.R. § 300.518 ...................................................................................................13, 14

## PRELIMINARY STATEMENT

This motion is not a request for preliminary-injunction balancing nor a request for summary judgment. It is a motion to enforce the self-executing statutory injunction Congress created in 20 U.S.C. § 1415(j), to compel compliance with final administrative determinations, and to require DOE to show cause why its prolonged refusal to maintain Z.C.'s legally established status quo should not be treated as contempt. Plaintiff does not seek payment in isolation; Plaintiff seeks enforcement of DOE's duty to maintain Z.C.'s legally established educational status quo, for which prospective public funding is the means of preserving the placement, not a separate damages remedy.

The IDEA's stay-put provision is "automatic." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). It serves as an automatic statutory injunction that preserves the child's educational status quo during IDEA proceedings. *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir. 2004), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). The Supreme Court has explained that 20 U.S.C. § 1415(j) reflects Congress's decision to strip school districts of unilateral authority to alter a disabled child's placement during a dispute. *Honig v. Doe*, 484 U.S. 305, 323 (1988). Thus, DOE was not free to treat Z.C.'s placement as optional, disputed, or unfunded while it awaited another order.

Z.C.'s status quo as a matter of law was already established by the January 24, 2024, Corrected Findings of Fact and Decision in IHO Case No. 250764 ("FOFD 250764"), when DOE failed to appeal it. FOFD 250764 found that DOE denied Z.C. a free appropriate public education "FAPE") for the 2023–2024 school year, found the International Academy for the Brain

("iBRAIN") appropriate, found special transportation necessary, ordered direct payment, and required payment pursuant to the Plaintiff's enrollment and transportation agreements. DOE did not appeal. That final, unappealed administrative decision fixed Z.C.'s status quo as a matter of law.

That sequence matters. In *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 84–87 (3d Cir. 1996), the Third Circuit held that once an administrative or judicial decision vindicates the parents' placement, the district's financial responsibility begins because, without interim public funding, the right to remain in the placement becomes illusory. The Second Circuit applied the same practical principle in *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199–200 (2d Cir. 2002) (Sotomayor, J.), holding that "implicit" in stay-put is the requirement that the district continue to finance a placement made by the agency and consented to by the parent, because cutting off public funds "would amount to a unilateral change in placement." *Id.* (quoting *Zvi D. by Shirley D.*, 694 F.2d at 906). *Mackey* then cited *Susquenita* with approval. *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61. Furthermore, the Second Circuit summarized the rule in *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020): "Congress's policy choice was that a child is entitled to remain in his or her placement at public expense during the pendency of an IEP dispute, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings."

Plaintiff gave DOE advance notice, via the ten-day notice, that Z.C. would remain in the status quo established by FOFD 250764 for 2024–2025. When Plaintiff filed the July 2, 2024, due process complaint, 20 U.S.C. § 1415(j) required DOE to maintain that placement at public expense during the proceedings. The DPC did not create pendency; it triggered DOE's duty to maintain the pendency already fixed by FOFD 250764. DOE did not do so. It disputed pendency, withheld

funding, and paid nothing toward Z.C.'s tuition or special transportation as the school year progressed. By June 9, 2025—after nearly the full 12-month 2024–2025 year—no pendency order or FOFD had been issued, DOE had not paid "a penny," and DOE still maintained that "pendency is disputed in this case and no determination with respect to Z.C.'s pendency placement has been made." Compl. ¶¶ 565, 734; *see Bruckauf v. Banks*, No. 24-cv-05136 (LGS), Dkt. No. 98, at 7, 9 (S.D.N.Y. June 9, 2025). Arrears already exceeded $390,000 in tuition and $160,000 in transportation, including late fees. Compl. ¶ 566.

The June 27, 2025, FOFD and SRO Decision No. 25-499 confirmed that Plaintiff's position was correct; they did not create DOE's obligation. The IHO held that FOFD 250764 supplied the pendency basis and ordered DOE to fund Z.C.'s placement at iBRAIN, including related services and transportation through Plaintiff's chosen provider, "via pendency," beginning July 2, 2024. SRO Decision No. 25-499 dismissed DOE's cross-appeal and found no basis to disturb that determination. Compl. ¶¶ 12–13, 191, 418, 445, 981–982.

DOE repeated the same approach in 2025–2026. Even after Z.C.'s pendency had been established by law and reaffirmed in the 2024–2025 record, DOE continued to treat it as something it could withhold, narrow, or self-stay based on cost, transportation objections, appeal posture, and claimed administrative uncertainty. In federal filings, DOE said it would implement only those portions of pendency "not under appeal, if any." Compl. ¶ 904. By December 24, 2025, DOE had still implemented no part of Z.C.'s 2025–2026 pendency and had issued no pendency payments. Compl. ¶¶ 567. That was an unlawful self-stay. If DOE believed its obligations should be suspended, narrowed, or altered, it had to seek a stay. Courts have repeatedly held that a district may not suspend stay-put obligations unless and until a stay is granted.[1] *Draper v. Atlanta Indep.*

---

[1] In *Susquenita* the Third Circuit's reasoning supports the argument that a school district cannot use its own appeal as a functional reverse stay-put. 96 F.3d 78. Rather, once a state administrative decision agrees

*Sch. Sys.*, No. CIV.A.1:06CV487-MHS, 2006 WL 1734257 (N.D. Ga. June 20, 2006); *Sch. Dist. of Phila. v. Kirsch*, No. 14-cv-4910, 2017 U.S. Dist. LEXIS 3907, at *15–21 (E.D. Pa. Jan. 11, 2017); *John M. ex rel. Christine M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*, No. 05 C 6720, 2006 WL 2796420 (N.D. Ill. Sept. 26, 2006). The Seventh Circuit has likewise compared § 1415(j)'s automatic injunction to an automatic bankruptcy stay and recognized that violating stay-put may be punishable by contempt. *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005).

This Court has already rejected DOE's order-dependent pendency theory. In *Crespo v. Aviles-Ramos*, No. 25-CV-07563 (JAV), 2025 WL 3022389, at *4 (S.D.N.Y. Oct. 29, 2025), Judge Vargas described DOE's position as "baseless" and "unsupported by the statute, caselaw, and the governing regulations." *Id.* That reasoning applies with full force here. DOE cannot convert an automatic statutory injunction into a discretionary funding process that begins only when DOE receives the particular administrative order it prefers. Nor can DOE achieve, by nonpayment, what it never sought and never got through a stay.

The late-fee issue follows from the same prospective-maintenance principle. Plaintiff does not seek late fees as sanctions, punitive damages, or free-standing consequential damages. Plaintiff seeks contract-based amounts that accrued because DOE failed to maintain Z.C.'s contract-defined status quo when § 1415(j) required DOE to do so. Excluding those amounts would leave Plaintiff with the financial consequences caused solely by DOE's refusal to fund the placement when

---

with the parents that a private placement is appropriate, the private placement becomes the student's pendency placement, and the school district's financial obligation follows while review continues. *Id.* In the Second Circuit, collective precedent supports the proposition that DOE must continue to fund the last agreed-upon pendency placement while proceedings remain pending, including where DOE appeals. *See Doe*, 790 F.3d 440; *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145 (2d Cir. 2014); *Mackey ex rel. Thomas M.*, 386 F.3d 158; *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476 (2d Cir. 2002). *See also Dervishi v. Stamford Bd. of Educ.*, 653 F. App'x 55 (2d Cir. 2016).

required and would render the administrative victory incomplete. The IDEA does not require an "empty victory." *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 12 (1993).

For more than two decades, the federal courts in this District have confronted DOE's repeated failure to implement special-education hearing orders in a timely manner. In *L.V. v. N.Y.C. Dep't of Educ.*, Judge Preska held that "the economic bind in which DOE finds itself does not afford it a roving commission to re-evaluate the propriety of Orders that the IDEA and New York law make plain are final and binding. DOE's only lawful course of action is to implement those Orders, full stop." No. 03-cv-9917 (LAP), Dkt. No. 258, at 16 (S.D.N.Y. Feb. 18, 2021). That principle controls here. The record before Judge Preska also confirms that DOE's implementation failures are not isolated or accidental. In August 2025, the *L.V.* plaintiffs told the court that DOE's implementation rates had deteriorated to single digits, that DOE timely implemented only 4.3% of total orders and 4.9% of total action items in the most recent quarterly audit then cited, and that those failures translated into more than 8,000 orders and 15,000 action items not timely implemented in a single quarter. *L.V.*, No. 03-cv-9917 (LAP), Dkt. No. 387, at 1–2 (S.D.N.Y. Aug. 11, 2025). Plaintiffs there sought civil contempt, a receiver over the Implementation Unit, and coercive sanctions because DOE appeared to treat court orders and implementation obligations as optional. *Id.* at 3–6. Z.C.'s case presents the student-specific consequence of that same implementation culture: a legally established status quo, final administrative confirmation, no stay, and no timely maintenance.

The Court need not resolve every remedial issue to grant the core relief now. At minimum, the Court should declare that Z.C.'s pendency placement includes iBRAIN tuition, related services, and special transportation through Plaintiff's chosen provider from the filing of the relevant due

process complaints; direct DOE to process all accrued, documented pendency amounts in the ordinary course by a date certain; enforce the independent neuropsychological evaluation ordered in SRO Decision No. 25-499; and reserve late fees, interest, and contempt remedies to the extent the Court concludes that additional accounting, documentation, or a further order is required.

**RELEVANT RECORD**

The record is not materially disputed. FOFD 250764 ordered DOE to pay for Z.C.'s iBRAIN tuition, related services, and special transportation pursuant to the enrollment and transportation agreements, and DOE did not appeal. The July 2, 2024, DPC invoked pendency and attached the operative iBRAIN and Sisters agreements. The June 27, 2025, FOFD identified FOFD 250764 as the pendency anchor and awarded tuition, services, and transportation from the DPC filing date through the FOFD. SRO Decision No. 25-499 dismissed DOE's cross-appeal and found no basis to disturb the pendency determination.

**A.    FOFD 250764 Established Z.C.'s Status Quo as a Matter of Law**

The record begins with a final administrative decision that DOE did not appeal. That matters because, under *Susquenita*, *Murphy*, and *Mackey*, an administrative decision vindicating the parent's placement fixes the status quo and triggers the district's public-funding responsibility when the next dispute begins. *Susquenita School Dist.*, 96 F.3d at 84–87; *Murphy*, 297 F.3d at 199–200; *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61.

Z.C. is a student with significant disabilities and intensive educational, related-service, assistive technology, paraprofessional, and transportation needs. In FOFD 250764, IHO Wahrman found that Z.C. is classified as a student with traumatic brain injury, has cerebral palsy and developmental delay, uses a wheelchair, requires assistance with activities of daily living, is mostly

non-verbal, uses a total communication approach, requires assistive technology and AAC supports, and requires 1:1 paraprofessional support and extensive related services. Compl. ¶¶ 178–183.

On January 24, 2024, IHO Wahrman issued FOFD 250764 concerning Z.C.'s 2023–2024 school year. The IHO found DOE failed to prove it offered Z.C. a FAPE. DOE did not defend its offered program, did not testify to support it, failed to introduce the IEP into evidence, and offered a placement too late for Plaintiff to visit before the start of Z.C.'s 12-month school year. Compl. ¶¶ 198–200.

The IHO then found that iBRAIN was appropriate for Z.C. At iBRAIN, Z.C. attended an 8:1+1 special class, received individualized instruction, received related services including occupational therapy, physical therapy, speech-language therapy, and music therapy, used assistive technology, and received the services of a 1:1 paraprofessional. The IHO also found that Z.C. had shown progress academically, emotionally, and in skills addressed in her related services. Compl. ¶¶ 204–208.

The IHO also recognized that special transportation was part of the placement for which Plaintiff sought funding. Those transportation services included paraprofessional support, air conditioning, a lift bus with wheelchair accessibility, and a limited travel time of not over 90 minutes. Compl. ¶ 186. The IHO rejected DOE's cost and collusion objections because DOE presented no evidence to substantiate them, including no evidence that less expensive and appropriate transportation was available for Z.C. Compl. ¶¶ 209–212.

The IHO ordered reimbursement and direct payment—he found Plaintiff could not afford the high cost of the unilateral placement and transportation and ordered DOE to reimburse the amounts already paid and to directly pay the remaining costs for school, related services, and transportation. Compl. ¶¶ 219–225; FOFD 250764, Dkt. No. 1-1, at 9. Critically, FOFD 250764

did not order a generic or abstract amount. It ordered that "[t]he amount of these payments shall be pursuant to the terms of the parent's enrollment agreement for tuition and related services and the transportation agreement for transportation." Compl. ¶ 486; FOFD 250764, Dkt. No. 1-1, at 9.

DOE did not appeal FOFD 250764. Compl. ¶¶ 276–277. FOFD 250764, therefore, became final and binding. It established Z.C.'s status quo as a matter of law: iBRAIN tuition, related services, assistive supports, 1:1 support, and specialized transportation pursuant to the relevant agreements.

The ten-day notice and DPC matter because they show DOE had both advance notice and the statutory trigger. The notice informed DOE that Plaintiff would keep Z.C. in the legally established status quo. The DPC then commenced proceedings and activated § 1415(j)'s maintenance command. *See* 20 U.S.C. § 1415(j); *Murphy*, 297 F.3d at 199–200.

Before the 2024–2025 school year, Plaintiff gave DOE advance notice that Z.C. would remain in the status quo established by FOFD 250764. Plaintiff served a ten-day notice dated June 17, 2024, signed the Sisters transportation agreement on June 18, 2024, and signed the iBRAIN enrollment contract on June 21, 2024. Plaintiff then filed the 2024–2025 DPC on July 2, 2024, assigned IHO Case No. 277285. The DPC alleged that DOE denied Z.C. a FAPE for 2024–2025, requested pendency, and sought funding for iBRAIN tuition, related services, paraprofessional support, and Sisters transportation. The contracts were included in the DPC package. *See* Compl. ¶¶ 341–351; *see also Bruckauf v. Banks*, No. 24-cv-05136 (LGS), Dkt. No. 1, ¶¶ 279–284.

The ten-day notice put DOE on notice. The DPC triggered DOE's statutory maintenance obligation. The DPC filing did not create Z.C.'s status quo; FOFD 250764 had already done so.

The DPC initiated proceedings and required DOE, under 20 U.S.C. § 1415(j), to maintain that status quo during the dispute.

### B.    DOE and OATH Converted 2024–2025 Pendency Into Delayed Merits Litigation

The stay-put provision is designed to protect the child during the dispute, not after the school year has already passed. *See Mackey ex rel. Thomas M.*, 386 F.3d at 160–61; *Doe*, 790 F.3d at 452. Then-Judge Sotomayor emphasized in *Murphy* that "access to immediate interim relief is essential for the vindication of this particular IDEA right." *Murphy*, 297 F.3d at 199. That is why the following chronology matters.

Z.C.'s pendency should have been maintained immediately. Instead, it was converted into delayed merits litigation. At the September 5, 2024, prehearing conference, Plaintiff asserted pendency under FOFD 250764, while DOE disputed pendency on the grounds of cost, scope, and transportation. OATH did not ensure that a standalone pendency order was issued promptly. Pendency was deferred into the merits process. Compl. ¶¶ 970–975.[2] The hearing convened on November 21, 2024, and concluded on April 10, 2025. Compl. ¶¶ 976–977. By June 9, 2025, no standalone pendency order had been issued, no FOFD had been issued, and DOE had paid nothing toward Z.C.'s tuition or special transportation for the 2024–2025 school year. In the June 9, 2025, *Bruckauf* status letter, Plaintiffs reported DOE had not paid "a penny" toward Z.C.'s tuition or special transportation and had not provided special transportation services. Compl. ¶ 565; *Bruckauf v. Banks*, No. 24-cv-05136 (LGS), Dkt. No. 98, at 7.

The same letter reported DOE's position that "pendency is disputed in this case and no determination with respect to Z.C.'s pendency placement has been made." Compl. ¶ 734; *Bruckauf*,

---

[2] That deferral itself bypassed the procedural-safeguards framework Congress designed to address pendency disputes at the beginning of the due process proceedings. *See* 34 C.F.R. § 300.510. DOE neither used the resolution process to resolve pendency nor sought a stay; it used the delay to defer payment indefinitely.

Dkt. No. 98, at 9. It also reported that, as of June 9, 2025, DOE owed more than $390,000 in tuition fees, including late fees, and more than $160,000 in transportation fees, including late fees. Compl. ¶ 566.

A pendency ruling delayed until the school year is effectively over does not preserve the status quo. It confirms after the fact what DOE was required to maintain in real time. DOE and OATH's handling turned stay-put into after-the-fact reimbursement litigation, which is precisely what § 1415(j) is designed to prevent.

**C.    The June 27, 2025, FOFD Confirmed Plaintiff's Pendency Position, But Too Late**

A later administrative decision confirming pendency does not cure the earlier failure to maintain the placement during the proceedings. *Murphy* rejected the idea that parents must wait through administrative delay before obtaining stay-put enforcement because that would defeat the right's interim purpose. *Murphy*, 297 F.3d at 199–200. On June 27, 2025, the IHO issued the FOFD in IHO Case No. 277285. Compl. ¶ 978; June 27, 2025 FOFD, Dkt. No. 1-3. The FOFD confirmed that the Plaintiff's pendency position was correct. It found that the basis for Z.C.'s pendency services was the unappealed January 24, 2024, FOFD. Compl. ¶ 981; June 27, 2025 FOFD, Dkt. No. 1-3, at 6. The IHO ordered DOE to fund, "via pendency," Z.C.'s attendance at iBRAIN, including related services, and transportation expenses provided by Plaintiff's chosen transportation provider from July 2, 2024, through the date of the decision. Compl. ¶ 982; June 27, 2025 FOFD, Dkt. No. 1-3, at 6.

The FOFD also found that DOE denied Z.C. a FAPE for 2024–2025, found iBRAIN appropriate, and awarded tuition funding on the merits. Compl. ¶ 434. However, the pendency ruling came after almost the entire school year had passed. It confirmed DOE's obligation; it did not cure DOE's failure to maintain Z.C.'s placement in real time.

Administrative enforcement now aligns with the statute. SRO Decision No. 25-499 confirmed the pendency basis, rejected DOE's challenge, and left no legitimate dispute that DOE must fund Z.C.'s iBRAIN tuition, related services, and transportation through Plaintiff's chosen provider.

Plaintiff appealed adverse portions of the June 27, 2025, FOFD, including the denial of transportation funding on the merits and the denial of funding for an independent neuropsychological evaluation. DOE cross-appealed pendency and equitable considerations. Compl. ¶¶ 421–428. SRO Decision No. 25-499 confirmed the core pendency obligation. DOE did not cross-appeal the IHO's finding that DOE denied Z.C. a FAPE for 2024–2025, did not cross-appeal the finding that iBRAIN was appropriate, and neither party appealed the determination that Z.C.'s pendency services were based on FOFD 250764. Those findings became final and binding. Compl. ¶¶ 434–444. The SRO held that there was no basis to disturb the IHO's determination that DOE had to fund tuition and related services at iBRAIN and transportation services delivered by Plaintiff's chosen provider. Compl. ¶ 445; SRO Decision No. 25-499, Dkt. No. 1-4, at 14. The SRO rejected DOE's attempt, on the record presented, to treat cost increases as a change in Z.C.'s pendency placement. Compl. ¶¶ 447–450; SRO Decision No. 25-499, Dkt. No. 1-4, at 13. The SRO also recognized that FOFD 250764 ordered DOE to fund transportation under Plaintiff's transportation agreement, and that the 2024–2025 IHO ordered DOE to "fund," rather than provide, Z.C.'s pendency transportation. Compl. ¶¶ 452–453; SRO Decision No. 25-499, Dkt. No. 1-4, at 13. The SRO concluded DOE failed to articulate a coherent basis for substituting DOE-provided transportation for Plaintiff's chosen provider. Compl. ¶¶ 454–455; SRO Decision No. 25-499, Dkt. No. 1-4, at 14. SRO Decision No. 25-499 also reversed the denial of the independent

neuropsychological evaluation. Compl. ¶ 29. The SRO decision, therefore, gives this Court a straightforward enforcement posture.

DOE's 2025–2026 conduct shows that this is not an isolated implementation delay. It is the same self-stay theory repeated after Z.C.'s status quo had already been fixed as a matter of law, confirmed by the June 27, 2025, FOFD, and reaffirmed by SRO Decision No. 25-499. The 2025–2026 school year repeated the same structure. Plaintiff filed the 2025–2026 DPC and again invoked continuing pendency based on FOFD 250764. DOE conceded during the 2025–2026 administrative proceeding that "pendency would arise out of the FOFD, 250764," but nevertheless disputed implementation based on alleged cost increases, *Ventura de Paulino*, transportation-provider substitution, and DOE's claimed right to implement transportation "as we see fit." Compl. ¶¶ 898–901.

OATH did not issue a standalone pendency order; instead, it directed the parties to argue pendency at the hearing. Compl. ¶¶ 973–975. DOE then carried the same self-stay theory into federal court. In the 2025–2026 *Bruckauf* action, DOE represented that "[o]nce the extent of the pendency issues on appeal are known, DOE will implement the portions of pendency that are not under appeal, if any." Compl. ¶ 904; *see Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), Dkt. No. 39-1, at 7 (S.D.N.Y. Nov. 24, 2025).

By December 24, 2025, Plaintiffs reported that DOE had implemented no aspect of Z.C.'s pendency and had issued no pendency payments. Compl. ¶ 567; *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), Dkt. No. 40, at 12 (S.D.N.Y. Dec. 24, 2025). DOE's 2025–2026 conduct confirms that the problem is not an isolated delay. It is a repeated self-stay structure that requires enforcement now.

## LEGAL STANDARD

### A.    Stay-Put is Automatic and Self-Executing

The IDEA's stay-put provision provides that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The implementing regulation likewise provides that, during the pendency of due process and judicial proceedings, "the child involved in the complaint must remain in his or her current educational placement," unless the parent and public agency agree otherwise. 34 C.F.R. § 300.518(a).[3] The command is mandatory. The child "shall remain" in the status quo placement; the district may not suspend, narrow, delay, or partially implement maintenance while it litigates objections to cost, scope, transportation, or administrative posture.

The Second Circuit has long treated § 1415(j) as an automatic injunction. In *Zvi D. by Shirley D. v. Ambach*, the Court explained that stay-put "is, in effect, an automatic preliminary injunction" and that once triggered, the child remains in the then-current placement without the ordinary preliminary-injunction showing. *Zvi D. by Shirley D.*, 694 F.2d at 906. In *Mackey ex rel. Thomas M.*, the Second Circuit reaffirmed that 20 U.S.C. § 1415(j) reflects Congress's policy choice to preserve the child's educational placement during the dispute. *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61. And in *Doe v. E. Lyme Bd. of Educ.*, the Court again recognized stay-put as a self-executing statutory protection enforceable during the pendency of IDEA proceedings. 790 F.3d at 452.

---

[3] The Second Circuit has applied that principle within this Circuit. See *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,* at 484 (administrative decision agreeing with parents that placement is appropriate "must be treated as an agreement" under the IDEA for stay-put purposes (citing 34 C.F.R. § 300.518(d)). FOFD 250764 is such a decision.

Because § 1415(j) is automatic, Plaintiff need not prove likelihood of success, irreparable harm, or balance of equities to obtain enforcement. Those factors matter in ordinary preliminary-injunction practice. They do not govern the enforcement of the statutory stay-put injunction Congress already imposed. *See Zvi D. by Shirley D.*, 694 F.2d at 906; *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61. The question here is not whether Plaintiff is entitled to a new injunction. The question is whether DOE complied with the automatic injunction created by 20 U.S.C. § 1415(j).

The stay-put right protects the child's educational status quo. Where an administrative decision vindicates the Plaintiff's unilateral placement and the district does not obtain a stay or reversal, that decision establishes the status quo as a matter of law. The implementing regulation confirms that, if a hearing officer or state review official "agrees with the child's parents that a change of placement is appropriate," that placement "must be treated as an agreement between the State and the parents" for stay-put purposes. 34 C.F.R. § 300.518(d). *Susquenita School Dist.*, explains the same practical principle—once parents receive an administrative or judicial decision validating the private placement, "the school district's financial responsibility should begin," because without interim public funding, the right to remain in the placement becomes illusory. *Susquenita School Dist.*, 96 F.3d at 84–87.

The Second Circuit has embraced that practical rule. In *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, then-Judge Sotomayor explained that "implicit" in stay-put "is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing," because cutting off public funds "would amount to a unilateral change in placement." 297 F.3d at 199–200 (quoting *Zvi D. by Shirley D.*, 694 F.2d at 906). The Court further explained that "access to immediate interim relief is essential for the vindication of this particular IDEA right." *Id.* at 199. *Mackey* then cited

*Susquenita* with approval and reaffirmed that § 1415(j) protects the child's placement at public expense during the proceedings. *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61. The Second Circuit later summarized the same rule in *Ventura de Paulino v. N.Y.C. Dep't of Educ.*: "Congress's policy choice was that a child is entitled to remain in his or her placement at public expense during the pendency of an IEP dispute, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings." *Ventura de Paulino*, 959 F.3d at 530.

A parent seeking stay-put enforcement need not wait for a new IHO to re-declare a placement already established as the legal status quo. *Murphy* rejected the premise that parents must endure administrative delay before obtaining stay-put enforcement, because immediate interim relief is essential to the right. 297 F.3d at 199–200. Other courts agree that exhaustion is not required to enforce pendency. *See Spilsbury v. D.C.*, 307 F. Supp. 2d 22, 26 n.1 (D.D.C. 2004); *C.P. by Curtis v. Kankakee Cmty. Unit Sch. Dist.*, No. 05-2145, 2005 WL 8163374, at *2 (C.D. Ill. Aug. 29, 2005).

That principle matters here. DOE cannot insist that Plaintiff first obtain a fresh pendency order every school year before DOE begins funding a status quo already established by a final, unappealed administrative decision. The June 27, 2025, FOFD and SRO Decision No. 25-499 confirmed Plaintiff's position. They did not create DOE's obligation from scratch. If DOE believed Z.C.'s pendency obligations should be suspended, narrowed, or stayed, DOE had to seek a stay and satisfy the governing standards. It could not achieve the same result by nonpayment. Courts addressing this issue hold that school districts remain liable for stay-put funding unless a stay is granted. *See Draper*, 2006 WL 1734257; *Sch. Dist. of Phila. v. Kirsch*, No. 14-cv-4910, 2017 U.S. Dist. LEXIS 3907, at *15–21 (E.D. Pa. Jan. 11, 2017); *John M. ex rel. Christine M.*, 2006 WL 2796420.

## ARGUMENT

Standard of Review. The Court grants "such relief as [it] determines is appropriate" under 20 U.S.C. § 1415(i)(2)(C)(iii), "basing its decision on the preponderance of the evidence." Because § 1415(j) operates as an automatic statutory injunction, the traditional preliminary-injunction factors are inapplicable; the question is only whether DOE complied with the statutory command. *Zvi D. by Shirley D.*, 694 F.2d at 906.

## I.    FOFD 250764 ESTABLISHED Z.C.'S STATUS QUO AS A MATTER OF LAW, AND THE JULY 2024 DPC TRIGGERED DOE'S DUTY TO MAINTAIN IT

DOE's obligation did not depend on a new pendency order, new IHO ruling, new SRO ruling, or DOE's agreement. The status quo was already established as a matter of law when DOE failed to appeal FOFD 250764. Plaintiff's ten-day notice then put DOE on notice that Z.C. would remain in that status quo for the upcoming school year. When Plaintiff filed the July 2, 2024, DPC, § 1415(j) triggered DOE's duty to maintain that status quo at public expense during the proceedings.

### A.    FOFD 250764 Became Final and Binding When DOE Did Not Appeal

FOFD 250764 was not a tentative placement proposal, a substantial-similarity comparison, or a blank-slate placement request. It was a final administrative decision. It found that DOE denied Z.C. a FAPE, found iBRAIN appropriate, found Z.C.'s transportation necessary, rejected DOE's cost and collusion objections, and ordered direct payment for school, related services, and transportation pursuant to the relevant contracts. Compl. ¶¶ 198–225. DOE did not appeal. Compl. ¶¶ 276–277.

That unappealed decision established Z.C.'s status quo as a matter of law. *See Susquenita School Dist.*, 96 F.3d at 84–87; *Murphy*, 297 F.3d at 199–200; *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61. Once the parents' placement was administratively vindicated and DOE let that

decision become final, DOE was no longer facing an unresolved placement theory. It was facing a legally established status quo. This distinction matters. DOE may not recast this case as one requiring the Court to identify a new placement, evaluate substantial similarity, or determine pendency in the first instance. The relevant status quo had already been fixed by FOFD 250764. Because FOFD 250764 ordered payment pursuant to the enrollment and transportation agreements, the status quo was not merely a school name on paper. It was a contract-defined placement package: iBRAIN tuition, related services, assistive and 1:1 supports, and specialized transportation.

### 1.    The Ten-Day Notice Put DOE on Implementation Notice

The ten-day notice did not trigger § 1415(j), but it is important because it eliminates any claim of surprise. Before the 2024–2025 school year, Plaintiff notified DOE that Z.C. would continue in the status quo established by FOFD 250764. Plaintiff then executed the Sisters transportation agreement and iBRAIN enrollment contract before filing the DPC. *See* Compl. ¶¶ 341–351.

DOE therefore had notice of three things: the legal status quo, the Plaintiff's intent to maintain Z.C. in that status quo, and the contracts through which the placement would be maintained. DOE should have been preparing to implement, not waiting to see whether Plaintiff could later force a new administrative order. The IDEA does not permit DOE to treat advance notice as irrelevant. § 1415(j) exists precisely to prevent unilateral disruption while proceedings unfold. *See Honig*, 484 U.S. at 323; *Zvi D. by Shirley D.*, 694 F.2d at 906. DOE's position—that it could wait until a new IHO order re-announced the already-established status quo—turns the statute upside down.

### 2.     The July 2024 DPC Triggered DOE's Statutory Maintenance Obligation

The DPC is the statutory trigger because § 1415(j) applies "during the pendency of any proceedings conducted pursuant to this section." 20 U.S.C. § 1415(j). Once the Plaintiff filed the July 2, 2024, DPC, proceedings were pending, and DOE was required to maintain Z.C.'s existing status quo at public expense. *See Murphy*, 297 F.3d at 199–200; *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61; *Ventura de Paulino*, 959 F.3d at 530.

That does not mean the DPC created the status quo. It means the DPC triggered the obligation to maintain the status quo that FOFD 250764 had already established as a matter of law. The June 27, 2025, FOFD and SRO Decision No. 25-499 confirmed and enforced DOE's preexisting obligation. They did not create that obligation for the first time.

DOE's contrary theory collapses stay-put into delayed reimbursement. If DOE may refuse funding until an IHO issues a new pendency order, then the statutory command that the child "shall remain" becomes meaningless whenever DOE chooses to dispute cost, transportation, or scope. That is exactly what happened here. Z.C. remained physically enrolled only because Plaintiff, iBRAIN, and the transportation provider bore the financial risk DOE was required to carry.

The Court should reject that self-stay theory. FOFD 250764 established Z.C.'s status quo as a matter of law. The ten-day notice put DOE on notice to implement. The July 2024 DPC triggered the statutory duty to maintain. DOE violated that duty by failing to fund Z.C.'s placement when the proceedings began.

## II.    SRO DECISION NO. 25-499 CONFIRMS AND ENFORCES DOE'S EXISTING OBLIGATION

Even if DOE could once claim uncertainty, SRO Decision No. 25-499 eliminated it. The SRO confirmed that FOFD 250764 supplied the pendency basis, rejected DOE's cost-change and transportation-substitution theories, dismissed DOE's cross-appeal, and found no basis to disturb

the determination that DOE must fund iBRAIN tuition, related services, and transportation through Plaintiff's chosen provider. Compl. ¶¶ 12–13, 434–455. The Court should enforce that final administrative determination.

DOE did not cross-appeal the IHO's finding that DOE denied Z.C. a FAPE for the 2024–2025 school year. DOE did not cross-appeal the finding that iBRAIN was appropriate. Neither party appealed the determination that Z.C.'s pendency services were based on FOFD 250764. Those findings became final and binding. Compl. ¶¶ 434–444.

The SRO then rejected DOE's attempt to disturb pendency. DOE argued that increased iBRAIN tuition and transportation costs changed Z.C.'s pendency placement. The SRO found "no basis," on the record presented, to treat those cost increases as a change in placement. Compl. ¶¶ 447–450. That ruling forecloses DOE's effort to use cost objections to withhold funding. The SRO also found no basis to disturb the IHO's determination that DOE must fund the costs of tuition and related services at iBRAIN, as well as the costs of transportation services provided by Plaintiff's chosen provider. Compl. ¶ 445. That ruling is not advisory. It is a final state administrative determination requiring implementation.

Transportation is not a peripheral dispute here. FOFD 250764 required transportation under Plaintiff's transportation agreement. Compl. ¶ 486. The June 27, 2025, FOFD ordered DOE to fund transportation through the Plaintiff's chosen transportation provider, via pendency, from July 2, 2024, through the date of decision. Compl. ¶ 982. SRO Decision No. 25-499 then found no basis to disturb that determination. Compl. ¶¶ 445, 452–455. The SRO also rejected DOE's attempt to recast its obligation as a right to provide transportation itself. The SRO recognized that FOFD 250764 ordered DOE to fund transportation under Plaintiff's transportation agreement and that the 2024–2025 IHO ordered DOE to "fund," rather than provide, Z.C.'s pendency transportation.

Compl. ¶¶ 452–453. The SRO concluded that DOE failed to articulate a coherent basis for substituting DOE-provided transportation for Plaintiff's chosen provider. Compl. ¶¶ 454–455. That ruling matters for enforcement.

DOE cannot maintain Z.C.'s status quo by acknowledging iBRAIN while refusing to fund the transportation required to access it. Nor can DOE use *Ventura de Paulino* to rewrite a contract-based transportation obligation established by FOFD 250764 and confirmed by SRO Decision No. 25-499. *Ventura de Paulino* does not authorize DOE to replace a final, unappealed, contract-defined pendency component with a cheaper or preferred substitute.

**The IEE Order Should Also Be Enforced**

SRO Decision No. 25-499 also reversed the IHO's denial of Plaintiff's requested independent neuropsychological evaluation. Compl. ¶ 29. That portion of the SRO decision is part of the same final administrative determination and should be enforced as well. DOE should be ordered to fund the independent neuropsychological evaluation consistent with SRO Decision No. 25-499, to the extent DOE has not already done so.

**III.    THE COURT SHOULD SET A DEADLINE FOR IMPLEMENTATION**

SRO Decision No. 25-499 gives the Court a straightforward enforcement posture. The SRO already rejected DOE's principal objections. DOE has no lawful basis to relitigate the pendency anchor, the funding obligation, the cost-change theory, the transportation-provider issue, or the IEE. The Court should compel DOE to implement SRO Decision No. 25-499 by a date certain, including funding iBRAIN tuition, related services, Sisters transportation, and the independent neuropsychological evaluation, and should require DOE to provide an accounting of payments made, authorized, pending, or withheld.

A. **DOE Must Maintain the Same Status Quo for 2025–2026**

The Court's enforcement order should not stop at the 2024–2025 school year. Z.C.'s status quo as a matter of law remained unchanged when Plaintiff filed the 2025–2026 DPC. FOFD 250764 had not been vacated, stayed, reversed, superseded by agreement, or altered by any lawful pendency-changing event. Plaintiff and DOE did not agree to a different placement. DOE did not obtain a stay. Accordingly, when Plaintiff filed the DPC for the 2025-2026 extended school year, § 1415(j) again required DOE to maintain the same legally established status quo: iBRAIN tuition, related services, required supports, and Sisters transportation.

DOE effectively conceded the anchor. During the 2025–2026 administrative proceeding, DOE acknowledged that "pendency would arise out of the FOFD, 250764." Compl. ¶ 898. Nevertheless, DOE then disputed implementation. DOE objected on the grounds of alleged cost increases, *Ventura de Paulino*, transportation-provider substitution, and its claimed right to implement transportation "as we see fit." Compl. ¶ 900. OATH did not issue a standalone pendency order; instead, it directed the parties to argue pendency at the hearing. Compl. ¶¶ 973–975. That repeated the same defect from 2024–2025: pendency was treated as something to be litigated into the merits process, rather than maintained during the proceedings.

DOE's federal-court position confirms the self-stay. In the 2025–2026 *Bruckauf* action, DOE stated that "[o]nce the extent of the pendency issues on appeal are known, DOE will implement the portions of pendency that are not under appeal, if any." Compl. ¶ 904; *Bruckauf v. Aviles-Ramos*, No. 25-cv-05679 (KPF), Dkt. No. 39-1, at 7. That statement admits appeal-dependent implementation. DOE did not say it would maintain Z.C.'s status quo while the appeal proceeded. DOE did not say it had obtained a stay. DOE said it would wait, and then implement only what DOE deemed not under appeal, "if any." By December 24, 2025, the practical effect

was clear: DOE had implemented no aspect of Z.C.'s 2025–2026 pendency and had issued no pendency payments. Compl. ¶¶ 567; *Bruckauf*, No. 25-cv-05679 (KPF), Dkt. No. 40, at 12.

This is not maintenance. It is a unilateral suspension of stay-put. The Court should therefore compel DOE to maintain Z.C.'s continuing 2025–2026 pendency placement, including tuition, related services, and transportation to Sisters, while those proceedings remain pending.

**B.    DOE May Not Grant Itself a Stay of § 1415(j)'s Automatic Injunction; Enforcement and/or Contempt Relief Is Appropriate or Should Be Reserved Through an Order to Show Cause**

DOE never obtained a stay — not from an IHO, an SRO, this Court, or the Second Circuit. Yet DOE treated pendency as stayed because it disputed cost, transportation, implementation scope, appeal posture, and whether a new administrative order had been issued. That is self-help, not ordinary processing, and § 1415(j) does not allow it. As *Murphy* holds, cutting off funding for a placement made by the agency and consented to by the parent "would amount to a unilateral change in placement." *Murphy*, 297 F.3d at 199–200. Other courts have applied the same rule: a district remains liable for pendency funding "unless and until [it is] granted a stay." *Draper*, 2006 WL 1734257, at *11; *see also Sch. Dist. of Phila. v. Kirsch*, No. 14-cv-4910, 2017 U.S. Dist. LEXIS 3907, at *15–21 (E.D. Pa. Jan. 11, 2017); *Bd. of Educ. of The Cnty. of Boone, W. Va. v. K.M.*, No. 2:14-CV-10563, 2015 WL 1481775, at *1 (S.D.W. Va. Mar. 31, 2015); *John M. ex rel. Christine M.*, 2006 WL 2796420, at *6–7. The Seventh Circuit has compared the automatic stay-put injunction to an automatic bankruptcy stay and recognized that violation of the stay-put may be punishable by contempt. *Casey K. ex rel. Norman K.*, 400 F.3d at 511.[4]

---

[4] Although civil contempt typically lies for violation of a court order rather than an administrative decision standing alone, *see, e.g.*, *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 552–53, 560 (3d Cir. 2003); *Petties v. D.C.*, 888 F. Supp. 165, 168–71 (D.D.C. 1995), that procedural limitation does not exhaust the Court's remedial power here. The IDEA directs that, "[b]asing its decision on the preponderance of the evidence," the district court "shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); *T.M. ex rel. A.M.*, 752 F.3d at 152. And stay-put itself functions as an

This Court has already rejected DOE's order-dependent theory. In *Crespo*, Judge Vargas described DOE's position as "baseless" and "unsupported by the statute, caselaw, and the governing regulations," 2025 WL 3022389, at *4, and expressed concern that, "[g]iven how insubstantial many of DOE's arguments are, … DOE is not operating in good faith with respect to these students," *id.* at 7. That reasoning applies here. DOE cannot require the Plaintiff to obtain a new order before DOE funds a status quo already established by law.

The Court's authority to fashion that relief is broad. The IDEA directs that, "[b]asing its decision on the preponderance of the evidence," the district court "shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); *T.M. ex rel. A.M.*, 752 F.3d at 152.

Plaintiff does not initially ask the Court to impose coercive sanctions. Plaintiff asks the Court to enforce now, set a date-certain compliance deadline, require DOE to provide an accounting, and order DOE to show cause why continued noncompliance should not be held in contempt. At a minimum, DOE should be ordered to comply by a date certain and show cause why any failure to maintain Z.C.'s status quo after that deadline should not be treated as contempt.

## IV.    LATE FEES AND INTEREST ARE RECOVERABLE CONTRACT-BASED STATUS-QUO MAINTENANCE AMOUNTS

The late-fee issue should not obscure the principal pendency obligation. Even if the Court reserves or denies late fees and interest, DOE should still be ordered to process the undisputed

---

enforceable statutory injunction analogous to the automatic bankruptcy stay. *Casey K. ex rel. Norman K.*, 400 F.3d at 511. Within that broad authority, the Court can find on the present record that DOE has acted in a contemptuous and contumacious manner by refusing to obey final, unappealed administrative decisions, and can fashion equitable relief—immediate compliance, an accounting, and an order to show cause—calibrated to the character of DOE's conduct, even before formal civil contempt of a future enforcement order is adjudicated. Alternatively, as Plaintiff recognizes that civil contempt ordinarily enforces a clear and unambiguous **court order** the Plaintiff seeks, first, a clear federal enforcement order fixing DOE's obligation and a concrete compliance schedule. If DOE does not comply with that order, the Court may then determine whether contempt, coercive sanctions, or further remedial relief is warranted. This formulation respects the ordinary contempt rule while preventing DOE from benefiting from the absence of the very federal order Plaintiff now seeks.

principal pendency amounts for tuition, related services, and transportation. Plaintiff preserves the late-fee issue because the operative administrative record incorporated the enrollment and transportation agreements, but the immediate maintenance obligation exists independently of the Court's treatment of contractual late charges. Plaintiff does not seek late fees and interest as generic pendency penalties, contempt sanctions, punitive damages, or tort-like consequential damages. Plaintiff seeks them as contract-based amounts that accrued because DOE failed to maintain Z.C.'s contract-defined status quo, as required by § 1415(j).

The IDEA does not require an empty victory. In *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985), the Supreme Court held that IDEA courts have broad equitable authority to "grant such relief as the court determines is appropriate." In *Florence County School Dist. Four*, 510 U.S. at 12, the Court explained that reimbursement relief ensures parents are not left with an "empty victory" after proving the district failed to provide FAPE. Courts applying that equitable authority have recognized that recoverable IDEA relief can include financial charges tied to the parent's cost of securing appropriate services. *See, e.g., JP ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 641 F. Supp. 2d 499, 506 (E.D. Va. 2009) (awarding interest tied to tuition payments); *M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 325 (4th Cir. 2009) (recognizing broad equitable discretion).

That principle applies with special force in stay-put. Z.C.'s status quo was not an abstract school label. FOFD 250764 ordered direct payment under the Plaintiff's enrollment agreement for tuition and related services, and the transportation agreement for transportation. Compl. ¶ 486. DOE did not appeal. The 2024–2025 and 2025–2026 DPC packages then gave DOE notice of the contracts, payment schedules, and consequences of nonpayment. Compl. ¶¶ 341–351, 897–901. DOE therefore knew both what it had to maintain and how the contract-defined cost would increase

if it failed to pay when due. DOE cannot accept the contracts as the basis for tuition and transportation while excising the contract provisions that became operative only because DOE delayed payment. Where an administrative order requires funding under a contract, the contract's payment terms are not collateral for the obligation; they define the amount necessary to make the placement whole. The late fees and interest here flowed from DOE's failure to fund the status quo prospectively, not from any independent tort injury.

Judge McMahon's ruling in *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), aff'g No. 21-CV-9433 (CM) (S.D.N.Y.), confirms that the theory is viable when the administrative decision and contract support it. In *Mendez*, the court awarded late fees and interest for transportation where the decision being enforced tied DOE's obligation to the transportation contract, while denying iBRAIN late fees on record-specific exhaustion grounds. The court later denied reconsideration, leaving the transportation late-fee ruling intact. That distinction helps Z.C.: FOFD 250764 expressly tied payment to the enrollment and transportation agreements, the DPCs placed those contracts before DOE, and the late fees arose from DOE's failure to maintain that contract-defined status quo.

The governing question is not whether late fees are always part of pendency in every case. The question is whether, on this record, the contract-based amounts that accrued from DOE's failure to timely fund the legally established status quo are part of the relief necessary to enforce § 1415(j) and make the placement whole. Under *Burlington* and *Carter*, the Court's equitable authority is broad enough to prevent DOE's delay from shifting the cost of maintaining a FAPE to Plaintiff. Under *Murphy*, public financing is implicit in stay-put, because withholding funds constitutes a unilateral change in placement. And under *Susquenita*, once an administrative decision vindicates the parent's placement, the district's financial responsibility must begin, or the

stay-put right becomes illusory. Those principles compel full contract-based maintenance here, including the charges that accrued only because DOE did not fund the placement, even though the automatic injunction required it to do so.

Nor does the Second Circuit's decision in *Mendez* bar that relief. *Mendez* addressed whether a parent could obtain immediate payment before the administrative process determined the relevant funding obligation. This motion seeks enforcement after a final unappealed FOFD established the status quo as a matter of law, after DOE received the contracts with the DPCs, after DOE withheld funding for months, after the IHO confirmed Plaintiff's pendency position, and after SRO Decision No. 25-499 rejected DOE's challenge. This is not a request to accelerate ordinary-course processing. It is a request to remedy DOE's failure to maintain the contract-defined status quo in the first place. *Mendez* does not bar relief for amounts that have already accrued and become due. Plaintiff is not asking the Court to assume an uncertain future pendency obligation and order DOE to prepay a full school year that may never become due. Plaintiff seeks payment of accrued, documented pendency obligations for services already provided and, for any continuing pendency period, ordinary-course processing of invoices and attendance documentation as those obligations arise. That relief enforces the present status quo; it does not award speculative future tuition.

At a minimum, the Court should not deny late fees now. If the Court is not prepared to award them on this motion, it should compel principal funding immediately, declare that late-fee and interest claims are not mooted by belated payment, order DOE to provide an accounting, and permit expedited supplemental submissions limited to the contract-based late fees and interest owed.

## V.    THE COURT SHOULD COMPEL IMPLEMENTATION AND SET A CONCRETE COMPLIANCE SCHEDULE

The Court should enter a practical enforcement order now. DOE should be required to fund Z.C.'s 2024–2025 iBRAIN tuition, related services, and Sisters transportation; fund the independent neuropsychological evaluation ordered in SRO Decision No. 25-499; and maintain Z.C.'s continuing 2025–2026 pendency placement, including tuition, related services, and Sisters transportation. The order should include a date-certain compliance deadline. DOE should not be permitted to invoke "ordinary course" while delaying authorization or omitting components of the status quo. Where DOE orders contain no implementation date, the *L.V.* remedial framework has used 35 days as an outside implementation deadline and required prompt internal action within seven business days. *L.V. v. N.Y.C. Dep't of Educ.*, No. 03-cv-9917 (LAP), Dkt. No. 258 (S.D.N.Y. Feb. 18, 2021). That benchmark is appropriate here, especially because Z.C.'s pendency obligations have already been delayed through most or all of the relevant school years.

Plaintiff respectfully requests that the Court enter an order requiring DOE, within seven days, to file and serve a sworn accounting identifying all amounts paid, unpaid, rejected, or awaiting documentation for Z.C.'s 2024-2025 and 2025-2026 pendency placement; requiring DOE, within fourteen days after receipt of any missing documentation, to process all accrued tuition, related-service, and Sisters transportation amounts; and requiring the parties to file a joint status letter within twenty-one days identifying any remaining disputes regarding principal amounts, late fees, interest, or implementation.

Finally, the Court should issue an order to show cause or reserve contempt relief. If DOE does not comply by the deadline, DOE should be required to show cause why coercive civil-contempt relief should not issue for its continued violation of Z.C.'s stay-put rights and the Court's enforcement order.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) declare that FOFD 250764 established Z.C.'s pendency placement as iBRAIN tuition, related services, and special transportation through Plaintiff's chosen transportation provider; (2) enforce Z.C.'s 2024-2025 pendency rights from the July 2, 2024 DPC filing date; (3) enforce Z.C.'s continuing 2025-2026 pendency rights from the July 2025 DPC filing date for accrued and documented amounts and require ordinary-course processing going forward while pendency continues; (4) enforce SRO Decision No. 25-499, including the ordered independent neuropsychological evaluation; (5) require DOE to file a sworn accounting and process all accrued principal amounts by a date certain; (6) preserve Plaintiff's request for contract-based late fees and interest; (7) reserve contempt or coercive sanctions if DOE fails to comply with the Court's order; and (8) award attorneys' fees and such other relief as the Court deems just and proper.

Dated: May 14, 2026
　　　　New York, NY

　　　　　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　　Liberty & Freedom Legal Group
　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

　　　　　　　　By:　　　___*/S/*_____

　　　　　　　　　　　　　　　　　　Jeffrey Arlen Spinner, Esq. (JS22178)
　　　　　　　　　　　　　　　　　　105 East 34th Street, Suite 190
　　　　　　　　　　　　　　　　　　New York, NY 10016
　　　　　　　　　　　　　　　　　　jeff@pabilaw.org

## VERIFICATION OF WORD COUNT

Pursuant to the Local Rules of the District Court for the Southern District of New York, the undersigned certifies that the word count of this brief, excluding those portions exempt therefrom, is 8,722 words. The brief is formatted with one-inch margins, 12-point Times New Roman font, and complies with the Court's 8,750-word limit for memoranda.

Dated: May 14, 2026
      New York, NY

                                 */S/*
                              Jeffrey Arlen Spinner,, Esq.
                              (JS22178)